**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Janet Duke on behalf of herself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | Case No. |
| Luxottica U.S. Holdings Corp., Oakley, Inc., Luxottica Group ERISA Plans Compliance & Investment Committee, Luxottica Group Pension Plan, | |
| Defendants. | |

Plaintiff Janet Duke, by and through her attorneys, on behalf of herself and all others similarly situated, alleges the following:

## I.  NATURE OF THE ACTION

1. This is a civil enforcement action brought under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), concerning Defendants' violations of ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements with respect to the Luxottica Group Pension Plan (the "Luxottica Plan" or the "Plan").

2. Plaintiff and the Class are vested participants in the Luxottica Plan, which denies them their full ERISA-protected pension benefits. Specifically, Plaintiff and Class members receive pension benefits in the form of a joint and survivor annuity—a benefit that pays an annuity both to the participant for their life and for the life of the participant's surviving spouse. In determining the amount of Plaintiff's and Class members' joint and survivor annuities, however, Defendants employed actuarial assumptions *50 years* out of date. That means Plaintiffs

1

and Class members receive less than the "actuarial equivalent" of their vested accrued benefit, contrary to ERISA.

3.  Generally, a participant's pension benefit is expressed as a single life annuity, meaning it pays a monthly benefit to the participant for their entire life (i.e., from the time they retire until their death).

4.  For married participants, however, the default form of pension payment is a joint and survivor annuity or "JSA." A joint and survivor annuity provides the participant a payment stream for their own life, and then, if they have a surviving spouse when they die, for the life of their spouse. ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d). The survivor annuity is expressed as a percentage of the benefit paid during the participant's life; typically, the surviving spouse will receive 50%, 75%, or 100% of the benefit the participant received.

5.  To calculate a joint and survivor annuity, the Plan starts with the participant's single life annuity, then uses actuarial assumptions to convert it to a joint and survivor annuity. When the Plan makes that conversion, ERISA requires the joint and survivor annuity to be the "actuarial equivalent" of the single life annuity. 29 U.S.C. § 1055(d).

6.  Actuarial equivalence is a computation designed to ensure that, all else being equal, all forms of benefit payments have the same economic value. Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant and their spouse. The interest rate accounts for the value of future pension payments, reflecting the time value of money, while the mortality table provides the expected likelihood of that future payment being paid to the participant or their survivor based on published tables showing the statistical life expectancy of a person at a given age.

7.      When plans make these actuarial conversions, several provisions of ERISA and the relevant regulations ensure that the plans in fact provide participants an annuity with the same economic value as the single life annuity.

8.      First, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii).

9.      Second, ERISA requires that, if an employee's accrued benefit "is to be determined as an amount other than an annual benefit commencing at normal retirement age [of 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

10.      Third, ERISA § 203(a), 29 U.S.C. § 1053(a), provides that an employee's right to their vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarial equivalent value of their accrued benefit results in an illegal forfeiture of vested benefits.

11.      Echoing the statute's actuarial equivalence requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2).[1]

12.      The Luxottica Plan violates each of these rules for individuals whose benefits were calculated before an April 1, 2021 plan amendment took effect. For these individuals, when the Plan converts a single life annuity to a joint and survivor annuity, it uses a mortality table that is 50 years out of date, despite massive increases in life expectancy in the intervening decades.

---

[1] The Tax Code contains numerous provisions which correspond to ERISA; here the provision which corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

13.    As a result, these participants and beneficiaries receive significantly less than the actuarial equivalent of their single life annuity, directly contrary to ERISA's requirements.

14.    Defendants appear to have recognized that these actuarial assumptions did not pass muster. Effective April 1, 2021, they amended the Plan to employ updated and reasonable actuarial assumptions when calculating joint and survivor annuities. But for people with benefits calculated under the pre-amendment approach, Defendants continue to employ punitive, unreasonable, and severely outdated assumptions, which result in the Class members receiving less than their full pensions.

