**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Janet Duke on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Luxottica U.S. Holdings Corp., Oakley, Inc., Luxottica Group ERISA Plans Compliance & Investment Committee, and Luxottica Group Pension Plan,<br><br>　　　　　　Defendants. | Case No. 1:21-cv-06072-JMA-AYS<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)[1]**

---

[1] Defendants filed a pre-motion letter seeking to move to compel arbitration or in the alternative dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. 23). While this Court's February 4, 2022 Order stated that it "construe[d] Defendants' pre-motion letter as a motion to compel arbitration," it was unclear whether Defendants should also file supplemental briefing with respect to their motions under Rules 12(b)(1) or 12(b)(6) or whether the Court intended to first resolve Defendants' motion to compel arbitration. To the extent the Court intended to address Defendants' alternative arguments for dismissal under Rule 12, particularly given its obligation to independently evaluate its subject matter jurisdiction, Defendants have included them herein.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  RELEVANT FACTUAL ALLEGATIONS AND BACKGROUND ............................ 3

    A.  Plaintiff's Pension Benefits.................................................................... 3

    B.  Plaintiff's Arbitration Agreement. ......................................................... 4

III.  ARGUMENT ....................................................................................... 6

    A.  Plaintiff's Claims Are Subject To Individual Arbitration...................................... 6

        1.  A Valid Contract To Arbitrate Was Formed................................................ 7

        2.  The Agreement Covers The ERISA Claims Here. ................................... 8

        3.  This Court Must Compel Individual, Not Class, Arbitration.................. 11

    B.  Plaintiff's Claims Should Be Dismissed For Lack Of Article III Standing Under Rule 12(b)(1)........................................................................... 14

        1.  Standard of Review Under Fed. R. Civ. P. 12(b)(1)............................. 14

        2.  On The Face Of The Complaint, Plaintiff Lacks Article III Constitutional Standing To Pursue Claims For Losses To The Plan Under 29 U.S.C. §§ 1109 and 1132(a)(2). ............................................... 16

        3.  As A Factual Matter, Plaintiff Lacks Article III Constitutional Standing To Challenge The Plan's Actuarial Assumptions, Because Her Monthly Benefit Would Be Lower If The Plan Had Used The Actuarial Assumptions She Alleges Are "Reasonable." ......... 18

    C.  Plaintiff's Claims Should Also Be Dismissed Under Fed. R. Civ. P. 12(b)(6). ........................................................................................... 21

        1.  Plaintiff Has Not Stated A Claim Under ERISA § 203(a), 29 U.S.C. § 1053(a). .................................................................................. 21

        2.  Plaintiff Has Not Stated A Claim Under ERISA § 205, 29 U.S.C. § 1055....................................................................................... 23

        3.  Plaintiff Has Not Stated A Claim Under ERISA § 204, 29 U.S.C. § 1054....................................................................................... 25

IV.  CONCLUSION.................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Alessi v. Raybestos-Manhattan, Inc.*,
    451 U.S. 504 (1981)............................................................................................23

*Alfarone v. Bernie Wolff Constr. Corp.*,
    788 F.2d 76 (2d Cir. 1986)..............................................................................14

*Anderson v. AIG Life & Ret.*,
    199 F. Supp. 3d 1371 (S.D. Ga. 2016).............................................................10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)............................................................................................6

*Belknap v. Partners Healthcare Sys., Inc.*,
    No. 19-11437 (D. Mass.)..................................................................22, 23, 25

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
    926 F.2d 116 (2d Cir. 1991)..............................................................................6

*Bonneau v. Plumbers Pipefitters Local Union 51 Pension Tr. Fund ex rel. Bolton*,
    736 F.3d 33 (1st Cir. 2013)..............................................................................24

*Brass v. Am. Film Techs. Inc.*,
    987 F.2d 142 (2d Cir. 1993)............................................................................21

*Carter v. HealthPort Techs. LLC*,
    822 F.3d 47 (2d Cir. 2016)...........................................................................2, 18

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    990 F.3d 173 (2d Cir. 2021).....................................................................*passim*

*Corl v. Thomas & King*,
    2006 WL 1629740, 2006-Ohio-2956 (Oh. Ct. App. 10th Dist. June 13, 2006) .......................8

*D'Antuono v. Serv. Rd. Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011)..............................................................13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).................................................................2, 14, 15, 20

*Davis v. FEC*,
    554 U.S. 724 (2008)..........................................................................................15

*DeVito v. Local 553 Pension Fund*,
   2005 WL 167590 (S.D.N.Y. Jan. 26, 2005) ...................................................................22

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010) .............................................................................................3

*DuBuske v. Pepsico, Inc.*,
   2019 WL 4688706 (S.D.N.Y. Sept. 25, 2019), *reconsideration denied in pertinent part by*,
   2019 WL 5864995 (S.D.N.Y. Nov. 8, 2019) ...........................................................21, 25

*Engers v. AT&T*,
   2002 WL 32159586 (D.N.J. Oct. 17, 2002) ....................................................................22

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ..........................................................................................6, 12, 13

*Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*,
   544 F.2d 1126 (2d Cir. 1976) ...........................................................................................2

*Faconti v. Potter*,
   242 F. App'x 775 (2d Cir. 2007) ....................................................................................21

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ........................................................................................................23

*Guadagno v. Wallack Ader Levithan Assocs.*,
   932 F. Supp. 94 (S.D.N.Y. 1996) ...................................................................................18

*Herrera Gollo v. Seaborne Puerto Rico, LLC*,
   2017 WL 657430 (D.P.R. Feb. 17, 2017) .......................................................................10

*Holick v. Cellular Sales of N.Y., LLC*,
   802 F.3d 391 (2d Cir. 2015) .............................................................................................6

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011) .............................................................................................7

*In re UBS ERISA Litig.*,
   2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F.
   App'x 27 (2d Cir. 2015) ..................................................................................................15

*Laurent v. PricewaterhouseCoopers LLP*,
   794 F.3d 272 (2d Cir. 2015) ...........................................................................................24

*Legair v. Cir. City Stores, Inc.*,
   213 F. App'x 436 (6th Cir. 2007) .....................................................................................7

*Mass. Mut. Life. Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ............................................................................................................16, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .......................................................................................................................7

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
  446 U.S. 359 (1980) ................................................................................................................23

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) .....................................................................................................6

*One Lifestyle, Ltd. v. Mohiuddin*,
  172 N.E.3d 507 (Oh. Ct. of App. 10th Dist. 2021) ..................................................................7

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...........................................................................15

*Randolph v. Green Tree Fin. Corp.*,
  244 F.3d 814 (2001) ................................................................................................................11

*Rossi v. Bos. Gas Co*.,
  1994 WL 548101 (D. Mass. July 7, 1994) ..............................................................................22

*Schnabel v. Trilegiant Corp*.,
  697 F.3d 110 (2d Cir. 2012) .....................................................................................................7

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983) ..................................................................................................................14

*Shearson/Am. Exp., Inc. v. McMahon*,
  482 U.S. 220 (1987) ..................................................................................................................6

*Smith v. Rockwell Automation, Inc*.
  2020 WL 7714663 (E.D. Wis. Dec. 29, 2020) ......................................................................20

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd*.,
  999 F.3d 828 (2d Cir. 2021) .....................................................................................................7

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................................15

*Stanley v. George Washington Univ.*,
  394 F. Supp. 3d 97, 108-09 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. March 24,
  2020) .........................................................................................................................................9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..................................................................................................................6

