**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Janet Duke, on behalf of herself and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>Luxottica U.S. Holdings Corp., Oakley, Inc., Luxottica Group ERISA Plans Compliance & Investment Committee, and Luxottica Group Pension Plan,<br><br>          Defendants. | Case No. 1:21-cv-06072-JMA-AYS |

## <u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

   A.   On The Face Of The Complaint, Plaintiff Lacks Article III Standing To Bring Claims Under 29 U.S.C. §§ 1109 And 1132(a)(2) For Plan Losses. ............................................. 3

   B.   As A Factual Matter, Plaintiff Lacks Article III Standing To Press Her Claims Because She Was Not Harmed By The Allegedly Unreasonable Actuarial Assumptions She Advocates ................................................................................................... 6

   C.   Plaintiff Has Not Stated A Claim Under ERISA § 203(a), 29 U.S.C. § 1053(a). ............. 10

   D.   Plaintiff Has Not Stated A Claim Under ERISA § 205, 29 U.S.C. § 1055. ..................... 12

III.   Plaintiff Has Not Stated A Claim Under ERISA § 204, 29 U.S.C. § 1054. ..................... 14

III.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003)..............................................................................8

*Belknap v. Partners Healthcare Sys., Inc.*,
   No. 19-11437, 2022 WL 658653 (D. Mass. Mar. 4, 2022) ...............................12, 15

*Bilello v. JPMorgan Chase Ret. Plan*,
   592 F. Supp. 2d 654 (S.D.N.Y. 2009)..................................................................5

*Browe v. CTC Corp.*,
   15 F.4th 175 (2d Cir. 2021) ...............................................................................3

*Caban v. New York City Dist. Council of Carpenters Pension Plan*,
   No. 19-6205, 2020 WL 5774901 (S.D.N.Y. Sept. 28, 2020) ...................................4

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..........................................................................................1

*DiMaria v. Fasulo*,
   No. 07-797, 2009 WL 10706284 (E.D.N.Y. June 15, 2009) ...................................4

*DuBuske v. PepsiCo, Inc.*,
   No. 18-11618, 2019 WL 4688706 (S.D.N.Y. Sept. 25, 2019) .........................11, 12

*DuBuske v. PepsiCo, Inc.*,
   No. 18-11618, 2019 WL 5864995 (S.D.N.Y. Nov. 8, 2019) .................................11

*Engers v. AT&T*,
   No. 98-3660, 2002 WL 32159586 (D.N.J. Oct. 17, 2002) .................................12, 15

*Esden v. Bank of Boston*,
   229 F.3d 154 (2d Cir. 2000)..........................................................................11, 14

*Est. of Balli v. Plumbers, Pipe Fitters & MES Local Union No. 392 Pension Fund*,
   No. 18-816, 2019 WL 2233347 (S.D. Ohio May 23, 2019)...................................11

*Gonzalez de Fuente v. Preferred Home Care of New York LLC*,
   No. 18-6749, 2020 WL 5994957 (E.D.N.Y. Oct. 9, 2020)......................................5

*Gonzalez v. Loc. 553 Pension Fund*,
   No. 16-8893, 2017 WL 3242329 (S.D.N.Y. July 28, 2017)...................................11

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)........................................................................................14

# TABLE OF AUTHORITIES

**Page**

*U.S. v. Jicarilla Apache Nation,*
  564 U.S. 162 (2011).................................................................................................13

*Laurent v. PricewaterhouseCoopers LLP,*
  794 F.3d 272 (2d Cir. 2015)...............................................................10, 11, 14

*Leone v. Olympus Corp. of the Ams.,*
  No. 20-3185, 2022 WL 4280481 (E.D. Pa. Sept. 15, 2022) .........................3

*Lonecke v. Citigroup Pension Plan,*
  584 F.3d 457 (2d Cir. 2009)................................................................................11

*Mass. Mut. Ins. Co. v. Russell,*
  473 U.S. 143 (1985)..........................................................................................3, 5

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993)..............................................................................................10

*Russello v. U.S.,*
  464 U.S. 16 (1983)................................................................................................13

*SM Kids, LLC v. Google LLC,*
  963 F.3d 206 (2d Cir. 2020)..................................................................................8

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016)............................................................................................1, 3

*Thole v. U.S. Bank, N.A.,*
  140 S. Ct. 1615 (2020)...............................................................................1, 3, 4, 5

*TransUnion LLC v. Ramirez,*
  141 S.Ct. 2190 (2021)............................................................................................4

*Urlaub v. CITGO Petroleum Corp.,*
  No. 21-4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022) .............................5

*Watson v. Consol. Edison of New York,*
  594 F. Supp. 2d 399 (S.D.N.Y. 2009)............................................................7, 8

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.,*
  247 F.3d 1262 (11th Cir. 2001) ..........................................................................8

**Federal Statutes**

26 U.S.C. § 417.....................................................................................2, 7, 8, 9

ERISA Section 3, 29 U.S.C. § 1002 ............................................................6, 11, 14

# TABLE OF AUTHORITIES

**Page**

ERISA Section 203, 29 U.S.C. § 1053 ................................................................ *passim*

ERISA Section 204, 29 U.S.C. § 1054 ................................................................ *passim*

ERISA Section 205, 29 U.S.C. § 1055 ................................................................ *passim*

ERISA Section 409, 29 U.S.C. § 1109 ..............................................................1, 3, 4, 5

ERISA Section 502, 29 U.S.C. § 1132 ..............................................................1, 3, 4, 5

**Regulations**

26 C.F.R. § 1.411(a)-7(c)(2)(i) ....................................................................12

26 C.F.R. § 1.411(a)(13)-1(b)(3)(ii) ..............................................................9

26 C.F.R. § 1.417(a)(3)-1(c)(2) ....................................................................9

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................ *passim*

RIA Pension Analysis, PENAN P 27,124.2 (2002) ........................................13

## I.    <u>INTRODUCTION</u>

Plaintiff bears the burden to establish Article III constitutional standing to press each of her claims under ERISA §§ 203(a), 204(c) and 205, 29 U.S.C. §§ 1053(a), 1054(c) and 1055. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."). Plaintiff's brief only confirms that she has failed to carry that burden here, and as such, her claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 353 (2006) (constitutional standing is not "commutative" or "dispensed in gross").

To start, based on the face of the Complaint alone, Plaintiff has no Article III standing to press her claims under 29 U.S.C. §§ 1132(a)(2) and § 1109, because she does not allege any *losses to the Plan* or allege how restoring assets to the Plan would benefit her personally. Nor can she because the amount of assets in a defined benefit pension plan (like the Plan here) has no impact on the amount of Plaintiff's benefits. *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1619-22 (2020). Plaintiff tries to distinguish the Supreme Court's decision in *Thole* by contending, unlike the plaintiffs in that case, she claims to have suffered a personal "monetary injury" and the outcome of the suit "affect her benefits." Plaintiff's Supplemental Brief In Opposition To Defendants' Motion to Dismiss, ECF No. 47 ("Opp.") at 3. But that argument ignores the Supreme Court's decision in *Cuno* that a plaintiff must separately demonstrate standing for "each claim" and "each form of relief sought." *Cuno*, 547 U.S. at 335. Plaintiff's claims under § 1132(a)(3) could affect her personal benefits, but her claim under §§ 1132(a)(2) and 1109 cannot, because whether the Plan (a defined benefit plan just like the plan in *Thole*) has greater or fewer assets will not impact her personal benefits at all. As such, Plaintiff's claims under §§ 1132(a)(2) and 1109 must be dismissed for lack of Article III standing.

1

Plaintiff's remaining claims fail a factual challenge to Article III standing. Defendants demonstrated in their opening brief that Plaintiff personally has suffered no injury in fact from their alleged failure to calculate her pension benefit using what she deems to be "reasonable" actuarial assumptions set forth in 26 U.S.C. § 417(e). Compl. ¶¶ 27, 86. In fact, applying the "417(e)" assumptions (instead of the Plan's actuarial assumptions) to either Plaintiff's age-65 annuity or her cash balance account would result in Plaintiff receiving approximately $40-$100 less per month than the $869.51 benefit that she currently is receiving. Plaintiff does not dispute these facts or these calculations in her Opposition. Instead, she engages in sleight-of-hand, and claims to have suffered an injury in fact because her expert, Ian Altman, says that had Defendants converted her age-59 single life annuity ("SLA") to an age-59 joint and survivor annuity ("JSA") using her preferred 417(e) actuarial assumptions, she would have received a higher benefit. That may be true as a mathematical matter, but the statutory provisions under which Plaintiff sues – namely, 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055 – are all based on the age-65 benefit, also known as the "normal retirement benefit" or "accrued benefit" under ERISA. Here, that is the age-65 SLA. Thus, *none* of the ERISA statutory provisions under which Plaintiff brings suit requires or permits a comparison of Plaintiff's age-59 SLA to her age-59 JSA. The comparison made by Plaintiff's expert simply has no legal relevance to the statutory provisions on which this lawsuit is based. Thus, as to each of her claims as alleged, Plaintiff has not suffered an injury in fact and her claims must be dismissed under Fed. R. Civ. P. 12(b)(1) as a result.

Plaintiff's claims under U.S.C. §§ 1053(a), 1054(c) and 1055 also fail as a matter of law pursuant to Rule 12(b)(6). Plaintiff does not allege (in her Complaint or the Opposition) any facts about her accrued benefit payable at normal retirement age or any comparison (actuarial or

otherwise) between her normal retirement age annuity and the benefit that she is actually receiving. That failure dooms her claims under U.S.C. §§ 1053(a), 1054(c) and 1055.[1]

## II.     ARGUMENT

### A.     On The Face Of The Complaint, Plaintiff Lacks Article III Standing To Bring Claims Under 29 U.S.C. §§ 1109 And 1132(a)(2) For Plan Losses.

Plaintiff has not carried her burden to demonstrate Article III standing to bring a claim under 29 U.S.C. §§ 1109 and 1132(a)(2) for alleged losses *on behalf of the Plan*. *Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."). As explained in Defendants' opening brief, these provisions, together, do not authorize remedies to individual participants, but rather provide relief only "for the plan itself." *Mass. Mut. Ins. Co. v. Russell,* 473 U.S. 143 (1985); *see also Browe v. CTC Corp.*, 15 F.4th 175, 205–06 (2d Cir. 2021) ("[T]he remedies available under [§ 1132(a)] are intended to provide relief to the subject plan as a whole, as opposed to any individual participant (or her beneficiary)."); Defendants' Memorandum of Law In Support of Motion to Compel Arbitration, Or In the Alternative, Dismiss Plaintiff's Complaint Pursuant to Fed. R. iv. P. 12(b)(1) and 12(b)(6), ECF No. 41 ("Mem.") at 16 (collecting cases). And where the plan at issue is a defined benefit plan, as here, the amount of an individual's benefit is "not tied to the value of the plan." *Thole*, 140 S. Ct. at 1620. Accordingly, just as in *Thole*, where plaintiffs did not have standing to challenge diminution in plan assets under 29 U.S.C. § 1132(a)(2) because it did not affect the amount of their benefits, *see id.*, Plaintiff cannot argue that she has standing to bring a claim for losses *to the Plan* when her personal benefits are not affected by the *amount of assets in the Plan*. *Id.* ("The plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is

---

[1] These Rule 12(b)(6) issues should be issues for an arbitrator to decide, because Plaintiff is subject to mandatory individual arbitration. ECF No. 41.

managed."); *see also Leone v. Olympus Corp. of the Ams.*, No. 20-3185, 2022 WL 4280481, at *5 (E.D. Pa. Sept. 15, 2022) (dismissing claim under § 1132(a)(2) for lack of Article III standing because "any [] diminution in Plan assets would have no impact on [plaintiffs'] benefits").

Plaintiff's attempt to circumvent *Thole* are unavailing.  She says *Thole* is irrelevant because there the plaintiffs did not "sustain [] any monetary injury," whereas here Plaintiff alleges that she has not received her full pension benefits.  Opp. at 3.  That argument misses the point entirely.  If Plaintiff did not receive the benefits to which she is entitled, she can sue under 29 U.S.C. § 1132(a)(1)(B) for benefits or 29 U.S.C. § 1132(a)(3) for appropriate equitable relief.[2]  But her claim under 29 U.S.C. § 1132(a)(2) and 1109 must allege and prove *harm to the Plan.  See, e.g.* Compl. ¶ 106 (alleging that defendants "shall be personally liable to make good to such plan any losses to the plan resulting from such breach"); *DiMaria v. Fasulo*, No. 07-797, 2009 WL 10706284, at *4 (E.D.N.Y. June 15, 2009) ("While individual plaintiff's [sic] may not recover damages on their own behalf under § 1132(a)(2), they can recover for the benefit of the plan or fund."); *Caban v. New York City Dist. Council of Carpenters Pension Plan*, No. 19-6205, 2020 WL 5774901, at *5 (S.D.N.Y. Sept. 28, 2020) ("relief under [§ 1132 and § 1109] protects the Plan, not individual beneficiaries").  And to have Article III standing to press *that claim*, Plaintiff needs to allege that a remedy on *that claim* – i.e., restoring the Plan's assets – will benefit her personally.  As the Supreme Court recently explained in *TransUnion LLC v. Ramirez*: "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and

---

[2] *Thole* acknowledged that had the plaintiffs "not received their vested pension benefits, they would of course have Article III standing to sue and a cause of action under *ERISA Section 502(a)(1)(B) to recover the benefits due to them*." 140 S. Ct. at 1619 (emphasis added).  That is entirely irrelevant to the issue of Plaintiff's Article III standing to press claims under § 1132(a)(2) and 1109 for *losses to the Plan*.  Moreover, Plaintiff does not bring any such claim for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) here.

for each form of relief that they seek (for example, injunctive relief and damages)."  141 S.Ct. 2190, 2208 (2021) (parenthetical in original).

Here, Plaintiff does not allege how Defendants' conduct caused harm *to the Plan* or its assets.  Mem. at 16-17.  Nor does she allege how increasing the assets in the Plan will benefit her personally.  That is because she cannot.  If the Plan had more assets, the calculation of her benefits would be exactly the same.  *Thole*, *supra*.  *See also Russell*, 473 U.S. at 142, n.9 (explaining that § 1132(a)(2) authorizes participants and beneficiaries to sue "in a representative capacity on behalf of the plan as a whole" so that any "recovery" arising from the action "*inures to the benefit of the plan as a whole*") (emphasis added).  This is evident in Plaintiff's own expert calculations (and Defendants' calculations), which calculate Plaintiff's benefit without regard to – or even mentioning – the amount of assets in the Plan.  This proves Defendants' point: the amount of Plaintiff's benefits, including the additional benefits she seeks here, is untethered to the *value of the assets in the Plan*.  *Thole, supra.  Cf.*, *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, No. 18-6749, 2020 WL 5994957, at *3 (E.D.N.Y. Oct. 9, 2020), *aff'd*, 858 F. App'x 432 (2d Cir. 2021) ("Moreover, even if the plaintiffs were successful in their ERISA claims, their benefits would not change; any disgorged funds would be deposited back into the Plan's trust.").  As such, Plaintiff lacks Article III standing to press her claims under § 1132(a)(2) and § 1109, and those claims should be dismissed.[3]

---

[3] Plaintiff's cited caselaw does not compel a different result.  For instance, the Court in *Urlaub v. CITGO Petroleum Corp.,* does not even address a plaintiff's Article III standing to bring a claim under § 1132(a)(2), or otherwise.  No. 21-4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022).  And in *Bilello v. JPMorgan Chase Ret. Plan*, the court found that "Bilello's claim may be characterized as a claim to recover plan benefits under Section 502(a)(1)(B)" and focused its Article III standing analysis on whether plaintiff was a "participant" in the Plan.  592 F. Supp. 2d 654, 666 (S.D.N.Y. 2009).

**B.     As A Factual Matter, Plaintiff Lacks Article III Standing To Press Her Claims Because She Was Not Harmed By The Allegedly Unreasonable Actuarial Assumptions She Advocates.**

Plaintiff also lacks Article III standing as a factual matter to bring all of her claims that the Defendants violated the "actuarial equivalence" provisions of 29 U.S.C. §§ 1053, 1054, and 1055. As explained in Defendants' opening brief and below, 29 U.S.C. §§ 1053 and 1055 only address the calculation of (or protection of) benefits payable *at normal retirement age*, which under the Plan is age 65.

- 29 U.S.C. § 1053 provides that "[e]ach pension plan shall provide that an employee's right to his *normal retirement benefit* is nonforfeitable *upon the attainment of normal retirement age* . . . ."  (emphasis added).

- 29 U.S.C. § 1055(d) defines the term "qualified joint and survivor annuity" "for purposes of this section."  And 29 U.S.C § 1055(a), in turn, uses that defined term in requiring that "the accrued benefit" payable be provided in the form of that defined term "qualified joint and survivor annuity."  But the "accrued benefit" under ERISA is the benefit "expressed in the form of an annual benefit commencing *at normal retirement age*."  29 U.S.C. § 1002(23) (emphasis added).

29 U.S.C. § 1054(c)(3), on the other hand, addresses what must be paid if a plan chooses to offer a benefit payable at some age other than normal retirement age – like the age 59 JSA benefit that Plaintiff elected.  Specifically, 29 U.S.C. § 1054(c)(3) makes clear that if an "accrued benefit" is to be determined as other than a "single life annuity (without ancillary benefits) commencing at normal retirement age," it must be the actuarial equivalent of that single life annuity commencing at normal retirement age. 29 U.S.C. § 1054(c)(3).

These are the legal statutory frameworks against which Plaintiff's claims under 29 U.S.C. §§ 1053, 1054, and 1055 must be measured.  But here, as her Opposition confirms, Plaintiff does not allege that her benefits are less than the value of her normal retirement benefit or accrued benefit, i.e., her age-65 SLA (using any actuarial assumptions).  In fact, she does not allege anything about, and her expert does not do any calculations, comparing her benefits to her age-65

6

SLA. Instead, her expert compares her age-59 JSA to her *age-59* SLA. That comparison, however, is irrelevant under the statutory provisions she alleges were violated.

When Plaintiff's benefit is measured against the appropriate yardstick (i.e., the age-65 SLA), however, it is undisputed that she was not harmed by the Plan's use of allegedly "unreasonable" actuarial assumptions that she advocates. In fact, she received a *higher* benefit when the Plan's allegedly "unreasonable" actuarial assumptions were used to calculate her benefit. With no injury to redress, Plaintiff has no Article III standing to press her claims.

Instead of trying to satisfy her Article III burden, Plaintiff suggests that this is a merits issue that should be deferred. Not so. In order to prevail on her claims, Plaintiff will need to establish, *inter alia*, that "actuarial equivalence" under §§ 1053, 1054, and 1055, require the use of "reasonable factors," and that the factors used by the Plan here were not reasonable, resulting in benefits that were not actuarially equivalent. *See, e.g.,* Compl. ¶¶ 11, 14, 27, 60, 66, 74, 85 (discussing alleged need to apply "reasonable actuarial factors" and alleging that the factors used to calculate Plaintiff's benefit were not reasonable). Defendants are not addressing those merits issues in their factual Article III standing challenge. And the Court need not address any of those issues at this stage, but can assume that Plaintiff's factual allegations are true. This includes her allegation that actuarial factors must be "reasonable" to calculate actuarially equivalent benefits (Compl. ¶¶ 2, 11-13, 27) and that the IRC Section 417(e) interest rates and mortality tables are the "reasonable" factors that must be used in that calculation (Compl. ¶¶ 27, 42, 86).[4]

---

[4] Plaintiff's quote from *Watson v. Consol. Edison of New York*, 594 F. Supp. 2d 399, 407 (S.D.N.Y. 2009) that it is not appropriate to resolve the factual issue of whether a benefit is actuarial equivalent at the motion to dismiss stage is irrelevant given that Defendants are accepting (solely for purposes of their Article III factual standing challenge) Plaintiff's allegations that Section 417(e) rates must be used to calculate an "actuarially equivalent" benefit. It is undisputed that such rates were not used by the Plan to calculate Plaintiff's JSA benefit. *Watson* is further inapposite because the case involved allegations of ERISA breach of fiduciary duty through misrepresentation in explanation of the Level Income Option form of pension benefit, and the court found standing because although plaintiffs had not suffered any harm to date, it was foreseeable that in the future many of the plaintiffs would be harmed by electing this

But for purposes of Article III, and even assuming all of this to be true, Plaintiff has not alleged an injury-in-fact that would be remedied by the relief requested because she would be *worse off* and receive *lower benefits* if Plaintiff's preferred IRC Section 417(e) factors were applied to calculate her 100% JSA benefit, as she has alleged is required. Defendants are not asking the Court to resolve the merits question of whether Plaintiff's benefits were calculated using factors that ensured they were actuarially equivalent, and therefore the case cited by Plaintiff on this point is inapposite. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211-12 (2d Cir. 2020) (reversing dismissal of contract claims for lack of Article III standing because whether there was a valid contract enforceable by the plaintiff went to the merits and was not a jurisdictional question).[5]

Nor does the declaration submitted by Plaintiff's expert, Ian Altman, establish that she suffered a cognizable injury sufficient to confer Article III standing to press her statutory claims. Because ERISA protects the value of an *age-65* SLA benefit, Defendants' expert, Larry Sher, demonstrated that converting Plaintiff's age-65 SLA benefit to a 100% JSA commencing on her retirement date (November 2016), using the IRC Section 417(e) rates applicable in 2016 that Plaintiff alleges must be used, results in Plaintiff receiving a lower benefit than she current is receiving. Specifically, while Plaintiff's current 100% JSA benefit is $869.51, her monthly benefit

---

benefit and being required to pay back to defendants more than they received. *Id.* at 406. There is no similar harm to Plaintiff here from not using the IRC Section 417(e) rates to calculate her benefit.

[5] Plaintiff cites to *Baur v. Veneman*, 352 F.3d 625, 641 (2d Cir. 2003) only for its parenthetical describing the Eleventh Circuit's decision in *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1280 (11th Cir. 2001). *Baur* does not involve any conclusion that the facts at issue were not jurisdictional. Rather, *Baur* reversed a dismissal of suit seeking to require the USDA to ban the use of downed livestock as food on the basis that exposure to an enhanced risk of disease was sufficient injury-in-fact to establish Article III standing. *Id.* at 640-41. And *Wooden* is a racial discrimination case holding that exposure to unequal treatment is itself the injury-in-fact giving rise to standing. *Wooden*, 247 F.3d at 1279-80 (holding that because the injury was the mere exposure to unequal treatment, the concerns raised by Defendants that plaintiff's application would have been handled the same way even if race were not a factor, went to the ability to succeed on the merits not standing). Each of these cases is inconsequential to the Article III standing analysis here.

calculated using the 417(e) assumptions would be just $768.25.  Sher Decl. ¶¶ 10, 14.[6]  Plaintiff

ignores entirely the very statutory provisions under which she brings her claim, and instead

calculates her 100% JSA benefit by applying the same 417(e) assumptions to the value of her *age

59 single-life annuity*.  Dkt. 47-1, Altman Decl. ¶ 8.  In other words, as explained above, Plaintiff's

expert is doing calculations that are irrelevant.  Neither 29 U.S.C. §§ 1053, 1054 nor 1055 require

comparisons between an early retirement SLA and early retirement 100% JSA.[7]

Plaintiff does not dispute any of the math in the Sher Declaration.  In fact, Altman points

to the fact that his calculations match the 6% differences shown between the early retirement SLA

and 100% JSA in the relative value disclosures, Altman Decl. ¶ 9.  But that does not help Plaintiff

here.  Relative value disclosures are required under ERISA precisely because optional forms of

early retirement benefits paid to beneficiaries *do not* have to be equivalent to *each other*.  *See* 26

C.F.R. § 1.417(a)(3)-1(c)(2).  That is, there would be no need to disclose the relative value of

different benefit options if all benefit options had to have the same value, as Plaintiff implies.

Accepting Plaintiff's factual allegations (and her expert's calculations) as true, Plaintiff

does not allege that the age-59 benefit she is receiving is less than the value of her age-65 normal

retirement benefit, even using her preferred actuarial assumptions.  And as a factual matter, there

is no dispute that Plaintiff's age-59 benefit has a greater value than her age-65 normal retirement

---

[6] Because there is a regulatory provision that allows plans to satisfy the actuarial equivalence requirements based on comparison to the cash balance account, rather than the single life annuity, *see* 26 C.F.R. § 1.411(a)(13)-1(b)(3)(ii), Mr. Sher also applied the same IRC Section 417(e) to the convert value of Plaintiff's cash balance account at her age-59 JSA, which resulted in a 100% JSA benefit of $829.20 per month. Dkt. 41-3, Sher Decl. ¶ 13.  This is also lower than her current 100% JSA benefit of $869.51 per month.  *Id.* ¶ 10.  This is yet another reason Plaintiff lacks Article III standing to press her statutory claims under ERISA.

[7] Plaintiff cannot refute this, so perhaps in an attempt to confuse the court, she erroneously claims at page 7 of her Opposition that Mr. Sher calculated her age-59 SLA to be worth $768.25 (rather than the $1,006.15 reflected in Plaintiff's age-59 relative value disclosure).  If anything is a sleight of hand, it is this claim, and not any calculation Mr. Sher performed.  Mr. Sher *never calculated the value of Plaintiff's age-59 SLA* because the value of Plaintiff's age-59 SLA is entirely irrelevant to any of Plaintiff's statutory claims under ERISA, as described above.

benefit, i.e., her accrued benefit.  That means, she lacks Article III standing to press her claims that Defendants violated:  (a) 29 U.S.C. § 1053 (which imposes requirements with respect to the "normal retirement benefit" upon "attainment of normal retirement age"); (b) 29 U.S.C. § 1054(c)(3) (which requires a comparison between an early retirement benefit and the "annual benefit commencing at normal retirement age"); and (c) 29 U.S.C. § 1055 (which imposes certain obligations with respect to the "accrued benefit").  Her Complaint should be dismissed.

## C.      Plaintiff Has Not Stated A Claim Under ERISA § 203(a), 29 U.S.C. § 1053(a).

Plaintiff does not dispute that ERISA § 203(a) only requires that the "*normal retirement benefit is nonforfeitable upon attainment of normal retirement age.*"  29 U.S.C. § 1053(a) (emphasis added); *see also* Compl. ¶ 48 (citing statute).  Nor does Plaintiff dispute that she commenced her benefits, not at normal retirement age (age 65 under the Plan), but rather at age 59 and 9 months.  Plaintiff concedes, as she must, that she received an "early retirement benefit." Opp. at 13.  These admissions doom her claim under § 1053(a) because she does not, and cannot, allege that she reached the Plan's normal retirement age—age 65 here.

Plaintiff simply disregards the specific words used by Congress in ERISA § 203(a), a "carefully crafted and detailed enforcement scheme." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993).  She further disregards that the Second Circuit has squarely held that by the plain text of the statute, ERISA § 203(a) does not protect against any forfeiture of any benefit, but only a forfeiture of a normal retirement benefit at normal retirement age. In *Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 274 (2d Cir. 2015), the Second Circuit explained that ERISA § 203(a) requires only that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." *Id*.  This conclusion is only reinforced by other provisions in ERISA § 203(a), according to the Second Circuit, which give a participant a "nonforfeitable right" to his or her "accrued benefit,"

which in turn "is the amount she would receive annually as an annuity *after she reaches normal retirement age*." *Id.* (emphasis added) (quoting 29 U.S.C. § 1002(23)(A)); *see also Lonecke v. Citigroup Pension Plan*, 584 F.3d 457, 462 (2d Cir. 2009) ("an accrued benefit is 'expressed in the form of an annual benefit commencing at normal retirement age'") (citing 29 U.S.C. § 1002(23)); *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000) (same).[8]  Plaintiff ignores these dispositive precedents altogether.

She also disregards the Southern District of New York's Rule 12(b)(6) dismissal of virtually identical claims in *DuBuske v. PepsiCo, Inc.*, No. 18-11618, 2019 WL 4688706 (S.D.N.Y. Sept. 25, 2019).[9]  Mem. at 21.  The *PepsiCo* court held that "nonforfeitability attached only *after* the employee attains normal retirement age."  *PepsiCo,* 2019 WL 4688706, at *4 (quoting *Est. of Balli v. Plumbers, Pipe Fitters & MES Local Union No. 392 Pension Fund*, No. 18-816, 2019 WL 2233347, at *4 (S.D. Ohio May 23, 2019) (emphasis in original)); *see also Gonzalez v. Loc. 553 Pension Fund*, No. 16-8893, 2017 WL 3242329, at *5 (S.D.N.Y. July 28, 2017) (29 U.S.C. § 1053 "gives [a] Plaintiff no vested right to receive benefits until he reaches" normal retirement age).  Because the plaintiffs in *PepsiCo* did not allege that they were deprived of their "normal retirement benefit . . . upon the attainment of normal retirement age," as "[n]o plaintiff allegedly reached the plan's normal retirement age [age 65]," the Court found that 29 U.S.C. § 1053 did not apply. The same result is warranted here.

Plaintiff nonetheless suggests that she can state a claim that the Plan violates 29 U.S.C. § 1053(a), because the definition of "normal retirement benefit" in 29 U.S.C. § 1002(22) can include

---

[8] And this conclusion remains true in a cash balance plan, like the Plan here: "[c]ash balance plans are considered defined benefit plans under ERISA" and "[a]s a result of this classification, the term 'accrued benefit' in a cash balance plan is expressed in the form of an annual benefit commencing at normal retirement age," just like the accrued benefit in a defined benefit plan.  *Laurent*, 794 F.3d at 274 (citing *Lonecke*, 584 F. 3d at 462).

[9] The *PepsiCo* court granted a motion for reconsideration in part as to other claims, but denied the motion as to the Section 203 claims.  *DuBuske v. PepsiCo, Inc.,* No. 18-11618, 2019 WL 5864995, at *3 (S.D.N.Y. Nov. 8, 2019).

an early retirement benefit *if* the monthly annuity benefit at early retirement is greater than the monthly annuity benefit at normal retirement age. *See* Opp. at 13. This is a non-sequitur. Plaintiff does not allege the amount of the SLA she allegedly earned at age 65 or how such benefit compares to the benefits she is receiving, let alone that the monthly amount she receives as an early retirement benefit is *greater than* the monthly amount she would have received under the Plan if she waited until 65 to commence her benefits. *See* 26 C.F.R. § 1.411(a)-7(c)(2)(i) (providing that "[i]n the case of a plan under which a benefit is payable as an annuity in the same form upon early retirement and at normal retirement age, the greater benefit is determined by comparing the amount of *such annuity payments*," i.e., the monthly payments) (emphasis added). Precisely for this reason, the Southern District of New York rejected an identical argument in *PepsiCo*. 2019 WL 4688706, at *4. And in doing so, the Court in *PepsiCo* correctly recognized that "an accrued benefit *is not* the amount of pension payment a recipient receives by retiring early, it is the amount of pension payment a recipient achieves *at normal retirement age*." *Id.* (emphasis added) (citing *Engers v. AT&T*, No. 98-3660, 2002 WL 32159586, at *8 (D.N.J. Oct. 17, 2002)); *see also Belknap v. Partners Healthcare Sys., Inc.*, No. 19-11437, 2022 WL 658653, at *6 (D. Mass. Mar. 4, 2022) (rejecting same argument), *appeal dismissed sub nom. Belknap v. Mass Gen. Brigham, Inc.*, 2022 WL 4333752 (1st Cir. Aug. 30, 2022). This Court should do the same.

### D. Plaintiff Has Not Stated A Claim Under ERISA § 205, 29 U.S.C. § 1055.

As explained in Defendants' brief, Plaintiff cannot state a claim under 29 U.S.C. § 1055 because she elected a 100% JSA, which is neither the qualified joint and survivor annuity ("QJSA") nor the qualified optional survivor annuity ("QOSA") – the only annuities protected by 29 U.S.C. § 1055. Mem. at 23-24. Plaintiff herself alleges in the Complaint that the Plan's QJSA is the 50% JSA, not the 100% JSA she elected. Compl., ¶ 55 ("For married participants, the *default form* of payment is a 50% joint and survivor annuity.") (emphasis added). According to Plaintiff's

own allegations, then, the 75% JSA is the QOSA as a matter of law.  Mem. at 23 (citing 29 U.S.C. § 1055(d)(2)(B)); *see also* RIA Pension Analysis, PENAN P 27,124.2 at *1 (2002) ("The survivor annuity provided by the QJSA under a plan is 50%.  Thus, the survivor annuity provided under the qualified optional survivor annuity must be 75% of the amount of the annuity which is payable during the joint lives of the participant and spouse.").  Plaintiff does not dispute that she elected neither a QJSA nor QJSO, so 29 U.S.C. § 1055 is irrelevant.

Plaintiff instead argues that 29 U.S.C. § 1055 applies to her benefit nonetheless because the statute applies to "any annuity."  That is wrong.  Were it so, there would have been no need for Congress to limit the application of 29 U.S.C. § 1055 to the QJSA and QJSO, or even to define those terms in the statute.  *See, e.g., U.S. v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.") (citation omitted).  In other words, Congress could have included in 29 U.S.C. § 1055(a) and (d) protections for all optional forms of benefits, but it did not.  That deliberate choice by Congress in this detailed and carefully crafted statute must be respected. *See Russello v. U.S.*, 464 U.S. 16, 23 (1983).

Plaintiff's claim fails under 29 U.S.C. § 1055 for another reason.  That is, as explained in Defendants' brief, 29 U.S.C. § 1055(d)(1) merely defines the term "qualified joint and survivor annuity."  *Id*. (applying "for purposes of this section").  It is 29 U.S.C. § 1055(a), in turn, that imposes a substantive requirement that uses the term defined in subsection (d): for certain (but not all) participants the "*accrued benefit* payable to such participant[s] shall be provided in the form of a qualified joint and survivor annuity."  29 U.S.C. § 1055(a) (emphasis added).  Once again, Plaintiff disregards controlling Second Circuit case law providing that the "accrued benefit" is the "benefit expressed in the form of an annual benefit commencing at normal retirement age."

*Laurent*, 794 F.3d at 274 (citing 29 U.S.C. § 1002(23)) (emphasis added); *Esden*, 229 F.3d at 163 (same).  These controlling precedents dispose of Plaintiff's claim here, as she does not offer any facts about her accrued benefit payable at normal retirement age, or any comparison between her age-65 annuity and the benefit she is actually receiving.  To the contrary, her Opposition makes clear that Plaintiff's claim is premised on comparing her *age-59 SLA to her age-59 JSA*.  Opp. at 9-12.  But by its plain terms, 29 U.S.C. § 1055 applies only to the "accrued benefit"–here, the age-65 SLA.  And this Court can easily dispose of Plaintiff's arguments regarding her interpretation of certain Plan terms (Opp. at 10-12), as such terms of course have no bearing on this Court's interpretation of the statutory text found in 29 U.S.C. § 1055.  *See, e.g.*, *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (explaining that the Supreme Court has been "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the [ERISA] statute by extending remedies not specifically authorized by its text").

## III.   Plaintiff Has Not Stated A Claim Under ERISA § 204, 29 U.S.C. § 1054.

Plaintiff has likewise failed to state a claim under 29 U.S.C. § 1054.  That provision makes clear that if an "accrued benefit" is to be determined other than as a "single life annuity (without ancillary benefits) commencing at normal retirement age," it must "be the actuarial equivalent of *such benefit* . . . ." 29 U.S.C. § 1054(c)(3) (emphasis added).  The Second Circuit in *Esden* explained:

> What these provisions mean in less technical language is that: (1) the accrued benefit under a defined benefit plan ***must be valued in terms of the annuity that it will yield at normal retirement age***; and (2) if the benefit is paid at any other time (e.g., on termination rather than retirement) or in any other form (e.g., a lump sum distribution, instead of annuity) ***it must be worth at least as much as that annuity***.

229 F.3d at 163 (emphasis added) (further explaining that "regardless of any option as to timing or form of distribution, a vested participant in a defined benefit plan must receive a benefit that is the actuarial equivalent of her normal retirement benefit (that is, the accrued benefit expressed as

14

an annuity beginning at normal retirement age)") (collecting cases).  *See also Belknap*, 2022 WL 658653, at *5 (explaining that "ERISA requires that an employee's accrued benefit be the "actuarial equivalent" of the retirement benefit the participant would have received if they waited until normal retirement age to begin receiving benefits") (citing 29 U.S.C. § 1054(c)(3)).  *Cf. Engers*, 2002 WL 32159586, at *8 (D.N.J. Oct. 17, 2002) ("If plaintiff's age-62 JSA is in fact less than the "actuarial equivalent" of an SLA commencing at normal retirement age, that would violate § 1054(c)(3).").

In other words, the plain text of 29 U.S.C. § 1054 requires a comparison of (1) the early retirement annuity (here, age 59 and 9 months JSA) *with* (2) the age-65 SLA.  The Complaint is devoid of any such factual allegations; Plaintiff does not allege that she is calculating the actuarial equivalent of her "benefit commencing at normal retirement age."  She makes no comparisons at all in her Complaint.  And Plaintiff's Opposition makes clear, in fact, that she is ***not*** comparing her age-59 JSA to her age-65 SLA as required by the statute.  Rather, Plaintiff's Complaint is premised on the allegation that the JSA she received "at the time of her retirement" (age 59 and 9 months) calculated using the Plan's actuarial factors is less than the SLA that she would have received *at that age* (age 59 and 9 months) using her preferred "reasonable" factors. But Plaintiff's age-59 SLA is not the yardstick for measuring actuarial equivalence under the plain text of 29 U.S.C. § 1054(c), and for that reason Plaintiff fails to state a claim.

## III.   CONCLUSION

For the reasons explained herein and Defendants' opening brief, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing, or the in alternative, under Rule 12(b)(6) for failure to state a claim.

Dated:  September 29, 2022                    Respectfully submitted,

                                             */s/ Jeremy P. Blumenfeld*
                                             Jeremy P. Blumenfeld
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             1701 Market Street
                                             Philadelphia, PA 19103
                                             Tel.: (215) 963-5258
                                             Fax: (215) 963-5001
                                             Email: jeremy.blumenfeld@morganlewis.com

                                             Keri L. Engelman (*Pro Hac Vice*)
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             One Federal Street
                                             Boston, MA 02110
                                             Tel.: (617) 341-7828
                                             Fax: (617) 341-7701
                                             Email: keri.engelman@morganlewis.com

                                             Stephanie R. Reiss (*Pro Hac Vice*)
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             One Oxford Centre, 32nd Floor
                                             Pittsburgh, PA 15219
                                             Tel.: (412) 560-3378
                                             Fax: (412) 560-3301
                                             Email: stephanie.reiss@morganlewis.com

                                             *Counsel for Luxottica U.S. Holdings Corp.,*
                                             *Oakley, Inc., Luxottica Group ERISA Plans*
                                             *Compliance & Investment Committee, and*
                                             *Luxottica Group Pension*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on September 29, 2022, via the Court's ECF/CM system.

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld
