UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JANET DUKE, *on behalf of herself*
*and all others similarly situated*,

                                                Plaintiff,

               -against-                        **MEMORANDUM & ORDER**
                                                                     21-CV-06072 (JMA) (AYS)

LUXOTTICA U.S. HOLDINGS CORP., OAKLEY, INC.,
LUXOTTICA GROUP ERISA PLANS
COMPLIANCE & INVESTMENT COMMITTEE, and
LUXOTTICA GROUP PENSION PLAN,

                                                Defendants.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

        Plaintiff Janet Duke, a former Luxottica employee and a participant in the Luxottica Group Pension Plan (the "Plan"), claims that Defendants rely on outdated and unreasonable mortality assumptions in calculating her benefits under the Plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. She alleges that if Defendants used proper, updated mortality assumptions, her monthly pension payments would be larger. She brings her claims on behalf of a putative class of Plan participants and beneficiaries for violations of various provisions of ERISA, including breach of fiduciary duty, pursuant to §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3).

        Currently before the Court are Defendants' motions to compel arbitration or, in the alternative, to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (ECF No. 23.) For the following reasons, Defendants' motions are granted in part and denied in part.

## I.     BACKGROUND

### A.     Facts

#### 1.     The Parties

Plaintiff worked for a Luxottica subsidiary for approximately 21 years, leaving the company when her job as a regional manager was eliminated. (Compl. ¶ 27, ECF No. 1.)

The Luxottica Group Pension Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). As of 2019, the Plan had approximately 29,000 participants and assets valued at approximately $1 billion. (Id. ¶ 53.) Defendants Luxottica U.S. Holdings Corp. and/or Oakley, Inc. are the Plan's sponsors. (Id. ¶ 28.) They, along with various companies affiliated with Luxottica, make contributions to the Plan to fund retirement benefits promised to Luxottica employees. (Id. ¶ 29.)

#### 2.     Plaintiff's Benefits Under the Plan

Under the terms of the Plan, an unmarried participant's normal pension benefit is a single life annuity ("SLA"), a monthly benefit paid to the participant beginning at retirement and continuing until their death. (Compl. ¶ 54.) For married participants, however, the default form of pension benefit is a joint and survivor annuity ("JSA"). (Id. ¶ 55.) A JSA provides the participant with a payment stream for their own life, and then, should their spouse survive them, for their spouse's life. (Id. ¶ 4.) In general, JSAs are expressed as a percentage of the benefit paid during the participant's life. For example, a 50% JSA—the Plan's default JSA option—will pay to the surviving spouse 50% of the monthly benefit amount that the participant received during their lifetime. (Id. ¶¶ 4, 54.) Plaintiff elected to receive a 100% JSA. (Id. ¶ 27.)

#### 3.     The Plan's Non-Compliance with Actuarial Equivalence Requirements

If a participant elects to receive a JSA, the Plan uses certain actuarial assumptions to

convert a standard SLA into the participant's JSA. (Compl. ¶ 5.) ERISA and the Federal Tax Code require that this conversion result in a JSA that is the "actuarial equivalent" of an SLA—i.e., that the JSA has the same economic value as the SLA. (Id. ¶¶ 5–6, 37.) In making this conversion, an actuarial equivalence computation considers interest rates and makes certain assumptions regarding the expected longevity of a participant and their spouse. (Id. ¶ 6.) The interest rate accounts for the value of future pension payments, reflecting the time value of money, while the expected longevity of the participant and their spouse accounts for the likelihood of those future payments being paid out. (Id. ¶¶ 6, 36.) Longevity assumptions are derived from published mortality tables showing the statistical life expectancy of persons at given ages. (Id. ¶ 6.)

When Plaintiff's JSA benefits were calculated—as for all Plan participants whose JSA benefits were calculated prior to April 1, 2021—the Plan relied on the 1971 Group Annual Mortality ("GAM") Table to supply the actuarial assumptions regarding expected longevity. (Id. ¶ 57.) According to Plaintiff, because the GAM Table is 50 years "out of date," it does not reflect "dramatic increases in longevity of the American public," thus rending the Plan's actuarial assumptions "outdated" and "unreasonable." (Id. ¶¶ 59–60.) She alleges that as a result, the Plan pays JSAs "that are less than the actuarial equivalent value of a participant's [SLA] benefit," in violation of ERISA. (Id. ¶ 60.) If the Plan had employed "reasonable mortality assumptions" instead, such as those set forth in 26 U.S.C. § 417(e), the calculation of Plaintiff's JSA benefits would have been "substantially more favorable[.]" (Id. ¶ 61.)

Plaintiff also alleges that by failing to properly disclose the Plan's outdated actuarial assumptions in the relevant Plan documents, Defendants prevented her "from adequately assessing what form of benefit to elect and how best to plan for [her] retirement[]." (Id. ¶ 82.) Moreover, by paying out JSAs to Plan participants and beneficiaries that fail to satisfy ERISA's actuarial

3

equivalence requirement, Defendants' Plan funding obligations are artificially and improperly reduced. (Id. ¶¶ 83–85.)

### 4. The Dispute Resolution Agreement

In 2015, Plaintiff entered into a Dispute Resolution Agreement ("Agreement") with Luxottica, which contains an arbitration provision. (Hoffman Decl. Ex. 1, ECF No. 41-2.) The Agreement's introduction states that "[t]he arbitration portion of . . . [the] Agreement covers virtually all legal claims arising out of or related to [an employee's] employment with Luxottica[.]" (Agreement at 50.) The arbitration provision states as follows:

> Except as it otherwise provides, this Agreement applies, without limitation, to disputes with any individual (including Luxottica's employees, agents, supervisors, officers or directors) or entity (including any company affiliated with Luxottica, its parent(s) or subsidiaries, if any) arising out of or related to the employment relationship or the termination of that relationship (including post-employment defamation or retaliation), trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, termination, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance) Affordable Care Act, Genetic Information Non-Discrimination Act, state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to Employee's employment or the termination of employment.

(Id. at 51–52.) The Agreement also contains the following class action waiver:

> This Agreement affects your ability to participate in class, collective or private attorney general representative action. Both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective or private attorney general representative basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or private attorney general representative action or as a member in any such class, collective or representative proceeding ("Class Action Waiver"). . . . The Company expressly does not agree to arbitrate any claim on a class, collective or representative basis.

(Id. at 52–53.) However, the Agreement stipulates that if a dispute is brought in court as a class or other collective action, and "there is a final judicial determination that all or part of the Class Action Waiver is unenforceable," the action "to that extent, must be litigated in a civil court of competent jurisdiction," while "the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration." (Id. at 53.)

Plaintiff did not exercise her right to opt out of the arbitration provision in the Agreement. (Hoffman Decl. ¶¶ 6–8; Agreement at 50, 56.)

### B. Procedural History

Plaintiff commenced this action on November 1, 2021. Defendants subsequently filed a pre-motion conference letter regarding their proposed motions, (ECF No. 23), to which Plaintiff responded, (ECF No. 28). The Court construed Defendants' letter as a motion to compel arbitration and permitted the parties to submit additional briefing. (Electronic Order dated Feb. 4, 2022.) However, to assist the Court with its obligation to determine its subject matter jurisdiction, the Court directed the parties to submit further briefing regarding Defendants' motion to dismiss for lack of subject matter jurisdiction, as well as their motion to dismiss for failure to state a claim. (Electronic Order dated Aug. 16, 2022.) The motions became fully briefed on September 29, 2022, once the parties filed their supplemental submissions.

## II.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The Court begins, as it must, with Defendants' motion to dismiss under Rule 12(b)(1) for lack of Article III standing. See Central States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."). Defendants raise a facial challenge to Plaintiff's standing to pursue claims for losses to the Plan via ERISA §§ 409 and

5

502(a)(2), as well as a factual challenge to her standing to assert her remaining ERISA claims. (Defs.' Mem. at 16, 18, ECF No. 41.)

### A. Legal Standards Under Rule 12(b)(1)

#### 1. Motion to Dismiss Under Rule 12(b)(1)

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). "[A] facial challenge . . . accepts the jurisdictional facts pleaded and challenges only their sufficiency." All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.7 (2d Cir. 2006) (citation omitted). In reviewing a facial attack to the court's jurisdiction, the court must "'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" Bohnak v. Marsh & McLennan Companies, Inc., 79 F.4th 276, 283 (2d Cir. 2023) (quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP, 549 F.3d 100, 106 (2d Cir. 2008)). By contrast, a fact-based challenge "place[s] jurisdictional facts in dispute," and "the district court [may] properly consider[] evidence outside the pleadings." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (citations omitted). In resolving a fact-based challenge to Article III standing, "the District Court has leeway as to the procedure it wishes to follow.'" All. for Envtl. Renewal, 436 F.3d at 88 (citing Gibbs v. Buck, 307 U.S. 66, 71–72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.")).

#### 2. Jurisdiction and Article III Standing

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). And "[f]or there to be a case or controversy under Article III, the plaintiff must have a personal stake

in the case—in other words, standing." Id. (internal quotation marks and citation omitted).

To establish standing under Article III, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U. S. Bank N.A., 140 S. Ct. 1615, 1618 (2020) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

"'The party invoking federal jurisdiction bears the burden of establishing' each element of standing, which 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of litigation.'" McMorris v. Carlos Lopez & Assocs., LLC, 995 F.3d 295, 300 (2d Cir. 2021) (quoting Lujan, 504 U.S. at 561). Importantly, "'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017) (quoting Davis v. Federal Election Comm'n, 554 U.S. 724, 734 (2008)).

B. **Defendants' Facial Challenge**

Defendants contend that Plaintiff lacks Article III standing to pursue her claims for losses to the Plan under §§ 409(a) and 502(a)(2) because she has not alleged that she "suffered an Article III injury as to that claim that would be redressable to her." (Defs.' Mem. at 16.)[1] As explained

---

[1] Defendants do not contest, as part of their facial challenge, that Plaintiff has adequately alleged that she has standing to pursue her claims via § 502(a)(3). (Defs.' Mem. at 17 n.13.) Therefore, in resolving Defendants' motion, the Court addresses only Plaintiff's claims brought pursuant to §§ 409(a) and 502(a)(2). In any event, the Court agrees with Plaintiff that she has adequately alleged an injury-in-fact sufficient to establish her standing to assert claims under § 502(a)(3) regarding the calculation of her JSA benefits. See Belknap v. Partners Healthcare Sys., Inc., No. 19-CV-11437, 2022 WL 658653, at *5 (D. Mass. Mar. 4, 2022) ("The complaint has sufficiently alleged that plaintiff's retirement benefits were reduced because of the outdated mortality assumptions and interest rates used by [the defendant]. As a result, the complaint sufficiently pleads an injury in fact for purposes of the standing analysis.").

7

below, the Court agrees that Plaintiff has not established standing to assert her claims pursuant to those provisions of ERISA.

The Court begins by addressing two principles that are critical to its analysis: the nature of the relief Plaintiff may seek for her claims under §§ 409(a) and 502(a)(2), and the distinction between defined benefit and defined contribution pension plans.

First, ERISA § 502(a)(2) authorizes a plan participant, among other individuals, to bring a civil action "for appropriate relief" under § 409. 29 U.S.C. § 1132(a)(2). That section, in turn, provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]

Id. § 1109(a). Sections 502(a)(2) and 409(a), "read together, mean that a plaintiff suing for breach of fiduciary duty under § 502(a)(2) may seek recovery only for injury done to the wronged plan." Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173, 180 (2d Cir. 2021) (citing LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008)). Therefore, "such claims may not be made for individual relief, but instead are 'brought in a representative capacity on behalf of the plan.'" Coan v. Kaufman, 457 F.3d 250, 257 (2d Cir. 2006) (quoting Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985)). By contrast, claims brought under § 502(a)(3) are asserted not on behalf of the plan, but on an individual basis for individual relief. See McAlister v. Metro. Life Ins. Co., No. 18-CV-11229, 2023 WL 5769491, at *7 (S.D.N.Y. Sept. 7, 2023).

Second, the Supreme Court has explained that the difference between defined benefit plans and defined contribution plans is "[o]f decisive importance" in analyzing standing under ERISA. Thole, 140 S. Ct. at 1618. In a defined benefit plan, such as the Plan here, "retirees receive a fixed

8

payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." Id. By contrast, "in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." Id. (citations omitted).

Defendants argue that under Thole v. U. S. Bank N.A., 140 S. Ct. 1615 (2020), Plaintiff, as a participant in a defined benefit plan, lacks standing to pursue her claims under §§ 409(a) and 502(a)(2). (Defs.' Mem. at 17.) Plaintiff attempts to distinguish Thole and argues that, for various reasons, this case and Thole "could not be more different." (Pl.'s Opp'n at 3, ECF No. 40.) However, the Court agrees with Defendants that Thole controls and mandates dismissal of her claims brought under §§ 409(a) and 502(a)(2).

In Thole, the plaintiffs were participants in their former employer's defined benefit plan, and as such, they received fixed monthly payments "regardless of the plan's value at any one moment and regardless of the investment decisions of the plan's fiduciaries[.]" 140 S. Ct. at 1618. Moreover, "they [were] legally and contractually entitled to receive those same monthly payments for the rest of their lives." Id. Although they had received all their monthly pension benefits, they brought fiduciary duty claims against the plan's sponsor and others based on the defendants' allegedly poor investment decisions. Id. at 1618–19. The Supreme Court held that they lacked Article III standing to assert their claims because, as participants in a defined benefit plan, "the outcome of this suit would not affect their future benefit payments." Id. at 1619. As the court explained, "[i]f [the plaintiffs] were to lose this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less." Id. And "[i]f [the plaintiffs] were to win this lawsuit, they would still receive the exact same monthly benefits that

9

they are already slated to receive, not a penny more." Id. Therefore, the plaintiffs had "no concrete stake" in the lawsuit that would confer Article III standing. Id.

Here, as in Thole, Plaintiff is a participant in a defined benefit plan. (Compl. ¶¶ 30, 51.) Therefore, as in Thole, the benefits she receives through her JSA are "not tied to the value of the plan." 140 S. Ct. at 1620. So, whether or not she secures recovery for the Plan—the only form of recovery she can seek under §§ 409(a) and 502(a)(2)—she will "still receive the exact same monthly benefits that [she] [is] already slated to receive." Id. at 1619. Accordingly, she cannot show that any recovery to the Plan, such as an increase in its assets, would affect her benefits. Therefore, she, just like the Thole plaintiffs, lacks the concrete stake in the outcome of this lawsuit that is necessary to establish Article III standing.

Plaintiff's attempts to distinguish Thole are unavailing. She argues that, in contrast to the plaintiffs in Thole, who "did 'not sustain[] any monetary injury,'" she has alleged that "'her [JSA] would be larger' if it were calculated properly," and therefore, "her situation is exactly the opposite of the plaintiffs in Thole[.]" (Pl.'s Suppl. Opp'n at 3–4, ECF No. 47.) But this argument appears to conflate her standing to pursue individual relief via § 502(a)(3) with the limitation that relief under §§ 409(a) and 502(a)(2) is limited to recovery for the Plan. See Cooper, 990 F.3d at 180; see also Coan, 457 F.3d at 257. And as Defendants reiterate, (Defs.' Suppl. Reply at 5, ECF No. 5), she nowhere alleges how their conduct caused "any losses to the plan," 29 U.S.C. § 1109(a), or how any remedy requiring Defendants "to make good to such plan any losses," id., would impact her benefits under the Plan.

Plaintiff also clings to Thole's remark that "[i]f [the plaintiffs] had not received their vested pension benefits, they would of course have Article III standing to sue[.]" 140 S. Ct. 1615. She maintains that Thole thus "stands for the very proposition that where a plaintiff has suffered

10

individual loss, she 'of course' has standing to pursue plan losses under § 1132(a)(2)." (Pl.'s Suppl. Opp'n at 5.) But Plaintiff omits the remainder of that sentence, which reads in full as follows: "If [the plaintiffs] had not received their vested pension benefits, they would of course have Article III standing to sue <u>and a cause of action under ERISA § 502(a)(1)(B) to recover the benefits due to them</u>." <u>Id.</u> (emphasis added). Placed in proper context, this statement offers no support to her cause. Rather, it simply acknowledges the unremarkable proposition that an individual plan participant may bring a claim under § 502(a)(1)(B) "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). But Plaintiff brings no such claim here, and it is irrelevant to whether she has standing to assert claims under §§ 409(a) and 502(a)(2). <u>See</u> <u>Laroe Ests.</u>, 581 U.S. at 439 ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (internal quotation marks and citation omitted)).

Plaintiff's cited cases do not compel a different result. Some do not address the issue of Article III standing at all. <u>See</u> <u>Urlaub v. CITGO Petroleum Corp.</u>, No. 21-CV-4133, 2022 WL 523129, at *10 (N.D. Ill. Feb. 22, 2022); <u>see also</u> <u>Scott v. AT&T Inc.</u>, No. 20-CV-07094, 2022 WL 2342645, at *1 (N.D. Cal. June 29, 2022). The remainder are otherwise inapposite. <u>See</u> <u>Hoeffner v. D'Amato</u>, 605 F. Supp. 3d 467, 477 (E.D.N.Y. 2022) (distinguishing <u>Thole</u> and finding standing because the plaintiffs plausibly alleged that their benefits, unlike Plaintiff's here, "fluctuated based on the fund's overall assets"), <u>reconsideration denied</u>, 2023 WL 2632501 (E.D.N.Y. Mar. 24, 2023); <u>see also</u> <u>Bilello v. JPMorgan Chase Retirement Plan</u>, 592 F. Supp. 2d 654, 666 (S.D.N.Y. 2009) (pre-<u>Thole</u> case characterizing the plaintiff's ERISA claim "as a claim to recover benefits under Section 502(a)(1)(B)").

For these reasons, the Court concludes that Plaintiff has not carried her burden of establishing Article III standing to pursue her claims under ERISA §§ 409(a) and 502(a)(2).

Accordingly, these claims will be dismissed for lack of subject matter jurisdiction.

### C. Defendants' Factual Challenge

Defendants also insist, purely as a factual matter, that Plaintiff lacks Article III standing to pursue her claims because her monthly benefit would be lower if the Plan used the actuarial assumptions that she argues should be employed. (Defs.' Mem. at 18.)

Because Defendants raise a fact-based standing challenge, the "Court has leeway as to the procedure it wishes to follow," including delaying its jurisdictional ruling. Alliance for Envtl. Renewal., 436 F.3d at 88 ("[W]here the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence." (citing Land v. Dollar, 330 U.S. 731, 739 (1947)). Here, given the nature of Defendants' challenge and the evidence marshaled in support thereof, the Court agrees with Plaintiff that the motion "presents a complex question of fact that is not properly resolved on a motion to dismiss." Watson v. Consol. Edison of N.Y., 594 F. Supp. 2d 399, 407 (S.D.N.Y. 2009). This is especially true where, as here, Plaintiff has not had the benefit of discovery. Accordingly, this branch of Defendants' motion is denied without prejudice.

### III. MOTION TO COMPEL ARBITRATION

Because Plaintiff has adequately alleged that she has Article III standing to pursue her claims under § 502(a)(3), the Court turns next to Defendants' motion to compel individual arbitration of those claims. (Defs.' Mem. at 6.)

### A. Legal Standards

The FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. The FAA thus reflects both a "federal policy favoring arbitration"

and the "fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted).

As a general matter, "'a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute.'" Cooper, 990 F.3d at 179 (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original)); see also Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so." (internal quotation marks and citation omitted)). At the same time, however, "'federal policy requires [courts] to construe arbitration clauses as broadly as possible.'" In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995)). As the Supreme Court has made clear, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including when "the problem at hand is the construction of the contract language itself." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). This "presumption of arbitrability" can "'only [be] overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023) (quoting Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 395 (2d Cir. 2015)).

In deciding a motion to compel arbitration, courts within the Second Circuit consider the following two factors: "'(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue.'" Cooper, 990 F.3d at 179 (quoting Holick, 802 F.3d at 394). The party seeking to compel arbitration "bears an initial burden of

13

demonstrating that an agreement to arbitrate was made." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101–02 (2d Cir. 2022) (citations omitted). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" Id. at 102 (quoting Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010)).

Courts apply a "standard similar to that applicable for a motion for summary judgment," and they must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." Nicosia, 834 F.3d at 229 (internal quotation marks and citations omitted). In doing so, they must draw all reasonable inferences in favor of the non-moving party. See id. (citation omitted).

**B.    Analysis**

    **1.    Whether Plaintiff's Claims Are Subject to Arbitration**

Plaintiff does not dispute that she agreed to arbitrate some disputes with Luxottica. (Pl.'s Opp'n at 4.) Nor does she dispute that ERISA claims are generally arbitrable. See Bird v. Shearson Lehman/Am. Express, Inc., 926 F.2d 116, 122 (2d Cir. 1991) ("Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims. . . . [T]he FAA requires courts to enforce agreements to arbitrate such claims."); see also Smith v. Bd. of Directors of Triad Mfg., Inc., 13 F.4th 613, 620 (7th Cir. 2021) ("Joining every other circuit to consider the issue, we recognize that ERISA claims are generally arbitrable." (collecting cases)). Instead, Plaintiff insists only that her claims in this case fall outside the scope of the arbitration provision in the Agreement. (Pl.'s Opp'n at 4.) Given the parties' consensus that there was an agreement to arbitrate, the Court confines its analysis to "whether the scope of that agreement encompasses the claims at issue."

Cooper, 990 F.3d at 179 (internal quotation marks and citation omitted). At this step, Plaintiff bears the burden "to show[] the agreement to be inapplicable or invalid." Zachman, 49 F.4th at 102 (internal quotation marks and citation omitted).

As described above, the Agreement's introduction states that "[t]he arbitration portion of this Dispute Resolution Agreement covers virtually all legal claims arising out of or related to [an employee's] employment with Luxottica[.]" (Agreement at 50.) The arbitration provision states, in relevant part, as follows:

> [T]his Agreement applies, without limitation, to disputes with any individual . . . or entity . . . arising out of or related to the employment relationship or the termination of that relationship (including post-employment defamation or retaliation), . . . and claims arising under the . . . Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance) . . . , state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to Employee's employment or the termination of employment.

(Id. at 51–52.)

Plaintiff insists that her ERISA claims are not subject to arbitration because the arbitration provision covers only claims "arising out of or relating to" her employment. (Pl.'s Opp'n at 4.) She points to Cooper, which interpreted similar language in an arbitration provision and held that the plaintiff's ERISA claims were not subject to arbitration because they did not "relate to" his employment. 990 F.3d at 184. But Plaintiff's reading of the arbitration provision—and for the same reasons, her reliance on Cooper—misses the mark.

First, the Agreement's arbitration provision states unequivocally that it applies to claims arising under ERISA. The arbitration provision in Cooper applied to "all legal claims arising out of or relating to employment, application for employment, or termination of employment, except for claims specifically excluded under the terms" of the parties' agreement. 990 F.3d at 178. Here,

15

too, the Agreement's arbitration provision states that it "applies, without limitation, to disputes . . . arising out of or related to the employment relationship or the termination of that relationship[.]" (Agreement at 51–52.) But critically—unlike the provision in Cooper—the arbitration provision here also specifically encompasses "claims arising under the . . . Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance)[.]" (Id. at 52.)[2] Since the Agreement expressly provides that claims arising under ERISA are subject to arbitration, it is immaterial whether or not her claims also "arise out of or relate to" her employment. The Court thus concludes that her claims are subject to arbitration.

Second, even if the Court were to agree that the arbitration provision covers only disputes "arising out of or related to the employment relationship," (Pl.'s Opp'n at 5–7), Plaintiff's claims still would be subject to arbitration. Relying on Cooper, Plaintiff asserts that her claims challenging the Plan's mortality assumptions have "nothing to do with [her] employment at Luxottica." (Id. at 5.) But again, Cooper is inapposite. The plaintiff in Cooper sued a third-party investment manager, alleging breach of fiduciary duty and mismanagement of a profit-sharing fund sponsored by his employer. 990 F.3d at 175. The Second Circuit held that the plaintiff's claims did not "relate to" his employment because they "hinge[d] entirely on the investment decisions made by [the third-party investment manager]," and "none of the facts relevant to the merits of [the plaintiff]'s claims against [the defendant] relates to his employment." Id. at 183.

---

[2] Plaintiff does not—and cannot—argue that her ERISA claims fall within the arbitration provision's carveout for "claims for employee benefits under any benefit plan sponsored by the Company." This exception applies only to "actions to recover benefits under a company-sponsored benefit plan under [ERISA] § 502(a)(1), 29 U.S.C. § 1132(a)(1)." Cooper, 990 F.3d at 179 (interpreting arbitration provision that exempted "ERISA-related benefits provided under a Company sponsored benefit plan"). As discussed above, she brings no such claim here.

Here, however, there is a more substantial nexus between Plaintiff's claims and her employment. For example, unlike the Cooper plaintiff, she brings her claims against her former employer directly, challenging her former employer's calculation of her retirement benefits. Additionally, according to the Plan's terms, the Plan's purpose is to "provide[] additional retirement income" to Luxottica employees, like Plaintiff, as compensation for services performed to the company. (Hoffman Decl. Ex. A ("Plan") at 1, 7, ECF No. 41-1.) Moreover, as Defendants note, (Defs.' Mem. at 11), Plaintiff alleges that the calculation of benefits available to her under the Plan, which she describes as the "gravamen" of her complaint, (Pl.'s Opp'n at 4), actually influenced her retirement decisions. (Compl. ¶ 15 ("When retiring or deciding whether to retire, Plan participants like Plaintiff consider information provided by Defendants about their retirement options under the Plan.").)

Taken together, these facts suggest that the phrase "arising out of or relat[ing] to the employment relationship" is, at the very least, "susceptible of an interpretation that covers" Plaintiff's claims. Int'l Bhd. of Elec. Workers, 67 F.4th at 114 (internal quotation marks and citation omitted). Thus, at best, Plaintiff has established that the arbitration provision is "'ambiguous about whether it covers the dispute at hand[.]'" Id. at 113 (quoting Granite Rock, 561 U.S. at 301). But in that case, it is well-settled that the Court should apply the "'presumption of arbitrability'" and resolve any doubts in favor of coverage. Id. at 113–14 (quoting Granite Rock, 561 U.S. at 301). Here, for the reasons explained above, the arbitration provision's language can reasonably be interpreted to cover Plaintiff's ERISA claims, and Plaintiff has failed to offer any evidence sufficient to overcome the presumption in favor of arbitrability. As a result, the Court concludes that Plaintiff's claims are subject to arbitration.

17

### 2. Whether the Agreement Is Enforceable

Separately, Plaintiff argues that Defendants' motion to compel arbitration should be denied because the Agreement's arbitration provision is unenforceable.

First, she contends that the Agreement's class action waiver is unenforceable because it "'forbid[s] the assertion of certain statutory rights[.]'" (Pl.'s Opp'n at 8 (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 236 (2013); see also Pl.'s Not. Suppl. Auth. at 1–2 (citing Lloyd v. Argent Tr. Co., No. 22-CV-4129, 2022 WL 17542071, at *1 (S.D.N.Y. Dec. 6, 2022)), ECF No. 55.). However, the cases on which she relies are easily distinguishable. In those cases, the courts' concerns were animated by the "representative nature of the section 502(a)(2) right of action[.]" Cooper, 990 F.3d at 184 (internal quotation marks and citation omitted); see also Coan, 457 F.3d at 259–61 (discussing reasoning behind requirement that plaintiff bringing claim under § 502(a)(2) "take adequate steps under the circumstances properly to act in a representative capacity on behalf of the plan" (internal quotation marks and citation omitted)). Here, however, because the Court has dismissed Plaintiff's claims under § 502(a)(2) for lack of standing, those concerns do not apply. The Court will enforce the Agreement's class action waiver by its terms. See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1619 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."). Accordingly, Plaintiff must arbitrate her claims on an individual basis.

Second, Plaintiff insists that Defendants' motion should be denied "because the Summary Plan Description [("SPD")] that Defendants provided to [her] explicitly tells participants that they 'may file suit in federal court' for fiduciaries' violations of ERISA." (Pl.'s Opp'n at 9.) This argument is meritless. The complete portion of the SPD to which Plaintiff refers states that, if the

Plan's fiduciaries "breach their fiduciary duties," a participant "may file suit in federal court, but only after, to the extent permitted by law, [the participant] first exhaust[s] the Plan's claims and appeals procedures . . . and bring[s] legal action within 1 year after the date the claim arose." (Stokes Decl. Ex. B at 14, ECF No. 40-3 (emphasis added).) Plaintiff nowhere alleges that she complied with the Plan's claims and appeals procedures, and therefore she has not demonstrated that she can invoke the SPD here. In any event, the SPD does not, as she argues, have any contractual force such that it could displace the parties' separate agreement to arbitrate. See CIGNA Corp. v. Amara, 563 U.S. 421, 438 (2011) (explaining that "summary documents . . . provide communication with beneficiaries about the plan," but "their statements do not themselves constitute the terms of the plan").

\* \* \*

Having concluded that the parties agreed to arbitrate this dispute, the Court will grant Defendants' motion to compel arbitration. At their request, the case will be stayed pending arbitration. See Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015) ("[The] FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."); see also 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is GRANTED in part and DENIED in part. Plaintiff has not adequately alleged that she has Article III standing to assert her claims pursuant to ERISA §§ 409 and 502(a)(2). Therefore, those claims

are dismissed without prejudice for lack of subject matter jurisdiction. Defendants' factual challenge to Plaintiff's Article III standing is denied without prejudice.

The motion to compel individual arbitration of Plaintiff's remaining claims is GRANTED, and the case is STAYED pending arbitration. Accordingly, the Court does not address Defendants' motion to dismiss under Rule 12(b)(6).

**SO ORDERED.**

Dated: September 30, 2023
      Central Islip, New York

                                      /s/ JMA
                              JOAN M. AZRACK
                              UNITED STATES DISTRICT JUDGE