15.    When retiring or deciding whether to retire, Plan participants like Plaintiff consider information provided by Defendants about their retirement options under the Plan. Here, for example, the Plan Document told Class members that the default joint and survivor annuity is a "Qualified Joint and Survivor Annuity" and that all forms of benefits, including all joint and survivor annuities, are "Actuarially Equivalent" to the participant's single life annuity. This led Class members to believe they were receiving benefits that are as valuable as the law requires, when in fact those benefits are less valuable than what ERISA provides. Similarly, Defendants failed to inform Class members that they are receiving benefits that are less valuable than what the law requires.

16.    The members of the Class are participants of the Luxottica Plan receiving a joint and survivor annuity calculated using the actuarial assumptions in effect before the Plan's April 1, 2021 amendment became operative, and the beneficiaries of those participants. Class members are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA.

4

17.     The Class members are additionally harmed by Defendants' disclosures because Class members did not receive accurate information that is mandated by law and thus made retirement decisions based on misimpressions about the value of benefits available to them.

18.     Plaintiff brings this action on behalf of the Class pursuant to ERISA § 502(a)(2) and (a)(3), 29 U.S.C. 1132(a)(2) and (a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the actuarial assumptions used by the Plan before the April 1, 2021 amendment took effect violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Class; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members; reformation of the Plan to provide for proper actuarial assumptions as to Class members; and recalculation of benefits for all Class members and payment to them of the amounts owed under an ERISA-compliant plan.

## II.  JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), conferring jurisdiction over actions brought under Title I of ERISA.

20.     This Court has personal jurisdiction over Luxottica U.S. Holdings Corp. because it transacts business in, employs people in, and has significant contacts with this District, and because ERISA provides for nationwide service of process. Luxottica U.S. Holdings Corp.'s headquarters is located in Port Washington, NY.

21.     This Court has personal jurisdiction over Oakley, Inc. because it transacts business in, employs people in, and has significant contacts with this District, and because ERISA provides for nationwide service of process. Based on information and belief, Oakley, Inc. is wholly owned by Luxottica U.S. Holding Corp. and is headquartered in Foothill Ranch, CA.

22.     This Court has personal jurisdiction over the Plan because it offers and pays pension benefits to participants and beneficiaries in this District, and because ERISA provides for nationwide service of process.

23.     This Court has personal jurisdiction over the Luxottica Group ERISA Plans Compliance & Investment Committee (the "Plans Committee") because it transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process. Based on information and belief, the Chairperson of the Committee lives in New York and works from the Port Washington, NY headquarters.

24.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because at least one defendant resides or may be found in, employed Class members in, and otherwise does business in this District.

25.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because on information and belief many Class members reside and may be found in this District, worked for at least one defendant in this District, and/or were harmed in this District.

26.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because on information and belief all defendants do business in this District and this State and because Class members were harmed in this district.

### III.  PARTIES

**Plaintiff**

27.     Plaintiff Janet Duke resides in Cincinnati, Ohio and is a participant in the Plan. She worked for Luxottica for approximately 21 years, leaving only because her job as the regional manager was eliminated. When Duke began taking benefits, she elected the 100% joint and survivor annuity offered by the Plan. Her benefits were calculated based on the assumptions

that applied before the April 1, 2021 amendment took effect. Had Duke's benefits been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e), discussed below), her joint and survivor annuity would be larger. As a result, she suffered harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions to her pension.

**Defendants**

28.     On information and belief, Luxottica U.S. Holdings Corp. and/or Oakley, Inc. is the "plan sponsor" for the Plan within the meaning of § 3(16)(B), 29 U.S.C. § 1002(16)(B).

29.     On information and belief, the Plan sponsor(s) and various companies affiliated with the Plan sponsor(s) make contributions to the Plan to fund retirement benefits promised under the Plan. The Summary Plan Descriptions refer to these contributing entities collectively as "Luxottica North America."

30.     The Luxottica Group Pension Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.

31.     The Luxottica Group ERISA Plans Compliance & Investment Committee (the "Plans Committee") is the Plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). It is responsible for the general administration of the Plan.

32.     Under the Plan Document,[2] the Plans Committee is and was a "named fiduciary" of the Plan at all relevant times within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). The Plans Committee had and has the authority to control and manage the operation and administration of the Plan.

---

[2] Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument known as the Plan Document.

7

33.     The Plan Document further provides that the Plans Committee has the power to "[c]orrect any errors or deficiencies in the operation, demographics or form of the Plan in the manner it determines is appropriate. That includes, among other things, taking the actions necessary to preserve the Plan's tax-qualified status under Code §401(a) using the EPCRS or other reasonable methods, to correct ERISA fiduciary breaches using the VCP or other reasonable methods, and to correct prohibited transactions using any reasonable method. Notwithstanding any contrary Plan provision, any . . .  reasonable actions are permitted by the Plan to the extent the Plan Administrator determines appropriate to correct Plan errors, deficiencies, ERISA fiduciary breaches and prohibited transactions."

34.     Based on the Benefit Plans Committee's discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, the Benefit Plans Committee is also a Plan fiduciary within the meaning of § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

## IV.  LEGAL BACKGROUND

**A.     Actuarial Equivalence**

35.     Actuarial equivalence is a computation that is designed to ensure that, all else being equal, all forms of benefit payments have the same economic value as each other.

36.     Generally, an actuarial equivalence computation considers the expected longevity of a participant and their spouse, and an interest rate which reflects the time value of money through a reasonable rate of return based on current market conditions.

37.     To comply with ERISA, as well as to be considered a qualified plan under the Tax Code, a plan must comply with specified valuation rules. *See* Treas. Reg. § 1.411(a)–11(a)(1).

38.     ERISA provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at

normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" § 204(c)(3), 29 U.S.C. § 1054(c)(3).

39.    ERISA defines "normal retirement age" as age 65, or younger if provided by the pension plan. ERISA § 3(24), 29 U.S.C. § 1002(24); *see also* 26 U.S.C. § 411(a)(8); Treas. Reg. § 1.411(a)–7(b).

40.    This actuarial equivalence requirement set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), is repeated in the parallel Tax Code provision. 26 U.S.C. § 411(c)(3). The Treasury regulations that construe 26 U.S.C. § 411(c)(3) likewise confirm the actuarial equivalence rule. 26 C.F.R. § 1.411(c)-1(e) (referring to the "actuarial equivalence" of the participant's accrued benefit in conformance with Treasury regulations).

41.    In addition to the valuation rules referenced above, to comply with ERISA and to be considered a qualified trust under the Tax Code, a plan also must comply with certain actuarial equivalence rules. 26 CFR § 1.401(a)-11(a)(1).

42.    The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for the conversion of benefits among different forms.

43.    ERISA § 205(a), 29 U.S.C. § 1055(a) requires that pension plans offer married participants the option of receiving a payment stream for their life and their spouse's life after the retiree dies; this is a "joint and survivor annuity." ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

44.    ERISA also provides that the joint and survivor annuity shall be "*the actuarial equivalent of a single annuity* for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii) (emphasis added). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint

and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant") and § 417(g)(2) (defining "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant").

45.     Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity *must be at least the actuarial equivalent* of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of *consistently applied reasonable* actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added).

46.     Treasury regulations explain this means "in the case of a married participant, the QJSA [Qualified Joint and Survivor Annuity] must be *at least as valuable as any other optional form of benefit payable under the plan at the same time.*" 26 C.F.R. § 1.401(a)-20 Q&A-16 (emphasis added).

47.     In effect, the default form of pension annuity paid to a married retiree should have the same value as the single life annuity that retiree could have elected and would be paid to that retiree's analogous unmarried co-worker of the same age.

**B.     Non-Forfeitability**

48.     ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age[.]"

49.     The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "adjustments *in excess of reasonable actuarial reductions*, can result in rights being forfeitable." (emphasis added).

10

50.     Thus, distribution of retirement benefits that are less than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

## V.  FACTUAL ALLEGATIONS

**A.     The Plan Employed Highly Outdated and Unreasonable Actuarial Assumptions in Determining Class Members' Benefits, Resulting in Significant Harm**

51.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

52.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

53.     The Plan provides retirement benefits to employees of Luxottica North America. As of 2019, the Plan had approximately 29,000 participants and assets valued at approximately $1 billion.

54.     Under the Plan, a participant's normal retirement benefit is expressed as a single life annuity, meaning a series of monthly benefit payments beginning at retirement and continuing until a participant's death. This is the default form of payment for unmarried participants.

55.     For married participants, the default form of payment is a 50% joint and survivor annuity. That means the participant's spouse, if he or she survives the participant, receives 50% of whatever amount the participant received during her lifetime.

56.     Participants also may elect one of several optional forms of benefits, including a 75% joint and survivor annuity, a 100% joint and survivor annuity, and a "ten year certain and life annuity" (which provides an annuity that guarantees 10 years of payments, even if the participant dies before all of those payments have been made).

11

57.     Before the April 1, 2021 amendment took effect, the Plan converted the participant's single life annuity to a joint and survivor annuity using the following assumptions:

a. "The 1971 GAM Tables at an 85% male/15% female ratio."

b. "7% per annum."

58.     Though the Plan Document purported to comply with ERISA and all other applicable laws, the Plan did not and does not in fact pay to Class members the "actuarial equivalent" for joint and survivor annuities.

59.     The mortality table employed by the Plan is 50 years out of date, despite dramatic increases in longevity of the American public. Those increases are reflected in the mortality tables provided for by 29 U.S.C. § 1055(g), which are updated routinely by the Treasury Department.

60.     Nonetheless, for those whose benefits were calculated before the April 1, 2021 amendment took effect, the Plan's actuarial assumptions are outdated, unreasonable, and result in paying JSAs that are less than the actuarial equivalent value of a participant's single life annuity benefit.

61.     Indeed, the calculation of a joint and survivor annuity using reasonable mortality assumptions (for example, those prescribed by 26 U.S.C. § 417(e), which employ regularly updated assumptions published by the Treasury Department), is substantially more favorable for Class members than the use of the Plan's outdated and unreasonable assumptions.

62.     Take a participant who retired at normal retirement age (65) with a spouse the same age who elected a 50% joint and survivor annuity. That participant and their surviving spouse are receiving approximately 4% less than they would under § 417(e). And many participants' benefits have been reduced to an even greater degree compared to the reasonable assumptions set forth under § 417(e).

63.   On information and belief, the Plan's failure to provide actuarially equivalent joint and survivor annuities has caused (and will cause) Class members to lose millions of dollars in benefits in the aggregate.

64.   The Plans Committee, as the Plan's named fiduciary and plan administrator, was responsible for calculating and paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violate ERISA, in which case ERISA's fiduciary duties required the Plans Committee to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. 1104(a)(1)(D).

65.   It is unreasonable and contrary to ERISA for Defendants to fail to pay Plan participants and beneficiaries actuarially equivalent benefits.

66.   Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, the Plans Committee must act loyally and prudently to ensure that all participants are receiving the actuarial equivalent of their single life annuity. But, despite having authority under the Plan to update the Plan's actuarial assumptions, the Plans Committee breached its fiduciary duties and instead calculated retirement benefits using the Plan's outdated and unreasonable assumptions, which penalize participants for being married, compared to those who are single at retirement and thus receive an (unreduced) single life annuity. That breach, in turn, allowed Luxottica North America and/or plan sponsor(s) to save money by reducing the amount contributed to the Plan to fund benefits.

67.   Moreover, Defendants failed to disclose to participants that they would receive less than the actuarial equivalent value of their accrued, vested pension benefit if they selected a joint and survivor annuity.

**B.   The Plan Uses Updated Actuarial Assumptions for Other Purposes**

68.     For purposes of a plan sponsor's minimum funding of pension benefits, ERISA requires that "the determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the actuary's best estimate of anticipated experience under the plan." ERISA § 303(h), 29 U.S.C. § 1083(h).

69.     Here, Defendants calculated the actuarial present value of the Plan's future pension payments as of December 31, 2019 using mortality assumptions updated by the Society of Actuaries in May 2019 and that incorporate projected future mortality improvements.

70.     Moreover, to calculate a portion of the vested benefit for certain individuals (those entitled to the "Minimum December 31, 1994 Benefit and the Cole National Group, Inc. Retirement Benefit"), the Plan applies the reasonable and regularly updated actuarial assumptions from 26 U.S.C. § 417(e).

71.     In other words, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements and certain vested benefit calculations assume significantly greater longevity than the Plan does for converting joint and survivor annuities. The Plan therefore used different assumptions, regarding the same variables, to calculate ERISA funding requirements and lump sum payments (using ***updated*** assumptions), from those it used to calculate benefit reductions for joint and survivor annuities (using ***outdated*** assumptions).

72.     Thus, the Plan does not use "reasonable" actuarial assumptions based on "the experience of the plan and reasonable expectations" and which "offer the actuary's best estimate of anticipated experience under the plan" when calculating Plan participants' joint and survivor annuities, resulting in a reduction of benefits that is not permitted by ERISA.

73.     Defendants appear to be aware that they are not providing Plaintiff and Class members an actuarially equivalent joint and survivor annuity. For participants whose benefits were calculated after the April 1, 2021 amendment took effect, the Plan ensures that benefits won't be less than what would result from utilizing the updated mortality and interest rates from 26 U.S.C. § 417.

74.     But for Plaintiff and Class members—individuals receiving a joint and survivor annuity that was calculated using assumptions in effect before the April 1, 2021 amendment became operative—the Plan continues to employ its blatantly outdated and unreasonable assumptions.

**C.     Defendants Misrepresented the Amount of Participants' ERISA-Protected Benefits, Improperly Reducing Funding Obligations and Expenses**

75.     ERISA requires that a fiduciary provide accurate information to participants so that they can make informed decisions about their retirement benefit choices. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 872 (7th Cir. 2013); *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823-24 (9th Cir. 2007); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547-58 (6th Cir. 1999).

76.     When deciding if and when to retire, and what form of benefit to elect, Plaintiff and the Class relied upon the accuracy of information provided to them by Defendants to plan for retirement.

77.     Defendants provided information to Class members detailing the amount of retirement benefits they would receive under various forms of retirement benefit.

78.     In particular, Defendants represented to Class members that all forms of benefits, including all joint and survivor annuities, are "Actuarially Equivalent" to their single life annuity and that the default joint and survivor annuity is a "Qualified Joint and Survivor Annuity" (which, under ERISA, means an annuity that is the actuarial equivalent of a single life annuity,

*see* 29 U.S.C. § 1055(d)), even though Defendants in fact employed unreasonable actuarial assumptions that are 50 years out of date, which do not result in actuarially equivalent benefits being paid.

79.     Further, Defendants did not disclose to Class members the amount of pension benefit they would have been entitled to if Defendants had utilized reasonable actuarial equivalence assumptions.

80.     Defendants also failed to disclose to Class members that the actuarial assumptions applied to determine their joint and survivor annuities resulted in pensions that were less than the actuarial equivalent value of the single life annuity available when they retired.

81.     Thus, Class members were forced to choose between improperly reduced joint and survivor annuities and forms of benefit that did not necessarily meet their retirement needs, such as a single life annuity or single lump sum payment. Class members sacrificed economic value by selecting the joint and survivor annuities, the full actuarial value of which is protected by ERISA but not disclosed or provided to Class members.

82.     These misrepresentations and failures to disclose material information prevented Class members from adequately assessing what form of benefit to elect and how best to plan for their retirements.

83.     Luxottica North America and/or plan sponsor(s) financially benefitted by failing to disclose to Class members that they were receiving less than the actuarially equivalent value of their ERISA-protected pensions.

84.     Luxottica North America and/or plan sponsors(s) in fact received and continue to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows, which improperly reduces the funding obligations to the Plan.

85.     This illegal arrangement continues to benefit Luxottica North America and/or plan sponsor(s) because, despite having updated its actuarial assumptions for some retirees, it still applies the outdated, unreasonable, and highly punitive actuarial assumptions to Class members.

## VI.  CLASS ALLEGATIONS

86.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and participants in and beneficiaries of the Plan who had their benefits calculated pursuant to the actuarial assumptions in effect before the April 1, 2021 amendment became operative, and who are receiving a joint and survivor annuity that is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

**A.     Numerosity**

87.     The members of the Class are so numerous that joinder of all members is impractical. To the best of Plaintiffs' knowledge based on the available information, the Class includes thousands of individuals. Based on available governmental filings, as of January 1, 2019 there were approximately 3,385 participants and beneficiaries receiving benefits under the Plan.

**B.     Commonality**

88.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.  Whether the actuarial assumptions used to determine the value of the joint and survivor annuities paid to Class members violate the actuarial equivalence requirements of ERISA.

B.  Whether those assumptions illegally caused Class members to forfeit their vested benefits.

17

C.   Whether the Plans Committee violated its ERISA fiduciary duties of loyalty, prudence, and to follow the Plan Document *only if* its terms are consistent with ERISA.

D.   Whether the Plans Committee should be enjoined from applying the outdated actuarial assumptions to the Class and instead be required to calculate benefits for Class members based on reasonable actuarial equivalence calculations which are consistent with the Plan's other actuarial equivalence determinations, including the assumptions it applies to those whose benefits were calculated pursuant to the April 1, 2021 amendment.

E.   Whether the Plan should be reformed to eliminate any actuarial assumptions which reduce pension benefits paid or payable to Class members below the actuarial equivalent value of those benefits.

F.   Whether Class members should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent value of their benefit.

## C.   Typicality

89.   Plaintiff's claims are typical of the claims of the members of the Class because they arise out of the same policies and practices as alleged herein, and all members of the Class are affected by Defendants' wrongful conduct.

## D.   Adequacy

90.   Plaintiff will fairly and adequately represent the Class, and she has retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the

18

vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

**E.**     **Rule 23(b)(1) Requirements**

91.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

92.     The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.**     **Rule 23(b)(2) Requirements**

93.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted vis-à-vis the Plan as a whole, which should result in appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

94.     Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally.

**G.**     **Rule 23(b)(3) Requirements**

95.     If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: those listed above in Section VI.B.

96.     There are no difficulties in managing this case as a class action.

## VII.  CAUSES OF ACTION

### COUNT I: VIOLATION OF THE JOINT AND SURVIVOR ANNUITY REQUIREMENT OF ERISA § 205, 29 U.S.C. § 1055 (AGAINST ALL DEFENDANTS)

97.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

98.     ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d) requires that all plans shall provide benefits in the form of a "Qualified Joint and Survivor Annuity" and "Qualified Optional Survivor Annuity," and ERISA § 205(d), 29 U.S.C. § 1055(d) provides that they must be "the actuarial equivalent of a single annuity for the life of the participant."

99.     Treasury regulations setting forth plan requirements provide that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan . . . determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2).

100.    In other words, ERISA § 205(a)-(d) requires that at the time a participant retires, if they take their benefit as a joint and survivor annuity, the value of the joint annuity must be no less the actuarial equivalent of their single life annuity.

101.    As explained above, the actuarial assumptions applicable to Class members' joint and survivor annuities reduced Class members' benefits to less than the actuarial equivalent value of their ERISA protected benefits expressed as the single life annuity at the same retirement date, and they are based on different actuarial assumptions than the Plan uses for determining its funded status and for calculating certain vested benefits, as well as the assumptions the Plan uses to calculate joint and survivor annuities for those who retired after April 1, 2021.

102.     Thus, the Plan's actuarial assumptions for joint and survivor annuities applicable to Class members violate ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

103.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

104.     Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

105.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

106.     ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

107.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiff seeks all available and appropriate remedies against the Plans Committee to redress violations of ERISA § § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

21

## COUNT II: VIOLATION OF THE ACTUARIAL EQUIVALENCE
## REQUIREMENT OF ERISA § 204, 29 U.S.C § 1054
## (AGAINST ALL DEFENDANTS)

108.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

109.    ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) requires that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [here 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]"

110.    Thus, under § 204(c)(3), 29 U.S.C. § 1054(c)(3), if a participant takes their benefit as a joint and survivor annuity, and the Plan reduces the participant's benefit, the reduced benefit must be the actuarial equivalent of that benefit expressed as a single life annuity benefit starting at age 65.[3]

111.    Relevant here, in determining the joint and survivor annuities for Class members, the Plan applied actuarial assumptions that were highly unreasonable and out of date, resulting in the payment of less than the actuarial equivalent of a participant's single life annuity.

112.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

_____

[3] Separately, ERISA § 205, 29 U.S.C. § 1055, requires that, at the time a participant retires, if they take their benefit as a joint and survivor annuity, the value of the joint annuity must be no less than the actuarial equivalent of the single life annuity payable at retirement, even if the participant retires early. *See* Count I, *supra*. Thus, Count I provides an independent claim from Count II, which is based on a comparison of the value of a participant's annuity on the date the participant retires to their annuity at normal retirement age, even if they retire early.

113.     Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

114.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

115.     ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

116.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiff seeks all available and appropriate remedies against the Plans Committee to redress violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

### COUNT III: VIOLATION OF THE ANTI-FORFEITURE RULES OF ERISA § 203, 29 U.S.C. § 1053 (AGAINST ALL DEFENDANTS)

117.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

118.     ERISA § 203(a) of ERISA, 29 U.S.C. § 1053(a), sets forth ERISA's "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable[.]" The Treasury regulation, 26 C.F.R. § 1.401(a)-14(c), that

"defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."

119.    Thus, paying a participant less than the actuarial equivalent of their accrued vested benefit results in an illegal forfeiture of her vested benefits. ERISA § 203(a), 29 U.S.C. § 1053(a).

120.    As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities) because the Plan's actuarial assumptions for calculating Class members' joint and survivor annuities provided them with less than the actuarial equivalent of their ERISA-protected benefits.

121.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

122.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

123.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

124.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of

24

such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

125.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff seeks all available and appropriate remedies against the Plans Committee to redress violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**COUNT IV: BREACHES OF FIDUCIARY DUTY**
**(AGAINST THE PLANS COMMITTEE)**

126.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

127.    During all relevant times, the Plans Committee was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

128.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires the Plans Committee, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires the Plans Committee to communicate with Plaintiff and other Plan participants honestly and accurately.

129.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that the Plans Committee, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

130.     ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan" insofar as such documents are "consistent with" subchapters I and III of ERISA.

131.     The Plans Committee breached these fiduciary duties by, *inter alia*:

A.     Disloyally reducing Class members' pension benefits through application of outdated and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and; (ii) enabled plan sponsor(s) and/or Luxottica North America to save money by reducing the amount contributed to the Plan to fund benefits;

B.     Disloyally reducing Class members' pension benefits by using outdated and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and enabled plan sponsor(s) and/or Luxottica North America to increase profits by reducing pension funding obligations to the Plan;

C.     Disloyally providing inaccurate and misleading information to Class members by misrepresenting that all forms of benefits, including all joint and survivor annuities, are "Actuarially Equivalent" to their single life annuity and that the default joint and survivor annuity is a "Qualified Joint and Survivor Annuity" calculated using reasonable actuarial assumptions, and by failing to tell Plan participants that the joint and survivor annuities—which are the default option for married participants—are worth less than the single life annuities available at retirement;

26

D.      Failing to act prudently when determining benefits owed to Plan participants by, *inter alia*, ensuring that all benefits paid are/were in conformity with ERISA's requirements set forth in 29 U.S.C. §§ 203, 204, and 205, which caused Class members to receive less than the full value of their ERISA-protected accrued benefit and violated the Plans Committee's duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

E.      Failing to update the unreasonable and outdated assumptions applied to Class members' benefits, despite having discretionary authority under the Plan's terms to update the assumptions;

F.      Following Plan terms that violate ERISA (specifically 29 U.S.C. §§ 203, 204, and 205), which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in participants receiving less than the actuarial equivalent of their vested accrued benefit and also results in participants forfeiting a portion of their vested accrued benefit;

132.    As a direct and proximate result of these fiduciary breaches, Class members lost, on information and belief, millions of dollars in vested accrued pension benefits.

133.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

134.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall

be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

135.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff, on behalf of the Plan, seeks all available and appropriate remedies against the Plans Committee to redress and make good to the Plan all losses caused by its violations of ERISA § 404, 29 U.S.C. § 1104, including but not limited to the relief to the Plan requested below in the Prayer For Relief.

136.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

137.     Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available equitable relief against the Plans Committee to redress its violations of ERISA and provide all appropriate relief to Plan participants, including but not limited to the relief requested below in the Prayer For Relief.

## VIII.  PRAYER FOR RELIEF

Plaintiff prays that judgment be entered against Defendants on all claims and seeks the following relief:

A. A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's actuarial equivalence requirement set forth in § 204(c)(3), 29 U.S.C. § 1054(c)(3) and violate ERISA's anti-forfeiture provision at § 203(a), 29 U.S.C. § 1053(a).

B.  A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's joint and survivor annuity requirements set forth in § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

C.  A declaratory judgment that the Plans Committee breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participant in conformance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

D.  Reformation of the Plan: (i) to provide that Class members receive the same updated actuarial assumptions that apply to those whose benefits were calculated after the April 1, 2021 amendment took effect; (ii) to bring the Plan into full compliance with ERISA; and (iii) to pay all benefits owed to Class members based on the reformed plan.

E.  An injunction ordering Defendants: (i) to accurately disclose to all Class members their optional forms of benefits as recalculated under the reformed plan, whether or not that individual has started collecting pension benefits; (ii) to eliminate and bar any future use of actuarial assumptions that result in less than the actuarial equivalent value of the participant's single life annuity at retirement; (iii) to bring the Plan into compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); and (iv) to recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

F.  An order requiring Defendants to provide an accounting of all prior payments of benefits to the Class under the Plan for which the outdated and unreasonable assumptions discussed herein were used to determine joint and survivor annuities, and

provide information to recalculate those payments to Class members in compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

G. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to pay future benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

H. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

I. Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiff and other Class members in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

J. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

K. An order estopping Defendants from applying to the Class the actuarial assumptions that violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) and requiring Defendants instead to pay benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) .

L.  Relief to the Plan from the Plans Committee for its violations of ERISA § 404, 29 U.S.C. § 1104, including a declaration that the actuarial assumptions applied to Class members' joint and survivor annuities violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); restoration of losses to the Plan and its participants caused by the Plans Committee's fiduciary violations; disgorgement of any benefits and profits the Plans Committee received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring the Plans Committee to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the requirements set forth in ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

M.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law.

N.  An award of Plaintiffs' attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

O.  An order awarding, declaring or otherwise providing Plaintiff and the Class any other appropriate equitable relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

Dated: November 1, 2021

Respectfully submitted,

_/s/ Mary J. Bortscheller_
Michelle C. Yau (*pro hac vice* forthcoming)
Mary J. Bortscheller (*pro hac vice* forthcoming)
Daniel J. Sutter (*pro hac vice* forthcoming)
Ryan A. Wheeler (*pro hac vice* forthcoming)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
mbortscheller@cohemilstein.com
dsutter@cohenmilstein.com
rwheeler@cohenmilstein.com

Todd Jackson (*pro hac vice* forthcoming)
Nina Wasow (*pro hac vice* forthcoming)
FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994
todd@feinbergjackson.com
nina@feinbergjackson.com

Peter K. Stris (*pro hac vice* forthcoming)
Rachana A. Pathak (*pro hac vice* forthcoming)
Victor O'Connell (*pro hac vice* forthcoming)
John Stokes (*pro hac vice* forthcoming)
Dana Berkowitz (NY Bar No. 5155270)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
dberkowitz@stris.com

Shaun P. Martin (*pro hac vice* forthcoming)
University of San Diego Law School
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

**_Attorneys for Plaintiffs_**

## <u>ATTORNEY ATTESTATION</u>

I, Dana Berkowitz, hereby attest that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: October 29, 2021                  /s/ *Dana Berkowitz*
                                    _____
                                    Dana Berkowitz

34