-iv-

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................21

*Thole v. U.S. Bank, N.A.*,
   140 S. Ct. 1615 (2020) ............................................................ *passim*

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017)................................................................2, 15, 18

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
   131 F. Supp. 3d 103 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016) ............................15

STATUTES

9 U.S.C. § 2 ..........................................................................................6

9 U.S.C. § 4 ..........................................................................................7

26 U.S.C. § 417(e) ......................................................................3, 4, 19

26 C.F.R. § 1.411(a)-7(c)(2)(i) ...........................................................23

26 C.F.R. § 1.411(a)(13)-1(b)(3)(ii) ....................................................19

Employee Retirement Income Security Act of 1974 ("ERISA"),
   29 U.S.C. 1001 *et seq* ............................................................. *passim*

ERISA § 3(23), 29 U.S.C. § 1002(23)............................................19, 24

ERISA § 203(a), 29 U.S.C. § 1053(a) ....................................... *passim*

ERISA § 204, 29 U.S.C. § 1054 ................................................. *passim*

ERISA § 205, 29 U.S.C. § 1055 ................................................. *passim*

ERISA § 409, 29 U.S.C. § 1109 .......................................2, 12, 16, 17, 18

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ...........................2, 8, 9

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ............................... *passim*

ERISA § 502(a)(3), 29 U.S.C. §§ 1132(a)(3) ...............................12, 18

ERISA § 514(d),  29 U.S.C. § 1144(d).........................................13, 14

Retirement Equity Act of 1984, Pub. L. No. 98–397, 98 Stat. 1426 (Aug. 23, 1984)...................25

**RULES**

Fed. R. Civ. P. 12(b)(1)...................................................................................................3, 14, 15, 21

Fed. R. Civ. P. 12(b)(6)...................................................................................................................21

## I.      INTRODUCTION

This is an action under the Employee Retirement Income Security Act ("ERISA"). Plaintiff Janet Duke ("Plaintiff") alleges that she is a former employee of Luxottica and a participant in the Luxottica Group Pension Plan ("Plan"), a cash balance pension plan for Luxottica employees.  Compl. ¶ 27.  *See generally* Ex. A, Luxottica Group Pension Plan, As Amended and Restated effective January 1, 2015.  Plaintiff alleges that she elected and is receiving a 100% joint and survivor annuity ("JSA") pension benefit from the Plan.  Compl. ¶ 27.  Under this option, Plaintiff receives a stream of monthly payments for life and her spouse receives a stream of payments for life (100% of Plaintiff's benefit) if Plaintiff predeceases her spouse.  *Id*. ¶ 2; Ex. A, Plan § 2.28.

Plaintiff does not allege that she is entitled to additional benefits under the terms of the Plan or that her benefits were calculated incorrectly under the Plan.  Instead, Plaintiff alleges that the actuarial assumptions in the Plan for calculating her 100% JSA pension are outdated and not "reasonable."  Compl. ¶¶ 27, 72, 74, 78.  On that basis, Plaintiff claims that Defendants violated ERISA §§ 203(a), 204(c) and 205, 29 U.S.C. §§ 1053(a), 1054(c) and 1055.  *Id*. ¶¶ 100-02, 109-11, 118-20.

These claims do not belong in court.  Rather, Plaintiff's claims are subject to mandatory individual arbitration pursuant to her Dispute Resolution Agreement ("Agreement").   The Agreement applies "to disputes with any individual (including Luxottica's employees, agents, supervisors, officers or directors) or entity (including any company affiliated with Luxottica, its parent(s) or subsidiaries, if any) arising out of or related to the employment relationship or the termination of that relationship . . . *and claims arising under the . . . Employee Retirement Income Security Act* (except for claims for employee benefits under any benefit plan sponsored by the

Company)."[2]  The carve-out for "claims for employee benefits under any benefit plan" does not

apply to any of Plaintiff's claims here because she is not bringing a claim for benefits under the

Plan pursuant to 29 U.S.C. § 1132(a)(1)(B)—the statutory provision under which a participant

must pursue such claims.  Moreover, Plaintiff's effort to avoid arbitration fails because it is based

on her changing the words in the Agreement.  All of Plaintiff's claims are subject to arbitration

under the Agreement.

Even if some of Plaintiff's claims were not subject to arbitration, they would be subject to

dismissal for lack of Article III constitutional standing.  First, on the face of the Complaint,

Plaintiff lacks Article III standing to pursue a claim for losses "to the Plan" under 29 U.S.C. §§

1109 and 1132(a)(2) because the amount of assets in a defined benefit pension plan (like the Plan

here) has no impact on the amount of Plaintiff's benefits.  *Thole v. U.S. Bank, N.A.*,

140 S. Ct. 1615, 1619-22 (2020); *see also* Compl. ¶ 30.  Whether Plaintiff wins or loses *this claim*

has no effect on her benefit entitlement, so she lacks Article III standing to pursue it.  *See Town of*

*Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("plaintiff must demonstrate standing

for each claim he seeks to press and for each form of relief that is sought.") (citation omitted);

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 353 (2006) (constitutional standing is not

"commutative" or "dispensed in gross") (citation omitted).

Second, as a factual matter,[3] Plaintiff has no Article III standing as to the rest of her claims

because she personally has suffered no injury in fact from Defendants' alleged failure to calculate

---

[2] Per the Court's February 4, 2022 Order, Defendants have attached a true and correct copy of the 2015 Luxottica Associate Guide for Janet Duke, which contains the Agreement.  *See* Ex. B, Declaration of Kim Hoffman ("Hoffman Decl."), attaching the Agreement as Ex. 1.

[3] As explained herein, Defendants bring a factual challenge to Plaintiff's Article III constitutional standing.  As such, they may "proffer[ ] evidence beyond the [p]leading," and the Plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion  . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

her pension benefit using what she deems to be "reasonable" actuarial assumptions set forth in 26 U.S.C. § 417(e).  Compl. ¶¶ 27, 86.  In fact, applying the "417(e)" assumptions (instead of the Plan's actuarial assumptions) to either Plaintiff's age-65 annuity or her cash balance account would result in Plaintiff receiving approximately $40-$100 *less* per month than the $869.51 benefit that she currently is receiving.  Plaintiff has suffered no redressable injury from using the Plan's assumptions, and her claims should be dismissed for that reason alone.

Lastly, and although the Court need not reach this issue, Plaintiff's claims under ERISA Sections 203, 204, and 205, 29 U.S.C. §§ 1053(a), 1054(c), 1055(a), (d), fail as a matter of law for the reasons explained below.

Plaintiff's claims should be compelled to individual arbitration and this matter stayed pending the outcome of that arbitration.  In the alternative, Plaintiff's claims should be dismissed under Rule 12(b)(1) for lack of Article III constitutional standing and 12(b)(6) for failure to state a claim.

## II.    RELEVANT FACTUAL ALLEGATIONS AND BACKGROUND

### A.    Plaintiff's Pension Benefits.

Plaintiff alleges that she is a former Luxottica employee and a vested participant in the Plan.  Compl. ¶¶ 2, 27.  Upon termination of employment, a Plan participant, like Plaintiff, can elect to receive a lump sum of her account balance or various annuity forms of payment.  The Plan is a cash balance pension plan, which means that the Plan calculates the benefits due to a participant via a formula that starts with a hypothetical account balance credited with pension credits (based on an employee's salary and years of service) and interest credits.  *See* Ex. A, Plan § 4.02.[4]

---

[4] The Plan is incorporated into the Complaint by reference.  *See e.g.*, Compl. ¶¶ 12, 14-16, 27, 32-34, 51-60, 69-72 (citing the Plan, its benefits, and/or its requirements); *see also DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (on motion to dismiss, court may consider ERISA plan document incorporated by reference into complaint).

Relevant here, Plaintiff alleges that she elected and is receiving a 100% JSA under the Plan—a benefit that "pays an annuity both to the participant for their life and for the life of the participant's surviving spouse." Compl. ¶¶ 2, 27. Plaintiff does not allege her age when she commenced her pension or the amount of her monthly benefit. According to the Complaint, had her benefit been calculated using "reasonable" actuarial assumptions—namely, those set forth in 26 U.S.C. § 417(e)—her JSA "would be larger," but Plaintiff does not allege the amount of that increase, her original benefit amount, her benefit calculations, or any numbers at all. *Id.* ¶ 27.

Because it is relevant to Defendants' factual challenge to Plaintiff's Article III standing, the Court can consider that Plaintiff commenced her 100% JSA benefit on November 1, 2016 when she was age 59 years and 9 months. *See* Ex. C, Declaration of Lawrence Sher ("Sher Decl.") ¶¶ 8, 10 & Ex. 1 (reflecting Plaintiff's benefit commencement date and birthdate). Plaintiff thus commenced her benefit before the Plan's normal retirement age of 65. *See* Ex. A, Plan § 2.32. Plaintiff's monthly benefit under the Plan is $869.51 per month. Sher Decl. at ¶ 10 & Ex. 1. Had Plaintiff's 100% JSA benefit been calculated using the assumptions in 26 U.S.C. § 417(e) at the time of her benefit commencement—the assumptions that she claims are reasonable—her benefits would be $40-$100 per month *lower* than she currently is receiving. *Id.* at ¶¶ 12-14. That is, converting Plaintiff's cash balance account into a 100% JSA at her benefit commencement date using the "417(e)" assumptions would result in a monthly benefit of $829.20. *Id.* at ¶ 13. And converting Plaintiff's age-65 single life annuity into the 100% JSA at her benefit commencement date using the "417(e)" assumptions would result in a monthly benefit of $768.25. *Id.* at ¶ 14. Both of these amounts are less than the monthly pension Plaintiff currently receives from the Plan.

### B. Plaintiff's Arbitration Agreement.

In 2015, Plaintiff entered into the Agreement. The Agreement contains a broad arbitration provision. Specifically, it provides, in relevant part, that:

Except as it otherwise provides, this Agreement applies, *without limitation*, to disputes with any individual (including Luxottica's employees, agents, supervisors, officers or directors) or entity (including any company affiliated with Luxottica, its parent(s) or subsidiaries, if any) *arising out of or related to the employment relationship or the termination of that relationship* (including post-employment defamation or retaliation), trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, termination, discrimination or harassment **and claims arising under the** Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, **Employee Retirement Income Security Act** (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance) . . . .

Hoffman Decl. ¶ 4, Ex. 1 at 51-52 (emphasis added). Although Plaintiff claimed in her pre-motion letter that this provision is limited to claims "arising out of or related to the employment relationship," that is wrong. By its terms, the Agreement applies to all claims "arising out of or related to the employment relationship . . . **_and claims arising under_** . . ." ERISA and several other specific statutes. *Id*. at 52. As such, "claims arising under" ERISA and the other specifically enumerated statutes are subject to arbitration regardless of whether they arise out of or relate to Plaintiff's employment or the termination of Plaintiff's employment.

The arbitration provision of the Agreement also has a class action waiver requiring any action to be brought on an individual basis only: "Both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective or private attorney general representative basis on behalf of others." *Id*. Moreover:

In any case in which (1) the dispute is filed as a class, collective or private attorney general representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, or representative action, to that extent, must be litigated in a civil court of competent jurisdiction. However, the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

*Id.* at 53.  In other words, if for some reason the class action waiver provision is finally adjudicated to be invalid as to certain claims, those claims must be brought in court, but the remaining claims remain subject to individual arbitration.

## III.   ARGUMENT

### A.    Plaintiff's Claims Are Subject To Individual Arbitration.

This Court should compel individual arbitration because Plaintiff is subject to a binding arbitration agreement covering all the ERISA claims in this case.  The Federal Arbitration Act ("FAA") dictates that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The Supreme Court has "described this provision as reflecting . . . a liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).[5]  "This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."  *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  As the Second Circuit has aptly held, this includes claims brought under ERISA.  *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) ("Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims.")

Courts within the Second Circuit consider two factors when deciding if a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue."  *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).  Where both factors are met, as here, the FAA requires that "the

---

[5] *See also Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1619 (2018) (explaining that through the FAA "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings"); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'") (citation omitted); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (explaining that the FAA "embod[ies] [a] national policy favoring arbitration.").

court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Importantly, "*[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ....*" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (same). Both factors are satisfied here.

### 1. A Valid Contract To Arbitrate Was Formed.

Starting with the first factor, whether the parties formed a valid contract to arbitrate is governed by state law. *See, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."); *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834 (2d Cir. 2021) (same). Here, Luxottica offered Plaintiff the option to enter into the Agreement, with an Ohio choice of law clause, that would require both her and Luxottica to arbitrate claims they had against each other.[6] Hoffman Decl. ¶ 4, Ex. 1 at 45, 51-52. Plaintiff signed an acknowledgement that she had read the Agreement, had the option to opt-out of, or participate in, the Agreement, and indicated that she wished to participate in the Agreement. Hoffman Decl. ¶¶ 4, 6-8, Ex. 1 at 56 (acknowledging that she had the right to opt-out but selecting "I wish to participate"). This constitutes offer and acceptance. *See One Lifestyle, Ltd. v. Mohiuddin*, 172 N.E.3d 507, 515 (Oh. Ct. of App. 10th Dist. 2021) (employee's electronic signature on arbitration agreement was binding under Ohio law). *Cf. Legair v. Cir. City Stores, Inc.*, 213 F. App'x 436, 439 (6th Cir. 2007) (arbitration agreement was

---

[6] "Courts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment." *Soliman*, 999 F.3d at 833 (citations omitted). Thus, on a motion to compel arbitration, the court can consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits." *Id.* at 833-34 (citations omitted). It is therefore appropriate for the Court to consider the Agreement.

enforceable under Ohio law, where the plaintiff signed a form acknowledging that he could opt-out of the arbitration program but did not do so).[7]

The parties thus entered into a valid contract for arbitration.  Plaintiff agrees.  In response to Defendants' pre-motion letter, Plaintiff did not dispute that she is subject to an agreement to arbitrate but rather argued only that her ERISA claims "fall outside the Arbitration Agreement." (Dkt. 28)  While Plaintiff is wrong for the reasons explained below, the Parties agree that a valid, binding agreement to arbitrate exists.

### 2.    The Agreement Covers The ERISA Claims Here.

Turning to the second factor, the Agreement applies to "claims arising under . . . *[the] Employee Retirement Income Security Act* (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance)."  Hoffman Decl. ¶ 4, Ex. 1 at 52 (emphasis added).  All of Plaintiff's claims arise under ERISA and therefore are subject to arbitration.

First, the carve-out for "claims for employee benefits *under any benefit plan* sponsored by the Company" does not apply here.  *Id.*  (emphasis added).  ERISA § 502(a)(1)(B) is the statutory provision allowing a plaintiff to make a claim for benefits under an ERISA plan.  *See* 29 U.S.C. § 1132(a)(1)(B) (allowing a participant or beneficiary to bring an action "to recover benefits due to him *under the terms of his plan*, to enforce his rights under the terms of the plan,

---

[7] The Agreement was also supported by consideration.  Where "both parties agree to take certain disputes to arbitration and to be bound by the outcome," this constitutes sufficient consideration to render an arbitration agreement enforceable under Ohio law.  *Corl v. Thomas & King*, 2006 WL 1629740, at *5, 2006-Ohio-2956 ¶ 20 (Oh. Ct. App. 10th Dist. June 13, 2006).  That is precisely the case here.  *See* Hoffman Decl. ¶ 4, Ex. 1 at 52 ("The Arbitration portion of the Dispute Resolution Agreement also is intended to cover all legal disputes that the Company could otherwise file in court against you.").

or to clarify his rights to future benefits under the terms of the plan") (emphasis added). As the

Court in *Stanley v. George Washington Univ*. explained:

> By its terms, the release carves out only claims for benefits "under employee benefit plans." . . . [T]he common legal usage of the term under . . . [is] pursuant to, in accordance with, or as authorized or provided by.  Here, then, the phrase "claims . . . under employee benefit plans" refers to claims brought pursuant to, or by the authority of, the participant's employee benefit plan.  Understood in the context of ERISA, such claims plainly refer to contractual, or "plan-based," claims of the kind that typically are brought pursuant to ERISA § 502(a)(1)(B).
>
> * * *
>
> Confirming this reading, the language "under employee benefit plans" in the carve-out closely parallels ERISA section 502(a)(1)(B), which provides that participants may bring contractual claims for " benefits . . . *under the terms of [their employee benefit] plan[s]*." ERISA § 502(a)(1)(B) (emphasis added).

394 F. Supp. 3d 97, 108-09 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. March 24, 2020)

(internal citations and quotations omitted) (collecting cases).

As noted, Plaintiff does not bring a claim for benefits under ERISA Section 502(a)(1)(B),

29 U.S.C. § 1132(a)(1)(B), here.  Nor could she.  Plaintiff did not exhaust the Plan's claims and

appeal procedures as would be required before asserting a plan-based claim in court.  And Plaintiff

does not allege that her benefits were calculated incorrectly under the Plan's terms, or that

Defendants misinterpreted or misapplied the Plan's terms.  As such, the carve-out for "employee

benefits *under any benefit plan*" does not apply here.  Plaintiff's claims are subject to arbitration.

Second, Plaintiff's argument that the arbitration provision is "limited to 'claims arising out

of or relating to Employee's employment or the termination of employment,'" (Dkt. 28), is wrong.

While the Agreement does apply to "disputes with any individual … arising out of or related to

the employment relationship or the termination of that relationship," it is not *limited* to such

disputes.  Following the phrase on which Plaintiff focuses, the arbitration provision goes on to say

that arbitration also is required for "*and claims arising under* the Uniform Trade Secrets Act, Civil

Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act,

Family Medical Leave Act, Fair Labor Standards Act, *Employee Retirement Income Security Act* . . . ."  Hoffman Decl. ¶ 4, Ex. 1 at 52.  Under this language, arbitration is required for claims arising under these specific statutes—including ERISA—regardless of whether the dispute arises under or relates to Plaintiff's employment.[8]  Plaintiff's contrary argument either reads out of the Agreement the actual words in the provision "and claims arising under . . . [ERISA]," or seeks to add new words akin to "but only insofar as such claims under these statutes relate to Plaintiff's employment or the termination of Plaintiff's employment."  Of course, the Agreement could have said that, but it does not.

Lastly, based on her misreading of the Agreement, Plaintiff contends that the Agreement is similar to the language in the arbitration agreement at issue in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021).  She is mistaken.  In *Cooper*, the plaintiff asserted an ERISA claim related to investment losses against a third-party investment manager—not her current or former employer or her employer's retirement plan—concerning the investment of plan assets.  *See generally id*.  The arbitration agreement in that case did not apply to all "*claims arising under*" ERISA (like the Agreement here does), but only to "legal claims arising out of or relating to employment, application for employment, or termination of employment, except for claims specifically excluded under the terms" of the agreement.  *Id.* at 178.  The Second Circuit held that the investment claims against the third-party investment manager did not relate to the plaintiff's employment because they had nothing to do with the plaintiff's actual employment.  *Id.* at 182.  This made sense because, as the Court noted, none of the facts relevant to the plaintiff's claim

---

[8]   *See, e.g., Herrera Gollo v. Seaborne Puerto Rico, LLC*,  2017 WL 657430, at *2-3 (D.P.R. Feb. 17, 2017) (that employee's arbitration agreement "specifically lists certain statutes under which any claims shall be arbitrable" provided independent basis for arbitrating enumerated statutory claims in addition to language requiring arbitration of claims arising out of or relating to employment); *Anderson v. AIG Life & Ret.*, 199 F. Supp. 3d 1371, 1379 (S.D. Ga. 2016) (arbitration agreement covered both "employment-related claims" in addition to "specifically list[ing] statutory claims, expressly including those brought by Plaintiff in this action").

against the third-party investment advisor had anything to do with the plaintiff's salary, tenure, or experience with his employer. *Id.* at 183-84. Thus, the plaintiff's ERISA fiduciary breach claims did not "relate to" plaintiff's employment and were not covered by the agreement.

Here, of course, the Agreement's language is different and applies by its terms to Plaintiff's claims. *See supra* at 8-10. Moreover, even if the Agreement were limited to just claims "arising out of or related to [Plaintiff's] employment or the termination of employment," the claims in this case would still be subject to arbitration. Unlike in *Cooper*, Plaintiff *is* suing her former employer and her employer's retirement plan concerning the calculation of her retirement benefits, not investment decisions made by a third party. The amount of Plaintiff's benefits depends on her salary and her years of service. *See supra* at 3. And Plaintiff specifically alleges that the issues about which she complains *impacted her retirement decisions*. *See, e.g.*, Compl. ¶ 15 ("When *retiring or deciding whether to retire*, Plan participants like Plaintiff consider information provided by Defendants about their retirement options under the Plan.") (emphasis added).

In sum, Plaintiff's claims are subject to arbitration because they fall squarely within the express terms of the arbitration provision to which she agreed. Because any doubts should be resolved in favor of arbitration, the claims should be compelled to arbitration. *See supra* at 7.

### 3.      This Court Must Compel Individual, Not Class, Arbitration.

Although Plaintiff has brought her ERISA claims on a class basis, she has agreed to arbitrate on an individual basis only. The Agreement provides: "[b]oth the Company and you agree to bring *any dispute in arbitration on an individual basis only*, and *not on a class, collective or private attorney general representative basis on behalf of others*." Hoffman Decl. ¶ 4, Ex. 1 at 52 (emphasis added); *see, e.g., Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (2001) (arbitration agreement is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights).

-11-

Plaintiff appears to assert that she is personally owed additional benefits under 29 U.S.C. §§ 1053, 1054, and 1055. *See supra* at 2-4. To redress these alleged statutory violations, Plaintiff also appears to seek the remedy of "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3) and recovery of losses "to the Plan" under 29 U.S.C. § 1132(a)(2). Compl. ¶¶ 18, 106, 115, 124, 134.

In her pre-motion letter, Plaintiff seemed to argue that this *entire* lawsuit cannot be subject to individual arbitration because "she asserts claims under 29 U.S.C. §1132(a)(2)," and thus she "necessarily sues on behalf of the entire plan." (Dkt. 28). According to Plaintiff, by virtue only of her claims under 29 U.S.C. §1132(a)(2), the Agreement's entire class action waiver is unenforceable under *Cooper*. (Dkt. 28). There, the Second Circuit stated, in *dicta*, that an arbitration agreement containing a class action waiver may be in tension with this Circuit's requirement that a plaintiff bringing a claim under 29 U.S.C. §1132(a)(2) "on behalf of the plan" must demonstrate his or her adequacy to represent other plan stakeholders. 990 F.3d at 184.

Plaintiff is wrong. Plaintiff does not assert (nor could she) that her claims under 29 U.S.C. §§ 1053, 1054, and 1055, or her claim for relief under 29 U.S.C. § 1132(a)(3), are "on behalf of the entire plan." (Dkt. 28). To the contrary, these are all individual claims challenging the amount of her benefits and the benefits of other putative class members she seeks to represent. *Compare* Compl. ¶ 18 ("Plaintiff brings this action on behalf of the Class pursuant to [] 29 U.S.C. § 1132(a)(3)"), *with id.* ¶ 135 ("Pursuant to [] 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff, on behalf of the Plan . . ."). So even by Plaintiff's argument, nothing precludes this Court from enforcing the Agreement "according to [its] terms," *Epic Sys.*, 138 S. Ct. at 1619, including the class-action waiver provision. None of Plaintiff's claims under U.S.C. §§ 1053, 1054, 1055, and 1132(a)(3) were at issue in *Cooper* and thus are not even arguably subject to its analysis. Plaintiff does not contend otherwise. Accordingly, by its terms, even if Plaintiff is correct that her 29 U.S.C.

-12-

§ 1132(a)(2) claim must remain in this Court (she is not), the Agreement mandates that each of

her remaining ERISA claims must proceed to individual arbitration.  It provides:

> In any case in which (1) the dispute is filed as a class, collective or private attorney
> general representative action and (2) there is a final judicial determination that all
> or part of the Class Action Waiver is unenforceable, the class, collective, or
> representative action, to that extent, must be litigated in a civil court of competent
> jurisdiction.  *However, the portion of the Class Action Waiver that is enforceable
> shall be enforced in arbitration*.

*See* Hoffman Decl. ¶ 4, Ex. 1 at 53 (emphasis added).[2]

But Plaintiff's claim under § 1132(a)(2) also is subject to individual, non-class arbitration.

The language Plaintiff points to in *Cooper* is *dicta*, as the Second Circuit in that case already had

concluded that the plaintiff's dispute did not fall within the arbitration provision at issue.  Even so,

Plaintiff's reliance on *Cooper* is misplaced, because *Cooper* involved a defined contribution plan,

not a defined benefit plan like this case.  As the Supreme Court recently explained, that difference

matters.  *Thole*, 140 S. Ct. at 1618 ("Of decisive importance to this case, the plaintiffs' retirement

plan is a defined-benefit plan, not a defined-contribution plan.").  Nothing in *Cooper* requires a

participant in a defined benefit plan, like Plaintiff here, to sue only as a class action.  And to the

extent Plaintiff claims that her rights under ERISA control over the FAA, that is fundamentally

inconsistent with both ERISA's text and Supreme Court precedent.  *See Epic Sys.*, 138 S. Ct. at

1627 ("In many cases over many years," the Supreme "Court has heard and rejected efforts to

conjure conflicts between the [FAA] and other federal statutes.").  Here, ERISA itself even

provides that in the event of a conflict, ERISA yields to any other federal law, which would include

the FAA.  29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to alter, amend,

---

[2] *Cf. D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 313-14, 344 (D. Conn. 2011) (compelling individual arbitration for two plaintiffs while permitting claims of third plaintiff to proceed in court).

modify, invalidate, impair, or supersede any law of the United States.").[10]  The Supreme Court has

construed this provision as preventing ERISA from causing "a disruption of the enforcement

scheme contemplated by" another federal statute.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102

(1983); *cf. Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986) (applying

§ 514(d) to federal labor statute providing for arbitration procedures in union pension plans).  Yet

that is precisely what Plaintiff is trying to do.  Her efforts should be rejected, just as the Supreme

Court has done time and again, and just as 29 U.S.C. § 1144(d) requires.

Accordingly, Plaintiff's claims should be compelled to individual arbitration and this

action stayed pursuant to Section 3 of the Federal Arbitration Act.  *See* 9 U.S.C. § 3 (where suit is

referrable to arbitration, the court "**shall** on application of one of the parties **stay** trial of the action

until such arbitration has been had") (emphasis added).

**B.**      **Plaintiff's Claims Should Be Dismissed For Lack Of Article III Standing Under Rule 12(b)(1).**

In the event this Court declines to compel individual arbitration of any of Plaintiff's claims

(which it should not), those claims are subject to dismissal for lack of subject matter jurisdiction

under Fed. R. Civ. P. 12(b)(1) because Plaintiff lacks Article III standing to pursue them.

**1.      Standard of Review Under Fed. R. Civ. P. 12(b)(1).**

The Supreme Court has explained that "[no] principle is more fundamental to the

judiciary's proper role in our system of government than the constitutional limitation of federal-

court jurisdiction to actual cases or controversies."  *Cuno*, 547 U.S. at 341-42.  Indeed,

> [t]he case-or-controversy requirement thus plays a critical role, and Article III standing . . . enforces the Constitution's case-or-controversy requirement . . . That requires plaintiffs, as the parties now asserting federal jurisdiction, to carry the burden of establishing their standing under Article III.

---

[10]      The Second Circuit in *Cooper* did not mention 29 U.S.C. § 1144(d) in its analysis.

*Id.* A plaintiff who has not suffered an actual concrete and particularized injury from the conduct of which she complains does not have Article III standing. *Thole*, 140 S. Ct. at 1619-22 ("There is no ERISA exception to Article III[.]").[11] The "irreducible constitutional minimum of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The injury-in-fact element requires a showing that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citations omitted).[12]

Article III standing is not "commutative" or "dispensed in gross." *Cuno*, 547 U.S. at 352-53. Rather, Plaintiff "must demonstrate standing *for each claim [s]he seeks to press and for each form of relief that is sought*." *Town of Chester*, 137 S. Ct. at 1650 (emphasis added) (citation omitted); *Cuno*, 547 U.S. at 352, 353; *Davis v. FEC*, 554 U.S. 724, 734 (2008).

---

[11] *See also Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 125-27 (S.D.N.Y. 2015) (holding that under Rule 12(b)(1) plaintiff did not allege cognizable loss to provide Article III standing on specified ERISA breach of fiduciary duty claims), *aff'd*, 843 F.3d 561 (2d Cir. 2016); *In re UBS ERISA Litig.*, 2014 WL 4812387, at *3 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the. . . constitutional power to adjudicate it.") (citations omitted); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *3 (S.D.N.Y. Oct. 7, 2019) ("[T]he party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists.").

[12] The mere act of filing a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 1547 n.6. Similarly, the mere fact that an ERISA plan participant purports to sue in a derivative capacity "on behalf of the plan," as Plaintiff alleges here, does not absolve her obligation to "satisfy Article III's individualized-injury requirement." *Patterson*, 2019 WL 4934834, at *5. Plaintiff must demonstrate standing for "each claim" and "for each form of relief that is sought." *Davis*, 554 U.S. at 734 (2008).

**2.** **On The Face Of The Complaint, Plaintiff Lacks Article III Constitutional Standing To Pursue Claims For Losses To The Plan Under 29 U.S.C. §§ 1109 and 1132(a)(2).**

First, Defendants bring a facial challenge to Plaintiff's Article III standing to pursue claims under 29 U.S.C. §§ 1109 and 1132(a)(2). *Thole*, 140 S. Ct. at 1619-22. As explained above, Plaintiff must have Article III standing as to each claim and each form of relief she seeks. Here, Plaintiff lacks Article III standing as to her claim under 29 U.S.C. §§ 1109 and 1132(a)(2) because she has not suffered an Article III injury *as to that claim* that would be redressable to her.

29 U.S.C. §§ 1132(a)(2) and 1109 only authorizes certain claims and certain forms of relief. Together, they require a fiduciary "to make good *to such plan* any losses *to the plan*. . . and to restore to such plan any profits of such fiduciary which have been made through use of assets *of the plan* by the fiduciary." (Emphasis added). These provisions do not authorize remedies to individual participants and beneficiaries. *Mass. Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[T]he entire text of § 409 persuades us that *Congress did not intend that section to authorize any relief except for the plan itself*.") (emphasis added).

Although not clear from the Complaint, it appears that Plaintiff is alleging that she is personally owed additional benefits under 29 U.S.C. §§ 1053, 1054, and 1055. Further, *if* the Plan is ordered to pay her additional benefits (the relief she seeks), then the Plan will have fewer assets than it currently does—which she suggests Defendants should restore to the Plan as "losses" under 29 U.S.C. §§ 1132(a)(2) and 1109. Aside from the speculative and circular nature of this claim, and that the Plan "losses" she is complaining about would only come about if she prevails on her other claims, Plaintiff lacks Article III standing to press a claim for losses on behalf of the Plan.

The Plan here is a defined benefit plan. *See supra* at 2, 13. That means that the amount of Plaintiff's benefits does not depend on the value of the assets in the Plan. *See Thole*, 140 S. Ct. at 1620 ("[A] defined-benefit plan is more in the nature of a contract. The plan participants' benefits

are fixed and will not change, regardless of how well or poorly the plan is managed.  The benefits paid to the participants in a defined-benefit plan *are not tied to the value of the plan*.") (emphasis added).  Thus, the Supreme Court recently held that participants in a defined benefit plan lack Article III standing to pursue claims under 29 U.S.C. §§ 1132(a)(2) and 1109.  *See Thole, supra*.

In *Thole*, the plaintiffs alleged mismanagement of a defined benefit plan that caused millions of dollars in plan losses.  *Thole*, 140 S. Ct. at 1618-19.  The plaintiffs sought an order requiring the defendants to pay damages and injunctive relief, including removal of the plan's fiduciaries.  *Id.*  The Supreme Court rejected the plaintiffs' claims for lack of Article III standing. *Id.*  As the Supreme Court explained: "If Thole and Smith were to win this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more."  As a result, the plaintiffs had not suffered an injury in fact on their claims for plan losses under 29 U.S.C. §§ 1132(a)(2) and 1109 and lacked Article III standing to pursue those claims.

The same is true here.  Regardless of whether Plaintiff prevails on her claims that Defendants used unreasonable assumptions when calculating her benefits, and regardless of whether she is awarded those benefits, Plaintiff's claim under 29 U.S.C. §§ 1132(a)(2) and 1109 necessarily seeks remedies for the Plan, not to her personally.  *Russell*, 473 U.S. at 144 ("[T]he entire text of § 409 persuades us that *Congress did not intend that section to authorize any relief except for the plan itself*.") (emphasis added).  But Plaintiff has not been harmed by the value of the Plan's assets, and any remedy to the Plan—or increase or decrease in the Plan's assets—will not impact Plaintiff's benefits at all.  In other words, whether Plaintiff loses or wins a claim under 29 U.S.C. §§ 1132(a)(2) and 1109 will not impact the amount of Plaintiff's benefits.  As in *Thole*, Plaintiff lacks Article III standing to pursue any claim under 29 U.S.C. §§ 1132(a)(2) and 1109.[13]

---

[13] Defendants acknowledge Plaintiff's allegation that the Plan is required to calculate her benefits using "reasonable" actuarial assumptions and that if it did so, her monthly benefit would be higher.  However, that is not a claim for losses

**3.** **As A Factual Matter, Plaintiff Lacks Article III Constitutional Standing To Challenge The Plan's Actuarial Assumptions, Because Her Monthly Benefit Would Be Lower If The Plan Had Used The Actuarial Assumptions She Alleges Are "Reasonable."**

Separately, and as a factual matter, Plaintiff lacks Article III standing to pursue her claims, because her monthly benefit would be lower if the Plan had used the actuarial assumptions that she alleges are reasonable.  This aspect of Defendants' challenge to Article III standing is factual.  Accordingly, Defendants may "proffer[ ] evidence beyond the [p]leading," and Plaintiff "will need to come forward with evidence of [her] own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter*, 822 F.3d at 57.   "[N]o presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."  *Guadagno v. Wallack Ader Levithan Assocs*., 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Here, Defendants have submitted a declaration from Lawrence Sher, an actuary, who performed calculations demonstrating that Plaintiff's benefits would be *lower* if the Plan used what she claims are "reasonable" 417(e) actuarial assumptions to calculate her benefits instead of the Plan's actuarial assumptions.  As a factual matter, Plaintiff has not suffered an Article III injury in fact as a result of the Plan's actuarial assumptions and there is no redressability.

More specifically, Plaintiff alleges in the Complaint that she was harmed because her 100% JSA benefit was calculated using Plan actuarial assumptions that were not "reasonable"—namely the 1971 GAM mortality table and a 7% interest rate.  Compl. ¶¶ 27, 57.  Plaintiff claims that the

---

*to the Plan* under 29 U.S.C. §§ 1132(a)(2) and 1109.  Rather, to the extent that claim is cognizable at all (and it is not), it must be brought under a different enforcement provision of ERISA, 29 U.S.C. § 1132(a)(3).  Plaintiff's Article III standing to pursue that claim does not give her Article III standing to pursue a claim for losses to the Plan because Plaintiff "must demonstrate standing *for each claim [s]he seeks to press and for each form of relief that is sought*." *Town of Chester*, 137 S. Ct. at 1650 (citation omitted) (emphasis added).

Plan should have instead used the Treasury interest rates and mortality table, as set out in 26 U.S.C. § 417(e).   Compl. ¶¶ 27, 42, 61.   This allegation underlies each of Plaintiff's claims. *Id*. ¶¶ 101, 111, 120, 131.   However, using the "reasonable" actuarial assumptions that Plaintiff advocates as of the date of her retirement results in a lower benefit than she is actually receiving.

Plaintiff does not allege what benefit she is using for any of her alleged comparisons.   The statutes she relies upon, however, all are based on the age-65 benefit, also known as the "normal retirement benefit" or "accrued benefit" under ERISA.   29 U.S.C. § 1053(a) speaks only to the "normal retirement benefit [] upon the attainment of *normal retirement age*."   29 U.S.C. § 1053(a) (emphasis added).   Under this Plan, that is the age-65 benefit.   *See supra* at 4.   29 U.S.C. § 1054(c)(3) likewise applies to the "accrued benefit," which is the age-65 benefit.   *See* 29 U.S.C. § 1002(23) (defining "accrued benefit" as the benefit "*expressed in the form of an annual benefit commencing at normal retirement age*") (emphasis added).   And 29 U.S.C. § 1055(d) defines certain terms that then apply to the requirements for the "accrued benefit" set forth in 29 U.S.C. § 1055(a) ("the *accrued benefit* payable to such participant shall be provided in the form . . . .") (emphasis added).   *See also infra* at 23-25 (discussing cases).   Moreover, for cash balance plans like the Plan here, there is a regulatory exception that allows plans to satisfy the actuarial equivalence requirements based on comparison to the cash balance account instead of the age-65 annuity.   *See* 26 C.F.R. § 1.411(a)(13)-1(b)(3)(ii) (plan can satisfy the actuarial equivalence requirements if it pays a benefit "that is greater than the actuarial equivalent, determined using reasonable actuarial assumptions, *of the then-current balance of a hypothetical account maintained for the participant*") (emphasis added).   Accordingly, Defendants address both calculations:  (1) comparing the benefit Plaintiff actually is receiving under the Plan to the benefit she would be entitled to if the Plan had converted her accrued benefit, age-65 annuity, into the

100% JSA form she is receiving using her preferred 417(e) assumptions; and (2) comparing the benefit Plaintiff actually is receiving under the Plan to the benefit she would be entitled to if the Plan had converted her cash balance account into the 100% JSA form she is receiving using her preferred 417(e) assumptions.

- First, Plaintiff is currently receiving a 100% JSA of $869.51 per month under the Plan. *See* Sher Decl. ¶ 10. Plaintiff's age-65 annuity under the Plan (payable in 2022) was $1,261.62 per month. *Id.* ¶ 9. If Plaintiff's age-65 single life annuity were converted into a 100% JSA commencing on her retirement date (November 2016) using the 417(e) 2016 mortality table and Treasury rate that she advocates, her monthly benefit would be just $768.25 per month. *Id.* ¶ 14. *That is $101.26 less than she is currently receiving*.

- Second, if Plaintiff's cash balance account were converted into a 100% JSA commencing on her retirement date (November 2016) using the 417(e) 2016 mortality table and Treasury rate that she advocates, her benefit would be $829.20 per month. *Id.* ¶¶ 11, 13. *That is $40.31 less than she is currently receiving*.

Under either scenario, Plaintiff would be worse off if her benefit were calculated using the 417(e) actuarial assumptions that she advocates. In other words: (1) Plaintiff has not been injured by the Plan using the allegedly "unreasonable" mortality table and interest rates, and (2) using Plaintiff's proposed "reasonable" actuarial assumptions would not redress any such injury. *Cuno*, 547 U.S. at 342 (for Article III standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (citation omitted). *Cf., Smith v. Rockwell Automation, Inc.*, 2020 WL 7714663, at *6 (E.D. Wis. Dec. 29, 2020) ("had the plan used the plaintiff's updated mortality assumptions, the value of the single life annuity he was offered would have been lower, not higher . . . I do not see how the plaintiff could have been harmed by the defendants' offering him a single life annuity that was higher in value than it would have been had the plan used reasonable actuarial assumptions").

Thus, Plaintiff's claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.[14]

### C.   Plaintiff's Claims Should Also Be Dismissed Under Fed. R. Civ. P. 12(b)(6).

Although the Court need not reach the merits of Plaintiff's claims, each too fails as a matter of law and are subject to dismissal for failure to state a claim upon which relief can be granted.[15]

### 1.   Plaintiff Has Not Stated A Claim Under ERISA § 203(a), 29 U.S.C. § 1053(a).

ERISA § 203(a) only requires that a "*normal retirement benefit* is nonforfeitable upon the attainment of *normal retirement age*." 29 U.S.C. § 1053(a) (emphasis added); *see also* Compl. ¶ 48 (citing statute). In other words, this statutory provision protects *one* thing: forfeiture of a participant's normal retirement benefit at normal retirement age. *Id.*

Plaintiff alleges that § 203(a) was violated because she "received less than the actuarial equivalent of [her] benefits (expressed as single life annuities) ..." Compl. ¶ 120. She does not allege, however, that she commenced her benefit at *normal retirement age*, such that she would be entitled to the protection of § 203(a).[16] Courts have consistently dismissed claims alleging violations of ERISA § 203(a) in these circumstances, and this Court should do the same. *See, e.g.*, *DuBuske v. Pepsico, Inc.*, 2019 WL 4688706, at *3-4 (S.D.N.Y. Sept. 25, 2019) (dismissing ERISA § 203(a) claim because the complaint did not allege plaintiff forfeited benefit at normal

---

[14] Plaintiff's claim that Defendants did not disclose to her that her benefits would be higher if they used 417(e) actuarial assumptions fails for lack of Article III standing for the same reasons as her underlying claims. That is, had the Plan used her preferred assumptions, her benefits would be lower, not higher, so there was nothing to disclose.

[15] Materials that are referenced in or central to Plaintiff's allegations, including the Plan document here, may be considered when ruling on a motion to dismiss pursuant to Rule 12(b)(6). *See supra* at 3 n.2; *see also e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (court may consider documents incorporated by reference, matters of which judicial notice may be taken, and documents in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit) (citing *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

[16] As explained above, Plaintiff does not allege the age at which she commenced her benefits, which is fatal to her claims. It is undisputed, however, that Plaintiff commenced her benefit at age 59 and 9 months. *See supra* at 4.

retirement age), *reconsideration denied in pertinent part by*, 2019 WL 5864995, at *3 (S.D.N.Y. Nov. 8, 2019); *Belknap v. Partners Healthcare Sys., Inc.,* No. 19-11437 (D. Mass.), Dkt. 33, slip op. at 7-9 (dismissing ERISA § 203(a) claim because, "according to the plain language of the provision, the anti-forfeiture provision 'attaches only after the employee attains 'normal retirement age,''" and plaintiff retired at age 62) (citation omitted); *DeVito v. Local 553 Pension Fund*, 2005 WL 167590, at *1 n.2, *5-6 (S.D.N.Y. Jan. 26, 2005) (dismissing certain ERISA § 203(a) claims, noting that the "complaint does not allege Plaintiff is of normal retirement age [which] in this case, [is] age sixty-five. [ERISA] therefore, gives plaintiff no vested right to receive benefits until he reaches that age") (citations omitted); *Rossi v. Bos. Gas Co*., 1994 WL 548101, at *4 (D. Mass. July 7, 1994) (citing cases).[17]

Notwithstanding that Plaintiff does not allege that she commenced her benefit at "normal retirement age," she argued in her response to Defendants' pre-motion letter that she still could state a claim under ERISA § 203(a) because the "'normal retirement benefit' that § 203 protects expressly includes 'the early retirement benefit under the plan.'" (Dkt. 28) (citing 29 U.S.C. § 1002(22)). That is wrong. To start, the statute specifically speaks to the normal retirement benefit at "normal retirement age." 29 U.S.C. § 1053(a). Plaintiff ignores that part of the statute. Moreover, the Complaint does not allege that the monthly amount of Plaintiff's early retirement benefit exceeds the monthly amount of her age-65 retirement benefit, such that it would be the "normal" benefit in any event. The District of Massachusetts correctly rejected this precise argument in *Belknap*, holding:

> It is true that ERISA defines "normal retirement benefit" to "mean[] the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22). However, because

---

[17] *See also Engers v. AT&T*, 2002 WL 32159586, at *8 (D.N.J. Oct. 17, 2002) (explaining that Section 203(a) prohibits forfeiture after "the attainment of normal retirement age").

plaintiff's benefit "is payable as an annuity in the same form upon early retirement and at normal retirement age"—specifically, a JSA—the "greater benefit is determined by comparing the amount of such annuity payments." 26 C.F.R. § 1.411(a)-7(c)(2)(i). ***Plaintiff does not allege that the monthly JSA payments he receives are greater than those he would have received if he retired at normal retirement age. Accordingly, in this case, his early retirement benefits are not the "normal retirement benefit."***

*Belknap,* No. 19-11437, Dkt. 33, slip op. at 7-9 at n. 2 (emphasis added); *see also* 26 C.F.R. § 1.411(a)-7(c)(2)(i).

The same is true here. Plaintiff does not allege the monthly 100% JSA she is receiving, let alone a comparison to the monthly benefit she would have allegedly received under the Plan if she waited to age 65 to commence her benefit. Her claim under ERISA Section 203(a), 29 U.S.C. § 1053(a), fails as a matter of law and should be dismissed.[18]

### 2. Plaintiff Has Not Stated A Claim Under ERISA § 205, 29 U.S.C. § 1055.

Plaintiff's claim under ERISA § 205 fares no better. As Plaintiff acknowledges, this provision applies only to the Qualified Joint and Survivor Annuity ("QJSA") and Qualified Optional Survivor Annuity ("QOSA"). 29 U.S.C. §§ 1055(a)-(d); Compl. ¶ 98. Under the Plan, the 50% Joint and Survivor Annuity *is* the QJSA. *See* Ex. A, Plan § 2.38. That means the 75% Joint & Survivor Annuity is the QOSA as a matter of law. 29 U.S.C. § 1055(d)(2)(B) (if the QJSA is the 50% survivor benefit, then the QOSA is the 75% survivor benefit). Plaintiff, however, alleges that she elected the 100% JSA. *See* Compl. ¶ 27. As a matter of law, that benefit is neither the QJSA nor QOSA, because that is how the statute defines it. 29 U.S.C. § 1055(d)(2)(B); *see also Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980) (ERISA is a "comprehensive and reticulated statute") (citations omitted).[19] Instead, it is just another optional

---

[18] *See also Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511-12 (1981) ("the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount *or a method for calculating the benefit*.") (emphasis added).

[19] *See also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) ("We have observed repeatedly

benefit Plaintiff could, and did, elect.  ERISA § 205 has no application to Plaintiff's benefit, and she therefore fails to state a claim under § 205 for that reason alone. [20]

Plaintiff's claim under ERISA § 205(a) is not cognizable for another reason.  Plaintiff's Complaint (¶ 98) cites ERISA § 205(d)(1), which merely *defines* the term "qualified joint and survivor annuity" that applies where the term is used elsewhere in the statute.  *Id.*  ("For purposes of this section, the term 'qualified joint and survivor' means an annuity . . . ").  The statutory provision itself does not impose any obligation on a plan to pay a benefit in that form or any other form; it is merely a definition of the QJSA and QOSA that applies "for purposes of this Section."

ERISA § 205(a), in turn, explains when these definitions apply.  It requires that, for certain participants, the "*accrued benefit* payable to such participant[s] shall be provided in the form of a qualified joint and survivor annuity."  29 U.S.C. § 1055(a) (emphasis added).  ERISA § 205(a) only applies with respect to the "accrued benefit," and that is the only place where the definitions in § 205(d) matter.  The "accrued benefit" is the benefit "expressed in the form of an annual benefit *commencing at normal retirement age.*"  29 U.S.C. § 1002(23) (emphasis added); *see also Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 274 (2d Cir. 2015) ("In plain English . . . an employee's accrued benefit is *the amount she would receive annually as an annuity after she reaches normal retirement*") (emphasis added); *Bonneau v. Plumbers Pipefitters Local Union 51 Pension Tr. Fund ex rel. Bolton*, 736 F.3d 33, 38 (1st Cir. 2013) ("'[t]he only apparent textual limit' of 29 U.S.C. § 1002(23) is that an 'accrued benefit' must be 'expressed in the form of an

---

that ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system.  We have therefore been especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text.").

[20] Congress could have included in 29 U.S.C. § 1055(a) and (d) protections for all optional forms of benefits.  But it did not.  And Congress could have defined the QOSA as always including both the 75% JSA and the 100% JSA.  But Congress chose instead to define the QOSA as only the 75% JSA where a plan (as here) chooses to define the QJSA as the 50% JSA.  That deliberate choice by Congress in this detailed and carefully crafted statute must be respected.

annual benefit commencing at normal retirement age'") (citation omitted); *DuBuske*, 2019 WL 4688706, at *4 (same); *Belknap*, No. 19-11437, Dkt. 33, slip op. at 9 (same).

Here, the Plan's normal retirement age is 65, yet Plaintiff does not allege that she commenced her benefit at age 65.  And again, nor does Plaintiff allege any facts about her accrued benefit payable at normal retirement age or any specific comparison (actuarial or otherwise) between her normal retirement age annuity and the benefit that she is actually receiving.[21]  This is yet another reason why Plaintiff cannot state a claim under ERISA § 205(d).

> ### 3. Plaintiff Has Not Stated A Claim Under ERISA § 204, 29 U.S.C. § 1054.

As to her claim under ERISA § 204(c)(3), this provision states that if a benefit is to be determined as other than "*an annual benefit commencing at normal retirement age . . .* the employee's accrued benefits . . . shall be the actuarial equivalent *of such benefit or amount* determined under paragraph (1) or (2)." 29 U.S.C. § 1054(c)(3) (emphasis added).  Here, Plaintiff does not allege that she is calculating (or complaining about) the actuarial equivalent of her "benefit commencing at normal retirement age."   In fact, she does not allege what comparison she is doing at all.  But 29 U.S.C. § 1054(c)(3) only applies to the specific comparison set forth in the statute – not to any comparison of any benefits to which a participant might be entitled.  As such, Plaintiff's allegations under § 1054(c)(3) do not state a claim.

## IV.    CONCLUSION

For the reasons explained above, this Court should compel Plaintiff's claims to individual arbitration and stay the action, or alternatively, dismiss the Complaint in its entirety with prejudice.

---

[21] Congress knew how to include early retirement benefits within the definition of "accrued benefit" when it intended to do so.  Congress amended ERISA's anti-cutback rule in Section 204(g), 29 U.S.C. § 1054(g), in 1984 to provide that amendments that reduce early retirement benefits "shall be treated as reducing accrued benefits."  29 U.S.C. § 1054(g)(2); Retirement Equity Act of 1984, Pub. L. No. 98–397, 98 Stat. 1426 (Aug. 23, 1984).  Congress specifically limited that provision to apply only "[f]or purposes of paragraph (1)" of 29 U.S.C. § 1054(g).  Congress did not include similar language in ERISA Sections 203 or 205.

Dated:  February 25, 2022      Respectfully submitted,

/s/ Jeremy P. Blumenfeld
Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5258
Fax: (215) 963-5001
Email: jeremy.blumenfeld@morganlewis.com

Brian W. Sullivan (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5758
Fax: (215) 963-5001
Email: brian.sullivan@morganlewis.com

Keri L. Engelman (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
Tel.: (617) 341-7828
Fax: (617) 341-7701
Email: keri.engelman@morganlewis.com

Stephanie R. Reiss (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219
Tel.: (412) 560-3378
Fax: (412) 560-7001
Email: stephanie.reiss@morganlewis.com

*Counsel for Luxottica U.S. Holdings Corp.,
Oakley, Inc., Luxottica Group ERISA Plans
Compliance & Investment Committee, and
Luxottica Group Pension Plan*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and

served on all counsel of record on February 25, 2022, via the Court's ECF/CM system.

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld