## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Janet Duke, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>-v-<br><br>Luxottica U.S. Holdings Corp., Oakley, Inc., Luxottica Group ERISA Plans Compliance & Investment Committee, and Luxottica Group Pension Plan,<br><br>Defendants. | 2:21-cv-6072 (NJC) (AYS) |

## <u>OPINION AND ORDER</u>

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Janet Duke ("Duke") brings this action on behalf of herself and other similarly situated individuals against Defendants Luxottica U.S. Holdings Corp. ("Luxottica"); Oakley, Inc. ("Oakley"); Luxottica Group ERISA Plans Compliance & Investment Committee ("Plans Committee"); and Luxottica Group Pension Plan (the "Plan" and collectively, "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3) ("Section 502(a)(2)" and "Section 502(a)(3)"). (Compl., ECF No. 1.) The Complaint alleges that Defendants have violated, and continue to violate, ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements with respect to the Plan. (*Id.* ¶ 1.) On September 30, 2023, this Court dismissed without prejudice Duke's Section 502(a)(2) claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), denied without prejudice Defendants' factual challenge to Duke's individual Article III standing to pursue Section 502(a)(2) and 502(a)(3) claims, granted the motion to compel arbitration of

Duke's Section 502(a)(3) claims, stayed the case pending arbitration, and did not address Defendants' motion to dismiss under Rule 12(b)(6). (Mem. & Order ("Order"), ECF No. 59.)

Duke filed a Motion for Reconsideration under Local Civil Rule 6.3. Before me is the fully-briefed Motion. (*See* ECF Nos. 60, 60-1, 62–63, 65–66, 70–71.)

For the reasons set forth below, I grant in part and deny in part Duke's Motion. First, I grant reconsideration of the Order's Rule 12(b)(1) dismissal without prejudice of Duke's claims under Section 502(a)(2) and find that Duke has standing to pursue these claims on behalf of the Plan for Plan-wide remedies under 29 U.S.C. § 1109 ("Section 409"). Second, I deny reconsideration of the Order's grant of Defendants' motion to compel arbitration of Duke's Section 502(a)(3) claims. Third, because I conclude that Duke has standing to pursue the Section 502(a)(2) claims, I reach Defendants' motion to compel arbitration of these claims and deny the motion, concluding that Duke's agreement with Luxottica to pursue some claims through arbitration on an individual basis is unenforceable with respect to her Section 502(a)(2) claims, which she brings in a representative capacity on behalf of the Plan to seek Plan-wide remedies. Fourth, I deny Defendants' request to stay the adjudication of the Section 502(a)(2) claims pending arbitration of the Section 502(a)(3) claims because Defendants fail to argue, much less demonstrate, that they have met their heavy burden to secure such a stay. Duke's Section 502(a)(2) claims will proceed in this action while her Section 502(a)(3) claims will proceed in arbitration on an individual basis.

## FACTUAL BACKGROUND

This Opinion and Order assumes the parties' familiarity with the factual and procedural background of this case, as addressed in the Order. (*See* Order at 2–5.)

The Complaint alleges that Duke is a former employee of a Luxottica subsidiary and vested participant in the Plan, which is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). (Compl. ¶¶ 1–2, 30.) Duke receives a joint and survivor annuity—a benefit that pays an annuity both to the participant for their lifetime and to the participant's surviving spouse for their lifetime. (*Id*. ¶¶ 1–2.) The Complaint alleges that Defendants improperly relied on outdated and unreasonable actuarial assumptions—namely, a mortality table that is "50 years out of date" and a 7% interest rate—in calculating Duke's pension benefits in violation of Sections 502(a)(2) and 502(a)(3). (*Id*. ¶¶ 2, 57–61.) On April 1, 2021, Defendants allegedly amended the Plan to use updated and reasonable mortality assumptions when calculating joint and survivor annuities. (*Id*. ¶ 14.) The Complaint alleges, however, that Defendants continue to employ the out-of-date mortality table and 7% interest rate to determine the value of joint and survivor annuities paid to Duke and members of the putative class—hundreds, if not thousands, of Plan participants and beneficiaries whose joint and survivor annuity benefits were calculated before April 1, 2021[1]—with the result that they receive pension payments that are lower than what is required under ERISA. (*Id*. ¶¶ 14, 86.) The Complaint alleges that if Defendants use the proper, updated mortality assumptions, Duke and other

---

[1] The Complaint estimates that there are "thousands" of Plan participants and beneficiaries whose joint and survivor annuities were calculated using the pre-amendment approach because, as of "January 1, 2019, there were 3,385 participants and beneficiaries receiving benefits under the Plan." (Compl. ¶ 87.) At oral argument, Duke's counsel explained that "[n]ot all of those would be people who elected joint and survivor annuities, but likely a large chunk of those people [did so]." (Aug. 22, 2024 Hr'g Tr. 8:9–14.) While it is not clear pre-discovery the exact number of joint and survivor annuity recipients who stand to receive increased monthly payments if Duke is granted the equitable relief she seeks, it is sufficient for present purposes to conclude that the Complaint has adequately pled that there are hundreds, if not thousands, of such recipients.

members of the putative class would receive larger monthly pension payments. (*Id*. ¶¶ 16, 60–63.)

Duke signed a Dispute Resolution Agreement ("Agreement") during her employment with Luxottica in 2015. (Hoffman Decl. ¶¶ 4, 6–8; Agreement, Hoffman Decl. Ex. 1, ECF No. 41-2.) There is no dispute that Duke had the opportunity to opt out of the Agreement but did not opt out and instead electronically signed the Agreement. (*Id.* ¶ 7; Defs.' Mem. Supp. Mot. Compel Arb. or Mot. Dismiss ("Defs.' Arb. or MTD Mem.") at 7–8, ECF No. 41; *see generally* Pl.'s Suppl. Br. Opp'n Defs.' Mot. Compel Arb. ("Pl.'s Opp'n Arb. Mem."), ECF No. 40.) The Agreement encourages employees to "express[] job-related concerns" to the company through an "Open Door Policy" of discussing these issues with managers and the human resources department. (Agreement at 5.) Although employees "are not required to use the Open Door Policy prior to initiating arbitration," they are "encouraged to do so." (*Id.* at 6.) "If the dispute isn't resolved through the Open Door Process, the next step is Arbitration." (*Id.*)

The Agreement provides that "[t]he arbitration portion of this . . . Agreement covers virtually all legal claims ***arising out of or related to your employment with Luxottica . . . .***" (*Id.* at 5 (emphasis added).) The arbitration provision describes the claims subject to arbitration as follows:

> Except as it otherwise provides, ***this Agreement applies, without limitation, to disputes*** with any individual (including Luxottica's employees, agents, supervisors, officers or directors) or entity (including any company affiliated with Luxottica, its parent(s) or subsidiaries, if any) ***arising out of or related to the employment relationship or the termination of that relationship*** (including post-employment defamation or retaliation), trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, termination, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan

sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, state statutes or regulations addressing the same or similar subject matters, ***and all other federal or state legal claims arising out of or relating to Employee's employment or the termination of employment.***

(*Id*. at 6–7 (emphasis added).)

The Agreement's arbitration provision also contains a "Class Action Waiver," which provides the following:

> ***This Agreement affects your ability to participate in class, collective or private attorney general representative action***. Both the Company and you agree to bring any dispute in arbitration on an individual basis only, ***and not on a class, collective or private attorney general representative basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or private attorney general representative action or as a member in any such class, collective or representative proceeding ("Class Action Waiver")***. The Class Action Waiver does not apply to any claim you bring in arbitration as a private attorney general solely on your own behalf not on behalf of others. Notwithstanding any other provision of this Agreement or the AAA Rules, ***disputes regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator***. In any case in which (1) the dispute is filed as a class, collective or private attorney general representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, or representative action, to that extent, must be litigated in a civil court of competent jurisdiction. However, the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

(*Id*. at 7–8 (emphasis added).) The Agreement further provides that "[a]ny disputes about the enforceability of the [arbitration provision] shall be decided by a court." (*Id*. at 7.)

## PROCEDURAL HISTORY

Duke filed this action on November 1, 2021, bringing claims under Section 502(a)(2) and Section 502(a)(3) on behalf of herself and a putative class of Plan participants and their beneficiaries who receive joint and survivor annuity benefits calculated using the actuarial assumptions in effect before the April 1, 2021 amendment. (*See generally* Compl.) The Complaint alleges that Defendants breached their fiduciary duties of prudence and loyalty and

violated ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements by failing to provide actuarially equivalent benefits to Duke and others whose joint and survivor annuity payments were calculated using the pre-amendment approach. (*Id.* ¶ 131.)[2] The Complaint seeks Plan-wide remedies under Section 409, which allows relief in the form of restoration of losses experienced by the Plan, disgorgement of profits, and "such other equitable or remedial relief as the court may deem appropriate" to remedy the breach of fiduciary duties. 29 U.S.C. § 1109; *see also* Compl. ¶¶ 106, 115, 124, 134.

Defendants filed a motion to compel arbitration or, in the alternative, dismiss the Amended Complaint pursuant to Rule 12(b)(1) and (b)(6). (Defs.' Mot. Compel Arb., ECF No. 23.) The motion was fully briefed on September 29, 2022. (*See* Defs.' Reply Supp. Mot. Dismiss, ECF No. 50.)

On September 30, 2023, Judge Joan M. Azrack, to whom this action was previously assigned, issued the Order, granting in part and denying in part Defendants' motion to compel arbitration or, in the alternative, dismiss the Amended Complaint pursuant to Rule 12(b)(1) and (b)(6). (*See generally* Order.) First, the Order dismissed Duke's claims on behalf of the Plan without prejudice for lack of subject matter jurisdiction on the basis that the Complaint "has not adequately alleged that [Duke] has Article III standing to assert her class claims pursuant to ERISA §§ 409 and 502(a)(2)." (*Id.* at 12, 19.) Second, the Order denied without prejudice Defendants' factual challenge to Duke's Article III standing to bring claims under Sections 409 and 502(a)(2) and under Section 502(a)(3). (*Id.* at 12.) Third, the Order granted Defendants'

---

[2] ERISA's actuarial equivalence requirement is set forth in 29 U.S.C. § 1054(c)(3) ("Section 204(c)(3)"). The anti-forfeiture provision is set forth in 29 U.S.C. § 1053(a) ("Section 203(a)"). And ERISA's joint and survivor annuity requirement is set forth in 29 U.S.C. § 1055(a)–(d) ("Section 205(a)–(d)").

motion to compel arbitration of Duke's Section 502(a)(3) claims but did not reach Duke's argument that the Class Action Waiver in the Agreement's arbitration provision is unenforceable because it forbids the assertion of certain statutory rights, in light of the Order's dismissal of the Section 409 and 502(a)(2) claims under Rule 12(b)(1). (*Id*. at 15–19.) The Order stayed the case pending arbitration and did not address Defendants' motion to dismiss Duke's claims of alleged violations of the ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements under Rule 12(b)(6). (*Id*. at 19–20.)

On October 16, 2023, Duke moved for reconsideration of the Order. (Mot. Reconsid., ECF No. 60; Mem. Supp. Mot. Reconsid., ECF. No. 60-1) Defendants opposed on November 13, 2023, and Duke replied on November 20, 2023. (Opp'n Mot. Reconsid., ECF No. 62; Reply Supp. Mot. Reconsid., ECF No. 63.) On March 1, 2024, Duke filed a notice of supplemental authority, attaching the district court's decision in *Franklin v. Duke University*, 721 F. Supp. 3d 386 (M.D.N.C. 2024), *appeal filed*, 24-1205 (4th Cir. Mar. 11, 2024). (Pl.'s First Not. Suppl. Auth., ECF No. 65.) Defendants responded on March 18, 2024. (Defs.' Resp. Pl.'s Not. Suppl. Auth., ECF No. 66.) On August 19, 2024, Defendants filed a notice of supplemental authority, attaching the Second Circuit's decision in *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024). (Defs.' Not. Suppl. Auth., ECF No. 68.)

On August 22, 2024, the Court heard oral argument on Duke's Motion for Reconsideration. (Elec. Order, August 22, 2024.) At oral argument, Defendants requested—for the first time—the opportunity to provide additional briefing in support of their motion to compel arbitration, despite having failed to address in their opposition to the Motion for Reconsideration Duke's argument that the arbitration provision in the parties' Agreement is unenforceable as to the Section 502(a)(2) claims under *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), and *Cooper*

*v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021). (Aug. 22, 2024 Hr'g Tr. 53:1–11, ECF No. 69; Mem. Supp. Mot. Reconsid. at 4 n.3.) I granted both parties the opportunity to provide supplemental briefs addressing this issue, among other things. Specifically, I ordered the parties to address: (1) "the impact of the Second Circuit's decision in *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024) and *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739 (2d Cir. 2019), on the Court's analysis of the motion for reconsideration of the Order's dismissal of Duke's Section 502(a)(2) claim for lack of Article III standing"; (2) "whether, if the Court were to grant reconsideration of the dismissal of the Section 502(a)(2) claim, the Court should address the enforceability of the arbitration agreement as to that claim"; (3) "whether the arbitration agreement is enforceable as to the Section 502(a)(2) claim in light of [the] agreement's representative/class action waiver and *Cedeno*, 100 F.4th 386"; and (4) "any impact of a finding that the arbitration agreement is unenforceable against the Section 502(a)(2) claim on the arbitrability of the Section 502(a)(3) claim." (Elec. Order, Aug. 22, 2024.)

The parties filed their supplemental briefs. (Pl.'s Suppl. Br. Supp. Mot. Reconsid., ECF No. 70; Defs.' Suppl. Br. Opp'n Mot. Reconsid., ECF No. 71.) On November 12, 2024, Duke filed another notice of supplemental authority, attaching the Sixth Circuit's decision in *Fleming v. Kellogg Co.*, No. 23-cv-1966, 2024 WL 4534677 (6th Cir. Oct. 21, 2024). (Pl.'s Second Not. Suppl. Auth., ECF No. 73). Defendants responded on November 19, 2024. (Defs.' Resp. Pl.'s Second Not. Suppl. Auth., ECF No. 74.)

## STANDARD OF REVIEW

The standard for granting a motion for reconsideration is "strict." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted). The decision to grant or deny the motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584

F.3d 52, 61 (2d Cir. 2009). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation marks and alterations omitted). A party's "disagreement" with the court's "explication of the relevant legal standards and application of the standards to the facts of [the] case" does not justify the grant of a motion for reconsideration. *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018). The "manifest injustice" standard affords the district court substantial discretion and is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002).

## DISCUSSION

For the reasons set forth below, I grant in part and deny in part Duke's Motion for Reconsideration (ECF No. 60) of the Order resolving Defendants' Motion to Dismiss and Motion to Compel Arbitration (ECF No. 59).

First, I grant reconsideration as to the Order's holding that Duke does not have Article III standing to pursue her claims for Plan-wide relief under Sections 409 and 502(a)(2). (Order at 10.) The Complaint plausibly alleges that Duke suffers from the concrete, particularized, and actual injury of receiving joint and survivor annuity payments that are less than what is legally required due to Defendants' use of outdated actuarial assumptions to calculate joint and survivor annuity benefits for her and others whose benefits were calculated before April 1, 2021. It also plausibly alleges that Defendants' same conduct has caused, and continues to cause, injuries to

the Plan, and that the relief Duke seeks would plausibly redress the alleged injuries to the Plan and Duke. The Order committed three clear errors in its reasoning finding otherwise. Accordingly, I hold that the Complaint withstands Defendants' facial challenge to Duke's standing to pursue Section 502(a)(2) claims on behalf of the Plan for relief afforded by Section 409.

Second, I deny reconsideration as to the Order's holding that Duke's claims under Section 502(a)(3) should be compelled to arbitration on an individual basis. (Order at 18–19.) The Order did *not*, as Duke contends, erroneously hold that Duke was required to administratively exhaust her Section 502(a)(3) claims before bringing them in federal court. Rather, the Order held that the Summary Plan Description's statement that Plan participants "may file suit in federal court" for ERISA fiduciary violations "does not . . . have any contractual force such that it could displace the parties' separate agreement to arbitrate." (*Id*.) Duke does not identify any clear error or manifest injustice in the Order's ruling that she is compelled to arbitrate her individual Section 502(a)(3) claims, and I deny reconsideration of that portion of the Order.

Third, because Duke has standing to pursue her Section 502(a)(2) claims for Plan-wide relief, I address whether the arbitration provision in Duke's agreement with Luxottica, which requires Duke to pursue any disputes only through arbitration on an individual basis and bars any class or representative action, is enforceable as to those claims. The arbitration provision requires Duke to waive her statutory rights under Sections 409 and 502(a)(2) to bring representative claims on behalf of the Plan and to seek Plan-wide remedies. It is therefore unenforceable as to Duke's Section 502(a)(2) claims.

Finally, Defendants have not met their heavy burden to show the necessity of a stay of the litigation of Duke's Section 502(a)(2) claims pending the resolution of the arbitration of the Section 502(a)(3) claims. Thus, Duke's Section 502(a)(2) claims on behalf of the Plan will proceed in this Court in parallel with arbitration of the Section 502(a)(3) claims.

**I.    Duke's Article III Standing to Pursue Section 502(a)(2) Claims on Behalf of the Plan**

The Order dismissed Duke's Section 502(a)(2) claims on behalf of the Plan for two main reasons. First, the Order found that the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), "controls and mandates dismissal" of the Section 502(a)(2) claims because Duke, like the *Thole* plaintiffs, is "a participant in a defined benefit plan." (Order at 9–10.) The Order reasoned that Duke, as a participant in a defined benefit plan, would not experience any change in her monthly annuity payments were she to prevail on the Section 502(a)(2) claims and therefore "lacks a concrete stake in the outcome of this lawsuit." (*Id*. at 10.) Second, the Order rejected Duke's argument that, unlike the *Thole* plaintiffs, her monthly annuity payments would be larger if she were to prevail on her Section 502(a)(2) claims on behalf of the Plan. (*Id.*) The Order reasoned that Duke "nowhere alleges how [Defendants'] conduct caused any 'losses to the plan[]' or how any remedy requiring Defendants 'to make good to such plan any losses[]' would impact her benefits under the Plan." (*Id.* (quoting 29 U.S.C. § 1109(a).)

Duke argues that reconsideration of the Order is warranted to prevent manifest injustice and to correct errors in the Order's analysis of her standing to bring Section 502(a)(2) claims for Plan-wide relief. (Mem. Supp. Mot. Reconsid. at 4.)[3] Duke contends that the Order committed

---

[3] Duke does not seek reconsideration of the Order's denial without prejudice of Defendants' "factual challenge" to her standing to pursue Section 502(a)(2) and 502(a)(3) claims. (*See* Order at 12; *see generally* Mot.) Duke's expert attests by declaration that Duke is receiving approximately $53.62 (6.2%) less per month because of the Plan's use of outdated actuarial

legal error because it "overlooked that the Complaint seeks remedies other than loss restoration under § 502(a)(2)," including "reformation of the Plan and an injunction ordering Defendants to fix the illegal Plan terms under § 502(a)(2)," as well as recalculation of joint and survivor annuity payments for Duke and putative class members and the distribution of "additional pension payments owed to them under the *reformed* plan." (*Id*.) Duke argues that she suffers from the concrete, particularized, and actual injury of being deprived of these additional payments due to Defendants' use of outdated actuarial assumptions, and that she therefore has standing to bring Section 502(a)(2) claims on behalf of the Plan. (*Id*. at 3–4.)

Duke also argues that *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024), which held that an arbitration provision preventing an individual plaintiff from seeking plan-wide relief under Section 502(a)(2) was unenforceable, further supports her standing arguments for three reasons. First, Duke contends that although *Cedeno* did not directly address standing, the Second Circuit's decision to allow an individual plaintiff to bring claims alleging injury to the plan at issue implies that the plaintiff in that case had standing and, accordingly, that Duke has standing here as well. (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 1–2.) Second, Duke points to *Cedeno*'s holding that although "the remedies available under Section 502(a)(2) for fiduciary breaches that violate Section 409(a) inure to the benefit of *the plan*," they also "provid[e] . . . indirect relief to individual plan participants and beneficiaries." (*Id.* at 3 (citing *Cedeno*, 100 F.4th at 404 (emphasis in original)).) Third, Duke claims that *Cedeno* affirms her view that Section 502(a)(2) is a proper vehicle for seeking plan-wide remedies for plan-wide misconduct. (*Id.* at 4.)

---

assumptions. (Altman Decl. ¶¶ 8–9, ECF No. 47-1.) By contrast, Defendants' expert attests that reformation of the Plan to use updated actuarial assumptions would cause Duke to receive a lower monthly amount. (Sher Decl. ¶¶ 11–14, ECF No. 41-3.) I do not rely on any of these facts in resolving this Motion.

Further, Duke argues that Defendants' reliance on *Laurent*, 945 F.3d 739, and *Varity Corporation*, 516 U.S. 489 (1996), is misplaced because those cases do not address remedies for fiduciary violations available under Sections 409 and 502(a)(2), but rather address remedies available under Section 502(a)(3). (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 5.)

### A. The Order's Dismissal of the Section 502(a)(2) Claims for Lack of Article III Standing Was Based on Three Clear Errors.

The Order made three clear errors in dismissing Duke's claims under Sections 409 and 502(a)(2) on behalf of the Plan for lack of standing. Once these three errors are corrected, it is clear that Duke has standing to pursue Section 502(a)(2) claims for Plan-wide relief because she has alleged injuries-in-fact that are concrete, particularized, and actual and that such injuries are traceable to Defendants' alleged conduct and redressable through the specific relief requested in the Complaint.

First, the Order incorrectly reasoned that Duke "nowhere alleges how [Defendants'] conduct caused any losses to the plan or how any remedy requiring Defendants to make good to such plan any losses would impact her benefits under the Plan." (Order at 10.) This reasoning overlooks the Complaint's well-pled allegations that Defendants' use of outdated actuarial assumptions to calculate joint and survivor annuity benefits causes harm to the Plan as a whole. The Complaint alleges "[o]n information and belief" that Defendant Luxottica and/or Defendant Oakley "is the 'plan sponsor'" as defined by 29 U.S.C § 1002(16)(B),[4] and that "the Plan

---

[4] Allegations made "upon information and belief" "will [only] . . . make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, No. 21-2827-CV, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023) (citing *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018)). Here, I find that the allegations that Defendants Luxottica and Oakley are Plan sponsors—allegations that are made "upon information and belief" in paragraphs 28 and 29 of

sponsor(s) and various companies affiliated with [them] make contributions to the Plan to fund retirement benefits promised under the Plan" and are collectively referred to as "Luxottica North America" in the Summary Plan Descriptions. (Compl. ¶¶ 28–29.) It further alleges that the Plans Committee breached its fiduciary duties by using outdated actuarial assumptions to calculate joint and survivor annuities, which "in turn allowed Luxottica North America and/or plan sponsor(s) to save money *by reducing the amount contributed to the Plan to fund benefits*." (*Id*. ¶ 66 (emphasis added).) The Complaint also alleges that "Luxottica North America and/or plan sponsor(s) in fact received and continues to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows, *which improperly reduces the funding obligations to the Plan*." (*Id*. ¶ 84 (emphasis added).)

Failing to acknowledge these allegations of harm to the Plan as a whole from Defendants' use of outdated actuarial assumptions, the Order incorrectly reasoned that Duke "nowhere alleges how [Defendants'] conduct caused any 'losses to the plan'" under Section 409. (Order at 10; *see id*. at 7–12 (not recognizing the allegations in Complaint paragraphs 28–29, 66, and 84).)[5] The Order erred by overlooking these allegations and thereby failing to accept as true all material factual allegations of the Complaint and to draw all reasonable inferences in favor of

---

the Complaint—are also supported by numerous factual allegations giving rise to the inference that Defendants are "plan sponsors" under 29 U.S.C. § 1002(16)(B) ("Section 1002(16)(B)"). Section 1002(16)(B) defines "plan sponsor" to mean, in relevant part, "the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B)(i). The Complaint alleges, in turn, that Duke was employed by Luxottica and that Luxottica maintained the Plan at issue. (*See* Compl. ¶¶ 27, 30–31.)

[5] To the extent Defendants argue that the alleged systemic underfunding of the Plan due to Defendants' use of outdated actuarial assumptions does not constitute a "loss" experienced by the Plan as that term is used in Section 409, that is a factual question to be resolved after discovery. As noted previously, Defendants brought a factual challenge to Duke's standing under Rule 12(b)(1), but the Order dismissed that motion without prejudice. (*See* Order at 12.) No party sought reconsideration of that ruling. (*See generally* Mem. Supp. Mot. Reconsid.).

Duke in considering Defendants' Rule 12(b)(1) motion. *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 283 (2d Cir. 2023); *see also All. for Env't Renewal, Inc. v. Pyramid Crossgates, Co.*, 436 F.3d 82, 88 n.7 (2d Cir. 2006) ("[A] facial challenge . . . accepts the jurisdictional facts pleaded and challenges only their sufficiency.").

Second, the Order overlooked the Complaint's request for specific forms of Plan-wide equitable relief to remedy the alleged harms to the Plan and Duke. The Complaint alleges that "[h]ad Duke's benefits been determined using reasonable actuarial assumptions . . . her joint and survivor annuity would be larger . . . ." (Compl. ¶ 27.) It seeks, among other relief: (1) "[r]eformation of the Plan" to provide for proper actuarial assumptions in the calculation of joint and survivor annuity payments for Duke and members of the putative class, whose joint and survivor annuity payments were calculated before April 1, 2021; (2) an injunction requiring fiduciaries to fix the Plan's use of outdated actuarial assumptions (relief overlapping with the first form of requested relief); (3) an injunction ordering Defendants to recalculate and pay all amounts owed to Duke and other members of the putative class because their past joint and survivor annuity payments were allegedly lower than legally required due to Defendants' use of outdated actuarial assumptions; (4) "restoration of losses to the Plan and its participants";[6] (5) "disgorgement of any benefits or profits the Plans Committee received" by using outdated actuarial assumptions;[7] and (6) "all appropriate injunctive relief, such as an order requiring the

---

[6] This request for loss restoration is also framed as seeking a "payment to the Plan of the amounts owed to Class members . . . so that those amounts owed can be provided to Plan participants." (Compl. ¶ L.)

[7] This request for disgorgement of profits is also framed as seeking restitution of all amounts Defendants kept in the Plan but were obliged to pay to Duke and other members of the putative class in accordance with ERISA's actuarial equivalence, anti-forfeiture, and joint-and-survivor requirements, and separately as a "surcharge" that "total[s] the amounts owed to participants

Plans Committee to pay all Plan participants fully-ERISA compliant benefits in the future." (*See* Compl. at 29–31, ¶¶ D–E, L.)[8] The Order did not recognize any of these forms of relief requested in the Complaint other than loss restoration. (*See* Order at 6–12.)

Thus, the Complaint seeks numerous forms of <u>equitable relief</u> that would require Plan administrators to change the way they calculate joint and survivor annuities for people whose benefits were calculated using the pre-amendment assumptions. Such Plan-wide relief would plausibly remedy the alleged underpayment to Duke as well as the alleged injuries to the Plan caused by Defendants' systemic underpayment of joint and survivor annuity benefits to Duke and members of the putative class, which include: (1) systemic underfunding of the Plan by its sponsors and (2) the Plan's non-compliance with ERISA's actuarial equivalence, joint-and-survivor, and anti-forfeiture requirements. By overlooking the equitable relief sought in the Complaint, the Order incorrectly concluded that Duke lacks a concrete financial stake in the Section 502(a)(2) claims brought on behalf of the Plan to secure Plan-wide remedies under Section 409, which explicitly affords "appropriate" "equitable and remedial relief" for fiduciary violations.

Third, the Order incorrectly concluded that the Supreme Court's decision in *Thole* "mandates dismissal" of Duke's Section 502(a)(2) claims based on a misunderstanding of the distinctions between the claims in these two cases and the well-pled factual allegations in the

---

and/or the amount of unjust enrichment obtained by Defendants as a result" of the use of outdated actuarial assumptions. (Compl. at 30–31, ¶¶ J, L.)

[8] The Complaint also seeks a declaration that the actuarial assumptions used to calculate joint and survivor annuities for Duke and members of the putative Class violate ERISA's actuarial equivalence requirement, 29 U.S.C. § 1054(c)(3), anti-forfeiture provision, 29 U.S.C. § 1053(a), and joint and survivor annuity requirement, 29 U.S.C. § 1055(a)–(d). (Compl. at 28–31, ¶¶ A–B.)

Complaint. (Order at 9–10.) In *Thole*, the Supreme Court held that two retired participants in a defined benefit plan lacked Article III standing to sue the plan's fiduciaries for ERISA violations stemming from allegedly poor investment decisions, where the plaintiffs "would still receive the exact same monthly benefits that they are already slated to receive," whether they won or lost their ERISA claims. 590 U.S. at 541. By contrast, Duke does not challenge Defendants' poor investment decisions; she challenges Defendants' use of outdated actuarial assumptions to calculate joint and survivor annuity benefit payments for her and hundreds, if not thousands, of others and seeks equitable relief to reform the Plan so that, going forward, benefit payments are calculated using reasonable actuarial assumptions resulting in larger payments and thereby greater funding for the Plan. This distinction is critical. The Complaint plausibly alleges that changing the way Defendants calculate joint and survivor annuity benefits for those whose benefits were calculated before April 1, 2021 would directly, concretely, and measurably increase the amount of Duke's monthly joint and survivor annuity payments. Thus, unlike the *Thole* plaintiffs, Duke has plausibly alleged that she will materially benefit from prevailing on her Section 502(a)(2) claims on behalf of the Plan.

The Order thus misapplied *Thole* to conclude that, because Duke "is a participant in a defined benefit plan[,] . . . . whether or not she secures recovery <u>for the Plan</u> . . . she will still receive the exact same monthly benefits that she is already slated to receive." (Order at 10 (citing *Thole*, 590 U.S. at 541, 543) (quotation marks and alterations omitted).) This was error. The fact that Duke is a participant in a *defined benefit plan*, rather than a defined contribution plan, is not dispositive of the Section 502(a)(2) standing question here, where the Complaint presents well-pled allegations that Duke's monthly benefit payments will *increase* if Defendants are prohibited

from applying a mortality table that is "fifty years out of date" and a 7% interest rate to calculate joint and survivor annuities for Duke and many others. (Compl. ¶¶ 57–58.)

### B.  Standing Analysis for the Section 502(a)(2) Claims

A standing analysis that corrects the three errors identified above leads to the conclusion that Duke's Section 502(a)(2) claims for Plan-wide relief survives Defendants' facial Rule 12(b)(1) challenge. The Complaint demonstrates that Duke meets the three requirements for Article III standing: (1) she has suffered, and will continue to suffer, "an injury in fact that is concrete, particularized, and actual or imminent"; (2) it is plausible that "the injury was caused by the defendant[s]"; and (3) it is plausible "that the injury would likely be redressed by the requested judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) (recognizing that a court must "accept[] as true all material factual allegations of the complaint" on a facial challenge to standing) (alterations omitted).

*TransUnion* requires courts to analyze standing "for each claim that [plaintiffs] press and for each form of relief that they seek (for example, injunctive relief and damages)," 594 U.S. at 431, and, accordingly, I do so here.

ERISA Sections 409 and 502(a)(2) work in tandem to provide a path for plan participants to bring civil actions against plan fiduciaries who breach their duties to the plan. Section 409(a) describes the liability that attaches for breach of fiduciary duty. 29 U.S.C. § 1109. Section 502(a)(2) permits a plan participant or beneficiary, among others, to bring a civil action on behalf of the plan and to seek "appropriate relief" under Section 409, 29 U.S.C.§ 1132(a)(2), for breach of "any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter," 29 U.S.C. § 1109.[9] As a threshold matter, the Complaint alleges that Defendants have breached fiduciary duties by using actuarial assumptions that violate ERISA's actuarial equivalence, anti-forfeiture, and joint-and-survivor annuity provisions set forth in 29 U.S.C. §§ 1053(a), 1054(c)(3), 1055(a)–(d). (Compl. ¶¶ 102, 107, 111, 116, 120, 122.)[10]

      As previously discussed, Duke seeks, among other relief: (1) "[r]eformation of the Plan" to provide for proper actuarial assumptions in the calculation of joint and survivor annuity payments for Duke and members of the putative class; (2) an injunction requiring fiduciaries to fix the Plan's use of outdated actuarial assumptions (relief overlapping with the first form of requested relief); (3) an injunction ordering Defendants to recalculate and pay all amounts owed to Duke and other members of the putative class because their past joint and survivor annuity payments were allegedly lower than legally required due to Defendants' challenged conduct; (4) "restoration of losses to the Plan and its participants"; (5) "disgorgement of any benefits or profits the Plans Committee received" by using outdated actuarial assumptions,; and (6) "all appropriate injunctive relief, such as an order requiring the Plans Committee to pay all Plan participants fully-ERISA compliant benefits in the future." (*See* Compl. at 29–31, ¶¶ D–E, L.) I address Duke's standing to pursue Section 502(a)(2) claims for each of these forms of relief in turn.

---

[9] ERISA Subchapter I, pertaining to "Protection of Employee Benefit Rights," encompasses ERISA Sections 1–734c, 29 U.S.C. §§ 1001–1191c. Accordingly, all provisions of ERISA relevant here fall under this subchapter: the actuarial equivalence requirement, 29 U.S.C. § 1054(c)(3), the anti-forfeiture provision, 29 U.S.C. § 1053(a), and the joint and survivor annuity requirement, 29 U.S.C. § 1055(a)–(d), liability for breaches of fiduciary duty, 29 U.S.C. § 1109, and civil enforcement, 29 U.S.C. § 1132.

[10] As noted above, the Order did not resolve Defendants' Rule 12(b)(6) motion to dismiss. (Order at 20.) Therefore, I make no determination at this time whether the Complaint withstands such a challenge.

The Complaint sufficiently alleges Duke's standing to assert claims under Sections 409 and 502(a)(2) for plan reformation and overlapping injunctive relief to fix the Plan's use of outdated actuarial assumptions and ensure that Duke and putative class members receive ERISA-compliant benefits going forward. (*See* Compl. at 29, ¶¶ D–E, L (requesting such relief).) First, the Complaint's allegation that Duke has received, and will continue to receive, lower monthly joint and survivor annuity payments due to Defendants' use of the challenged actuarial assumptions alleges an injury in fact that is concrete, particularized, and actual. (*Id.* ¶¶ 27, 57–62); *see also TransUnion*, 594 U.S. at 423; *Thole*, 590 U.S. at 540. Second, the Complaint plausibly alleges that Defendants caused Duke's injury by using outdated actuarial assumptions that fail to reflect significant advances in mortality, including a mortality table that is "fifty years out of date" and a 7% interest rate. (Compl. ¶¶ 27, 59–60); *TransUnion*, 594 U.S. at 423; *Thole*, 590 U.S. at 540. Third, the remedy of reforming the plan by "eliminat[ing] and bar[ring] any future use of actuarial assumptions that result in less than the actuarial equivalent value of the participant's single life annuity at retirement" would plausibly redress this injury, as would the requested injunction requiring that future annuity payments to Duke and members of the putative class comply with ERISA's actuarial equivalence, anti-forfeiture, and joint-and-survivor annuity requirements. (Compl. at 29, ¶ E(ii).) Unlike the *Thole* plaintiffs, if I were to grant Duke the plan reformation and overlapping injunctive relief that she seeks, Duke would receive higher monthly monetary payments going forward due to the use of updated actuarial equivalency formulas (*see* Compl. ¶ 61),[11] which would plausibly require Defendants Luxottica and Oakley and other Plan

---

[11] According to Duke's expert, Defendants' use of updated and reasonable actuarial assumptions could result in her receiving a 6.2% higher monthly payment. (Altman Decl. ¶ 8.) Defendants' expert challenged this finding (Sher Decl. ¶¶ 11–14), and the Order denied without prejudice Defendants' factual challenge to Duke's standing. (Order at 12.)

contributors to increase funding to the Plan to cover these higher payments to hundreds, if not thousands, of recipients whose benefits were calculated using pre-amendment assumptions (*see* Compl. ¶¶ 66, 84). If Duke were to lose her claim for plan reformation and related injunctive relief, she would miss out on these additional sums, and Defendants Luxottica and Oakley and other Plan contributors would not increase their funding of the Plan to cover higher payments to those whose joint and survivor annuities were calculated before April 1, 2021.

Likewise, the Complaint adequately alleges Duke's standing to bring claims under Sections 409 and 502(a)(2) seeking to restore losses to the Plan and the related recalculation and payment of all amounts owed to Duke and members of the putative class to remedy historic underpayment of their joint and survivor annuities. *(Id.* at 29, ¶ E(iv); 31, ¶ L.) As discussed above, Duke plausibly alleges a concrete, particularized, and actual injury caused by Defendants: by failing to use the proper actuarial tables and interest rate, Defendants have allegedly deprived the Plan of funds needed to pay Duke and other Plan beneficiaries the amounts due to them had their annuities been calculated using the proper actuarial equivalency formulas. *Id.* ¶¶ 27, 59–60); *see also TransUnion*, 594 U.S. at 423. Loss restoration and the recalculation and payment of amounts owed to Duke and members of the putative class work together to redress both Duke's alleged injury of receiving past annuity payments that are lower than what she is legally entitled to and the Plan's related injury of sustaining underfunding and related losses due to the Plan Committee's use of outdated actuarial assumptions to calculate joint and survivor annuity payments for hundreds, if not thousands of recipients. This backward-looking relief is akin to restitution and will plausibly redress Duke's financial losses by ensuring that the funds restored to the Plan are properly distributed.

Finally, the Complaint sufficiently alleges that Duke has standing to pursue claims under Sections 409 and 502(a)(2) for disgorgement of profits earned by the Plans Committee due to their use of outdated actuarial assumptions to under-calculate joint and survivor annuities for Duke and members of the putative class. Again, Duke plausibly alleges that Defendants caused her a concrete, particularized, and actual injury by using improper actuarial calculations and thus paying her reduced monetary amounts on her joint and survivor annuity. Compl. ¶¶ 27, 59–60; *see also TransUnion*, 594 U.S. at 423. She plausibly alleges that Luxottica North America and/or the Plan sponsors "received and continue to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows." (Compl. ¶ 84.) The Complaint seeks remedies that would redress this alleged harm, including disgorgement of the profits earned through Defendants' use of the money owed to Duke and other joint-and-survivor annuity recipients, "restitution of all amounts Defendants kept in the Plan but were obliged to pay to [Duke] and other members of the putative class in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d)," and a "[s]urcharge" that "total[s] the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result" of the use of outdated actuarial assumptions. (*Id.* at 30, ¶¶ H–J.)

The conclusion that Duke has standing to pursue her Section 502(a)(2) claims for various forms of Plan-wide relief is supported by *Franklin*, 721 F. Supp. 3d 386. In *Franklin*, the district court held that a participant in a defined benefit plan had standing to pursue Section 502(a)(2) claims against defendants who, like Defendants in this case, are alleged to "use . . . outdated and unreasonable actuarial equivalency formulas" for calculating joint and survivor annuity benefits, with the result that the plaintiff's monthly benefit was reduced "by $64.32." 721 F. Supp. 3d at 389, 391. The court in *Franklin* found that the plaintiff "has suffered an injury in fact—reduced

22

monetary benefits—and that this monetary harm is causally related to the conduct she seeks to challenge on behalf of the entire Plan—the use of outdated and unreasonable actuarial equivalency formulas." *Id*. at 391. It further found that success on the Section 502(a)(2) claims would lead to an "injunction requiring the defendant fiduciaries to recalculate benefits . . . and her monthly benefit will increase, further strengthening the causal link." *Id*. at 391–92. Finally, the court rejected the argument that the plaintiff had failed to show that the requested relief would benefit the Plan, finding that the relief sought to "bring the Plan into compliance with ERISA's actuarial equivalence requirement so it can pay fully ERISA-compliant benefits in the future," and so that "the defendants restore losses to the Plan." *Id*. at 392 (quotation marks omitted).

### C.  Defendants' Arguments

Defendants make four overarching arguments against granting the Motion for Reconsideration. Each of them is unpersuasive.

First, Defendants maintain that the Order correctly held that the Supreme Court's decision in *Thole* requires dismissal of the Section 502(a)(2) claims and rejected Duke's arguments to distinguish *Thole*. (Opp'n Mot. Reconsid. at 6.) Defendants fail to acknowledge the substantive distinction between the claims made in *Thole* against fiduciaries' allegedly poor investment decisions and Duke's claims against Defendants' use of outdated actuarial assumptions in calculating benefit payments, as discussed above. Whereas the success of the claims in *Thole* would not have altered the monthly benefit payments made to the plaintiffs in that case, Duke's success on her Section 502(a)(2) claims would result in reformation of the Plan and an injunction against the use of outdated actuarial assumptions, which would cause Duke to receive larger monetary payments. To the extent that Defendants seek to argue that Duke would

not actually receive more money if the Plan is reformed to use updated actuarial assumptions to calculate joint and survivor annuity payments for those whose benefits were calculated before April 1, 2021, that argument relates to Defendants' factual challenge to Duke's standing. The Order denied Defendants' fact-based standing challenge without prejudice because "the motion presents a complex question of fact that is not properly resolved on a motion to dismiss." (Order at 12.) Neither party moved to reconsider that determination, and thus I do not revisit it.

Second, Defendants invoke the Supreme Court's holding in *TransUnion* that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek" and argue that Duke cannot demonstrate standing with respect to each form of relief requested under Sections 409 and 502(a)(2). (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 1 (citing *TransUnion*, 594 U.S. at 431).) Concerning loss restoration, Defendants contend that Duke has no standing to pursue this remedy under Section 502(a)(2) because the Complaint does "not allege any harm *to the Plan* that also caused her a personal Article III injury in fact." (Opp'n Mot. Reconsid. at 5; *see also* Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 2–3.) Concerning plan reformation and injunctive relief, Defendants again contend that the Complaint does not allege any harm to the Plan and that, in fact, reforming the Plan to pay beneficiaries additional payments would diminish the Plan's assets. (Opp'n Mot. Reconsid. at 6.)

Defendants' argument under *TransUnion* fails. As I explained above, standing is satisfied with respect to each of the Plan-wide remedies Duke seeks under Sections 409 and 502(a)(2). *See supra* Section I.B. Indeed, the Complaint *does* allege that Defendants' use of outdated actuarial assumptions has harmed and continues to harm Duke by unlawfully reducing her monthly joint and survivor annuity payments such that they are not equivalent to the value of a single life annuity. (Compl. ¶¶ 27, 57–60, 84.) The Complaint also alleges that this harm to Duke

and others whose joint and survivor annuity benefits were calculated before the 2021 amendment causes the Plan the injuries of systemic underfunding and ongoing non-compliance with ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor requirements. (*Id.* ¶¶ 68–72, 83–84.) These injuries are plausibly redressed by the requested relief of Plan reformation and related injunctive relief to correct the Plan terms and to ensure that Duke and putative class members receive ERISA-compliant payments going forward. (*Id.* at 29, ¶¶ D–E; 31, ¶ L.) Furthermore, the relief of loss restoration and an injunction requiring the recalculation and repayment of all amounts owed to Duke and members of the putative class plausibly redresses the alleged historic underpayment of joint and survivor annuities to Duke and members of the putative class and the resulting systemic underfunding of the Plan and related Plan losses. (*Id.* ¶¶ 66, 84.) Finally, the Complaint also alleges that Defendants financially benefitted from underpaying Duke and members of the putative class due to the use of the challenged actuarial assumptions, which is plausibly redressed by the requested disgorgement of profits. (*Id.* ¶¶ 66, 84; *id.* at 30, ¶ H.)[12]

Defendants argue that "[t]he 'injunction' Plaintiff seeks requiring the Plan to be reformed and pay her additional benefits is not a remedy *to the Plan*, does not reflect an injury *to the Plan*," and would "leave fewer assets in the Plan – not more." (Opp'n Mot. Reconsid. at 6.) This argument again entirely ignores the Complaint's well-pled allegation that Defendants' use of outdated actuarial assumptions causes Defendants Luxottica and Oakley and other Plan

---

[12] Thus, the Complaint "demonstrate[s] standing for each claim [Duke] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2019). Although Defendants invoke *DaimlerChrysler Corporation v. Cuno*, 547 U.S. 332 (2006), to challenge Duke's standing, my analysis does not hinge on the notion squarely rejected in that case that standing to pursue a claim for one form of relief automatically suffices to support standing for all claims for relief that "aris[e] from the same nucleus of operative fact," *id.* at 352. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

contributors to "reduc[e] the amount contributed to the Plan to fund benefits." (Compl. ¶ 66.) It also ignores the well-pled allegation that these Defendants and other Plan contributors "in fact received and continue to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows, *which improperly reduces the funding obligations to the Plan*." (*Id*. ¶ 84 (emphasis added).) As discussed, the Order erred by not accepting these allegations as true "and draw[ing] all reasonable inferences in favor of the plaintiff" in resolving Defendants' Rule 12(b)(1) motion. *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021) (brackets omitted).

Third, Defendants argue that Sections 409 and 502(a)(2) authorize relief to the Plan alone and not any remedies to individual Plan participants and beneficiaries, and rely on *Varity Corporation*, 516 U.S. 489; *Massachusetts Mutual Life Insurance Company* v. *Russell*, 473 U.S. 134 (1985); *Caban v. New York City District Council of Carpenters Pension Plan*, No. 19-cv-6205, 2020 WL 5774901, at *5 (S.D.N.Y. Sept. 28, 2020); *Laurent*, 945 F.3d 739 (2d Cir. 2019); and *Cedeno*, 100 F.4th 386. (Opp'n Mot. Reconsid. at 7–8; Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 4–5.) Defendants' arguments on this score are unpersuasive. As addressed in the Order, Section 502(a)(2) authorizes a participant or beneficiary of an ERISA plan to bring an action on behalf of the plan against a fiduciary who has violated Section 409. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). *Russell* made clear that Section 409 "inures to the benefit of the plan as a whole" and does not "authorize any relief except for the plan itself." 473 U.S. at 140, 144. The plain text of Section 409(a) permits such relief to take various forms, including: (1) loss restoration, (2) disgorgement of profits, and (3) "such other equitable or remedial relief as the

court may deem appropriate." 29 U.S.C. § 1109(a).[13] Duke seeks relief that falls into each of these three categories: reformation of the Plan and injunctive relief to provide for proper actuarial assumptions and to ensure that the Plan complies with ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements going forward (category 3); "restoration of losses to the Plan and its participants" (category 1); injunctive relief requiring the recalculation and payment of past benefits owed to Duke and other putative class members (category 3); and disgorgement of profits (category 2). (Compl., at 5, 29; *id.* at 29–31 ¶¶ D–E, L.) None of the cases cited by Defendants—*Russell*, *Varity Corporation*, *Caban*, *Laurent*, and *Cedeno*—address a Section 502(a)(2) claim seeking reformation of a plan in order to bring the plan into compliance with the ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements in order to benefit *both* the Plan as well as individual benefit recipients.

Moreover, "[t]he central holding of *Russell* is that [S]ections 409 and 502(a)(2) of ERISA do not provide for the recovery of extra-contractual damages for breaches of fiduciary duty that affect only the individual plaintiff." *Coan v. Kaufman*, 457 F.3d 250, 259 (2006) (citing *Russell* at 136–37). By contrast, Duke's Section 502(a)(2) claims seek reformation of the Plan to benefit

---

[13] The full text of Section 409(a) provides:

> Any **person** who is a fiduciary with respect to a **plan** who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such **plan** any losses to the **plan** resulting from each such breach, and to restore to such **plan** any profits of such fiduciary which have been made through use of assets of the **plan** by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of **section 1111 of this title**.

29 U.S.C. § 1109(a).

the Plan as a whole as well as hundreds, if not thousands, of others like herself, whose joint and survivor annuity benefits were calculated using pre-2021 actuarial assumptions. Finally, *Varity Corporation* and *Caban* are both distinguishable because the plaintiffs in those cases sought only personal relief—not plan-wide relief. In *Varity Corporation*, the plaintiffs sought an injunction reinstating them into their benefit plan, rather than plan-wide relief. 516 U.S. at 495. And in *Caban*, the plaintiff sought "reinstatement of his Vesting Credits" so that he could become fully vested in a defined benefit plan after having lost the credits due to a break in his work as a carpenter. *Caban*, 2020 WL 5774901, at *2, *4.[14] [15]

---

[14] Defendants also rely on *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), which is distinguishable. In *CIGNA*, the plaintiff alleged that defendants breached their fiduciary duties by underpaying her pension and requested reformation of the Plan and an injunction requiring the Plan to pay her additional benefits as required under Section 502(a)(3). 563 U.S. at 440–41. Unlike Duke, the plaintiff in *CIGNA* did not request plan-wide relief under Sections 409 and 502(a)(2), and the Supreme Court makes no mention of Sections 409 and 502(a)(2) or whether the relief sought would be appropriately requested under these ERISA provisions. *See generally* 563 U.S. 421.

[15] Defendants take issue with Duke's reliance on *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 102–03 (2d Cir. 2011), for the notion that "while loss restoration requires a showing of loss, the injunctive and other equitable relief authorized by § 502(a)(2) do not require such a showing." (Opp'n Mot. Reconsid. at 8–9; *see also* Reply Supp. Mot. Reconsid. at 5–6 (discussing *Faber*).) Relying on its earlier decision in *Century States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Car, L.L.C.*, 433 F.3d 181, 199–200 (2d. Cir 2005), the Second Circuit noted in *Faber* that "a plaintiff may have Article III standing to obtain injunctive relief related to ERISA's fiduciary duty requirements without a showing of individual harm, whereas obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury-in-fact." 648 F.3d at 102 (quotation marks and alterations omitted). Because *Faber* applied the Second Circuit's precedent in the context of a Section 502(a)(3) claim, it does not resolve the question before me of Duke's standing to bring Section 502(a)(2) claims for plan-wide equitable relief. Moreover, as required by *TransUnion*, 594 U.S. at 431, I evaluate Duke's standing to pursue each form of relief sought under her Section 502(a)(2) claims and find that the Complaint sufficiently alleges that Duke has suffered injuries-in-fact that are concrete, particularized, and actual, that the Defendants plausibly caused the injuries, and that such injuries are plausibly redressed by the requested relief. *See supra* Section I.B.

Fourth, Defendants argue that the forms of Plan-wide relief sought by Duke's Section 502(a)(2) claims, including the request for Plan reformation and "an injunction requiring the Plan to pay her additional actuarial equivalent benefits" are only available under Section 502(a)(3). (Opp'n Mot. Reconsid. at 6–7; *see also* Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 4–5.) According to Defendants, a finding that Duke has standing to bring her Section 502(a)(2) claims would render Section 502(a)(3) superfluous and "upend almost all of the Supreme Court's jurisprudence about the scope and limits of both § 1132(a)(2) and § 1132(a)(3)." (Opp'n Mot. Reconsid. at 8 n.2.) Defendants argue that *Varity Corporation* and *Laurent* held that Section 502(a)(3) only affords remedies "for injuries caused by violations that § 502 does not elsewhere adequately remedy." (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 5 (citing *Varity Corp.*, 516 U.S. at 512).) According to Defendants, because *Laurent* holds that plan reformation and other injunctive relief *are* available under Section 502(a)(3), these remedies *are not* available under Section 502(a)(2). (*Id.*)

Defendants' reliance on *Laurent* and *Varity Corporation* is misplaced. In *Laurent*, 945 F.3d at 747, the Second Circuit held that Section 502(a)(3) authorizes the relief of plan reformation to correct a plan that violates ERISA, but did not address whether such equitable relief is *also* available to remedy fiduciary violations under Sections 409 and 502(a)(2). Both *Laurent* and *Varity Corporation* stand for the proposition that Section 502(a)(3) provides relief that is unavailable under other subsections of 502(a), *not* that *all forms* of relief available under Section 502(a)(3) are *categorically unavailable* under other subsections of 502(a). In other words, these cases do not hold that Section 502(a)(3) affords *only* relief unavailable under other Section 502(a) subsections. *See Laurent*, 945 F.3d at 748 ("And the Supreme Court has expressly identified § 502(a)(3) as occupying a special 'catchall' remedial role in ERISA's statutory

scheme, *particularly* in instances where other remedies for violations of the statute may be unavailable.") (emphasis added); *Varity Corp.*, 516 U.S. at 512. In any event, as noted above, Section 409, which is enforced through Section 502(a)(2), expressly provides that a plaintiff may seek "such other equitable relief as the court may deem appropriate" on a plan-wide basis. 29 U.S.C. § 1109(a).

For all of these reasons, Duke has shown that the Order misapplied *Thole* and overlooked factual allegations in the Complaint concerning injuries to the Plan caused by Defendants' challenged conduct and Duke's request for various forms of Plan-wide equitable relief that would plausibly remedy those harms and Duke's injuries. *See N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, No. 16-cv-6986, 2018 WL 3973011, at * 2 (E.D.N.Y. Aug. 20, 2018) (granting reconsideration where the court "overlooked [certain] facts alleged in the complaint" relevant to plaintiff's individual standing). Reconsideration of the Order's dismissal of the Section 502(a)(2) claims is warranted "to correct a clear error" and to "prevent manifest injustice." *Kolel Beth*, 729 F.3d at 104. Duke has met the requirements for Article III standing to bring Section 502(a)(2) claims on behalf of the Plan for Plan-wide relief.

## II.    The Order's Rulings on the Motion to Compel Arbitration

After dismissing the Section 502(a)(2) claims, the Order ruled that the arbitration provision in the parties' Agreement applies to Duke's Section 502(a)(3) claims for three reasons. First, it noted that the parties did not dispute that Duke agreed to arbitrate some disputes with Luxottica and that "ERISA claims are generally arbitrable." (Order at 14.) Second, it relied on the text of the arbitration provision to conclude that it "unequivocally . . . applies to claims arising under ERISA" with a carveout for Section 502(a)(1) claims that does not apply to Duke. (*Id*. at 15–16.) Third, the Order found a

"substantial nexus between Plaintiff's claims and her employment" and concluded that Duke's Section 502(a)(3) claims therefore "reasonably" fall within the text of the arbitration provision in the Agreement, which applies to disputes "arising out of or related to the employment relationship." (*Id.* at 4, 17.)

The Order also addressed Duke's two arguments against enforceability of the arbitration agreement. First, it acknowledged, but did not resolve, Duke's contention that the "class action waiver is unenforceable because it forbids the assertion of certain statutory rights," reasoning that "because the Court has dismissed Plaintiff's claims under § 502(a)(2) for lack of standing, those concerns do not apply." (*Id.* at 18 (alterations omitted).) Second, the Order rejected Duke's argument that the arbitration agreement is unenforceable because the Summary Plan Description informs participants that they may bring suit in federal court to challenge fiduciaries' ERISA violations. (*Id.* at 18–19.) The Order concluded that the Summary Plan Description "does not . . . have any contractual force such that it could displace the parties' separate agreement to arbitrate." (*Id.* at 19.)

Duke seeks reconsideration of the portion of the Order compelling arbitration of the Section 502(a)(3) claims, which held that the arbitration provision is enforceable even though the Summary Plan Description explicitly stated that participants "may file suit in federal court" for ERISA fiduciary violations. (Mem. Supp. Mot. Reconsid. at 5.) As discussed below, Duke does not identify any clear error or manifest injustice in the Order's ruling that she is compelled to arbitrate her Section 502(a)(3) claims on an individual basis, and I deny reconsideration of that portion of the Order.

Nevertheless, because I have found that Duke has standing to pursue Section 502(a)(2) claims and because the Order did not address the substance of Duke's

challenge to the enforceability of the arbitration provision as to these claims, I must determine whether the arbitration provision applies to Duke's Section 502(a)(2) claims on behalf of the Plan. I conclude that the Class Action Waiver is unenforceable as to these claims because it is squarely contrary to Second Circuit precedent prohibiting arbitration provisions that fail to permit individuals to pursue statutory rights, including the right to bring representative claims and secure Plan-wide relief under Sections 409 and 502(a)(2).

### A. The Order Did Not Overlook Controlling Authority in Ruling that Duke's Section 502(a)(3) Claims are Subject to Arbitration.

Duke argues that the Order erred in requiring arbitration of her Section 502(a)(3) claims on an individual basis because it incorrectly reasoned that she "was required to exhaust her claims administratively with the Plan" prior to bringing suit and thereby "overlooked controlling authority holding that administrative exhaustion is not required." (Mem. Supp. Mot. Reconsid. at 2.) According to Duke, the Summary Plan Description explicitly states that participants "may file suit in federal court" to challenge ERISA violations by Plan fiduciaries, as Duke did here. (*Id.* at 5 (citing Summary Plan Description, ECF No. 40-3, at 15).) Duke asserts that the arbitration provision is unenforceable because it is contrary to the Summary Plan Description and is not located in any Plan document. (*Id.*)

Defendants argue that there was no clear error or manifest injustice in the Order's ruling that Duke's Section 502(a)(3) claims are compelled to arbitration, which was based on its interpretation of the text of the arbitration agreement. (Opp'n Mot. Reconsid. at 10–12.) Defendants contend that the Order did not require administrative exhaustion, but "only referenced the [Summary Plan Description's] claims and appeal procedures . . . because Plaintiff used it in trying to avoid her agreement to arbitrate." (*Id.* at 10) According to Defendants, Duke

32

does not seek reconsideration of the ruling that "the [Summary Plan Description] is not a contract and does not displace the Agreement," and does not "distinguish the case law Judge Azrack relied on in deeming the Agreement enforceable . . . ." (*Id.* at 11.)

Duke has not identified any clear error in the Order's rejection of her argument that the Agreement's arbitration provision is unenforceable based on statements made in the Summary Plan Description. Instead, Duke focuses on the Order's observation that the Complaint did not allege that Duke had "complied with the Plan's claims and appeals procedures" such that Duke "can invoke the [Summary Plan Description] here." (Order at 19; *see also* Mem. Supp. Mot. Reconsid. at 4–5.) The Order, however, clearly rejected Duke's argument not on the ground of failure to exhaust, but because the Summary Plan Description "does not . . . have any contractual force such that it could displace the parties' separate agreement to arbitrate." (*Id.* at 19.) The Order did not, as Duke contends, hold that she was required to administratively exhaust the Section 502(a)(3) claims before bringing them in federal court. (*See* Reply Supp. Mot. Reconsid. at 6.) I therefore deny reconsideration of the Order's holding that specific text in the Summary Plan Description recognizing the right of Plan participants to bring ERISA claims in federal court does not render the Agreement's arbitration provision unenforceable. Thus, Duke's Section 502(a)(3) claims remain compelled to arbitration on an individual basis.

**B.  The Arbitration Provision is Unenforceable as to Duke's Section 502(a)(2) Claims on behalf of the Plan.**

As noted above, the Order did not resolve Duke's challenge to the enforceability of the arbitration provision as to her Section 502(a)(2) claims on behalf of the Plan. (Order at 18.) Instead, it found that "because the Court has dismissed Plaintiff's claims under § 502(a)(2) for lack of standing," the "concerns" raised in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021), and *Coan v. Kaufman*, 457 F.3d 250, 259–60 (2d Cir. 2006), about the

enforceability of the arbitration provision prohibiting representative actions "do not apply." (*Id.* at 18.) However, both parties agree that this issue is fully briefed and that, if I grant reconsideration of the Order's dismissal of the Section 502(a)(2) claims for lack of Article III standing, I should address whether the arbitration provision is enforceable as to these claims. (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 6; Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 7.) Accordingly, because I grant reconsideration of the dismissal of Duke's Section 502(a)(2) claims on behalf of the Plan and conclude that she has standing to pursue them, I proceed to resolve the question of whether the arbitration provision requires Duke to arbitrate these claims on an individual basis.

### 1) Legal Standards

In *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), the Supreme Court held that the relevant inquiry when determining the enforceability of the arbitration clause is whether it "operate[s] as a prospective waiver of a party's right to pursue statutory remedies." *Id.* at 235 (cleaned up). This is known as the "effective vindication" exception to the enforcement of arbitration agreements. *Id.* In *Coan*, the Second Circuit underscored that a Section 502(a)(2) claim must be "brought in a representative capacity on behalf of the plan" and that such an action requires a plaintiff to "take . . . steps to become a bona fide representative of other interested parties." *Coan*, 457 F.3d at 259 (citing *Russell*, 473 U.S. at 140, 142 n.9). "Although ERISA does not specify the procedures that a plan participant must follow," satisfying the requirements of Rule 23 to serve as a class representative is "likely" sufficient, but not always necessary, to meet this standard. *Coan*, 457 F.3d at 259, 261.

Since *Coan*, the Second Circuit has expressed skepticism of arbitration provisions requiring strictly individualized arbitration of ERISA claims. In *Cooper*, the Second Circuit

explained that an arbitration clause requiring arbitration on an individual basis precludes representative actions under Section 502(a)(2) because individualized arbitration does not permit the procedural safeguards required to ensure that a plaintiff is an adequate representative to bring this claim on behalf of a plan. *Cooper*, 990 F.3d at 184 (citing *Coan*, 457 F.3d at 261). Accordingly, the Second Circuit found that an arbitration clause requiring individualized arbitration of all employment claims would likely be unenforceable as applied to Section 502(a)(2) claims, emphasizing that the ability to bring a representative action under Section 502(a)(2) is a "statutory right" that an arbitration agreement cannot override. *Id.* (quoting *Am. Express Co.*, 570 U.S. at 236). In *Lloyd v. Argent Trust Corporation*, Judge Cote of the Southern District of New York applied *Cooper* to hold that an arbitration provision is unenforceable where it "strictly prohibit[s] collective proceedings, and sharply limit[s] equitable relief," thereby "prevent[ing] a claimant from asserting rights and pursuing remedies that ERISA expressly provides" under Sections 409 and 502(a)(2). No. 22-cv-4129, 2022 WL 17542071, at *5 (S.D.N.Y. Dec. 6, 2022).

The Second Circuit recently affirmed this approach in *Cedeno*, 100 F.4th 386. In that case, plaintiff Cedeno sued his employer for alleged breaches of fiduciary duty in connection with his employer's defined contribution plan, seeking, among other relief, restoration of plan-wide losses. *Id.* at 392–93. Defendants moved to compel arbitration, citing a provision in the plan's documents prohibiting any action brought "in a representative capacity, or class, collective, or group basis" and requiring participants to resolve any plan-related claims in an individualized arbitration that limited Cedeno's loss restoration remedy to losses suffered by his individual account (*i.e.*, not plan-wide losses). *Id.* The Second Circuit, affirming the district court's denial of the defendants' motion to compel arbitration, found the relevant arbitration

provisions to be unenforceable because they "operate as a prospective waiver of claimants' statutory rights and remedies" for plan-wide relief under Sections 409(a) and 502(a)(2). *Id.* at 400.

Sister circuits addressing the same issue have reached the same conclusion. *See Fleming v. Kellogg Co.*, No. 23-1966, 2024 WL 4534677, at *6 (6th Cir. Oct.21, 2024) ("Because Section 502(a)(2) claims can only be brought in a representative capacity on behalf of the plan, an arbitration clause that eliminates a participant's ability to bring a representative claim effectively forecloses his substantive right to bring a fiduciary breach claim under that section."); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1109 (10th Cir. 2023) (holding that a Class Action Waiver's "prohibition of any form of relief that would benefit anyone other than [the plaintiff] . . . directly conflicts with the statutory remedies available under [Sections 409 and 502(a)(2)]"); *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 621 (7th Cir. 2021) ("All this is to say that the plain text of [Section 409(a)] and the terms of the arbitration provision cannot be reconciled: what the statute permits, the plan precludes. In that way, the plan's arbitration provision acts as a prospective waiver of a party's right to pursue statutory remedies, so the 'effective vindication' exception applies.").

### 2) The Parties' Arguments on the Motion to Compel Arbitration of Duke's Section 502(a)(2) Claims

Defendants make five arguments to support their position that the arbitration provision is enforceable against the Section 502(a)(2) claims and requires arbitration of these claims on an individual basis. (Defs.' Arb. or MTD Mem. at 11.) First, Defendants argue that Duke's position against enforceability of the Class Action Waiver is premised on "dicta" in *Cooper*, 990 F.3d 173, because the Second Circuit had "concluded that the plaintiff's dispute did not fall within the arbitration provision at issue." (*Id.* at 12–13.) Second, Defendants contend that *Cooper* is

distinguishable because it involved a defined contribution plan, rather than a defined benefit plan, and this "difference matters" under *Thole*, 590 U.S. 538. (*Id.* at 13.) Third, Defendants assert that Duke's Section 502(a)(3) claims under ERISA's joint and survivor, anti-forfeiture and actuarial equivalence provisions, 29 U.S.C. §§ 1053, 1054, 1055, cannot be brought "on behalf of the entire plan" because "these are all individual claims challenging the amount of [Duke's] benefits and the benefits of other putative class members she seeks to represent." (*Id.* at 12.) Fourth, Defendants contend that even if Duke's Section 502(a)(2) claims must remain in federal court, the arbitration provision requires that her Section 502(a)(3) claims be pursued on an individual basis through arbitration. (*Id.* at 12–13.) Fifth, Defendants argue that ERISA rights do not "control" over the Federal Arbitration Act ("FAA") because: (1) the ERISA itself provides that nothing in the statute "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States," 29 U.S.C. § 1144(d); (2) the Supreme Court has construed this provision as preventing ERISA from causing "a disruption of the enforcement scheme contemplated by" another federal statute; and (3) *Cooper* did not mention 29 U.S.C. § 1144(d) in its analysis. (*Id.* at 13–14, 14 n.10 (citations omitted).)

In their supplemental briefing following oral argument on the Motion for Reconsideration, Defendants reiterate their position that the Class Action Waiver provision compels all of Duke's claims to arbitration on an individual basis. (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 7.) Defendants reiterate their characterization of Duke's claims not as claims on behalf of the Plan, but rather "individual claims for benefits on behalf of [Duke] and the Plan participants she seeks to represent at the expense of the Plan" that are only available under Section 502(a)(3) and thus are subject to the Class Action Waiver. (*Id.* at 8.) Defendants assert that the FAA guarantees parties the ability to enter into a contract compelling individual claims

to arbitration. (*Id.* (citing *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 661 (2022).)

Finally, Defendants argue that, to the extent there is any conflict between ERISA and the FAA,

the FAA controls. (*Id.* (citing 29 U.S.C. § 1144(d); *Trs. of N.Y. State Nurses Ass'n Pension Plan

v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 602 n.13 (2d Cir. 2024) ("ERISA does not

create a different standard for enforcement or vacatur of an award than that provided for by the

FAA")).)

      In her Motion for Reconsideration, Duke argues that "the individual arbitration provision

[of the parties' Agreement] would make it impossible for Ms. Duke to assert the § 502(a)(2)

claims in a representative capacity, as she is required to do by *Coan v. Kaufman*, 457 F.3d 250,

256–62 (2d Cir. 2006)." (*Id.* (citing *Cooper*, 990 F.3d at 184–85).)[16] Duke contends that the

arbitration provision in this case suffers from the same defect as the agreement considered in

*Cooper*, where the Second Circuit raised concern that an arbitration agreement requiring claims

to be asserted on an individual basis may be in tension with its requirement in *Coan* that a

plaintiff bringing a Section 502(a)(2) claim on behalf of a retirement plan must demonstrate

adequacy to represent other plan stakeholders. (Pl.'s Opp'n Arb. Mem. at 8 (citing *Cooper*, 990

F.3d at 184).) Duke further argues that the Class Action Waiver "invalidates the entire

Arbitration Provision" because it provides that if "all or part of the Class Action Waiver is

unenforceable, the . . . action, to that extent, must be litigated in a civil court" and that the

"Company expressly does not agree to arbitrate any claim on a class, collective or representative

basis." (Pl.'s Opp'n Arb. Mem. at 9 (citing Agreement at 2, 7).)

---

[16] Defendants' opposition brief does not address this argument in any way. (*See generally* Opp'n Mot. Reconsid.) As noted above, at oral argument, Defendants requested—for the first time—the opportunity to provide additional briefing in support of their motion to compel arbitration to address this point. (Aug. 22, 2024 Hr'g Tr. 53:1–11.) I granted both parties that opportunity, and both did so. (*See* Pl.'s Suppl. Br. Mot. Reconsid.; Defs.' Suppl. Br. Opp'n Mot. Reconsid.)

Duke makes two additional arguments against compelling arbitration of her Section 502(a)(2) claims in her supplemental briefing following oral argument on the Motion for Reconsideration. First, Duke argues that the arbitration provision, by its text, does not cover her Section 502(a)(2) claims, pointing to two specific portions of the provision. (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 7–8.) The first provides that "[t]he Dispute Resolution Agreement covers *Luxottica* and *you*, regardless of your hire date, unless you opt-out on the form provided herein," which Duke argues shows that the arbitration provision applies only to her individual claims, not any representative claims that she may bring on behalf of others. (Agreement at 5; Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 7 (emphasis added by Plaintiff).) The second provides that the arbitration provision applies to claims "arising out of or relating to Employee's employment or the termination of employment." (Agreement at 6.) Duke argues that, as in *Cooper*, her Section 502(a)(2) claims on behalf of the Plan do not arise out of her employment, and therefore fall outside the scope of the arbitration provision of her agreement with Luxottica. (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 8 (citing *Cooper*, 990 F.3d at 182–85).)

Second, Duke argues that the Second Circuit's recent decision in *Cedeno* further supports the conclusion that the Class Action Waiver is unenforceable as to her Section 502(a)(2) claims. (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 8–9.) Duke notes the holding in *Cedeno* that "terms in an arbitration agreement that have the effect of prospectively waiving a party's statutory remedies are not enforceable" and argues that this is precisely what the Class Action Waiver does here. (*Id.* (citing *Cedeno*, 100 F.4th at 395).)

### 3) Analysis

The arbitration provision in Duke's Agreement with Luxottica suffers from defects present in the agreements considered in *Cedeno*, *Cooper*, and *Lloyd*. It requires Duke to "bring

any dispute in arbitration on an individual basis only, and not on a class, collective or ***private attorney general representative basis on behalf of others***." (Agreement at 7 (emphasis added.) It also expressly provides that "[t]here will be no right or authority ***for any dispute*** to be brought, heard ***or arbitrated as a class***, collective or ***private attorney general representative action*** or as a member in any such class, collective or representative proceeding." (*Id.* at 7–8 (emphasis added).) It is unlikely that Duke can secure through individualized arbitration all of the Plan-wide remedies that she seeks through her Section 502(a)(2) claims, which include equitable remedies authorized by Section 409 that would benefit the Plan and participants other than herself. As previously discussed, this includes: (1) reformation of the Plan to provide for proper actuarial assumptions in the calculation of joint and survivor annuity benefits for Duke and members of the putative class; (2) an injunction requiring fiduciaries to fix the Plan's use of outdated actuarial assumptions; (3) an injunction ordering Defendants to recalculate and pay all amounts owed to Duke and other members of the putative class because their past joint and survivor annuity payments were lower than legally required due to Defendants' use of outdated actuarial assumptions; (4) "restoration of losses to the Plan and its participants"; (5) disgorgement of any benefits or profits the Plans Committee received by using outdated actuarial assumptions; and (6) "all appropriate injunctive relief, such as an order requiring the Plans Committee to pay all Plan participants fully ERISA-compliant benefits in the future." (*See* Compl. at 29–31, ¶¶ D–E, H–I, L.)

The arbitration provision thus makes it impossible for Duke to bring representative claims under Sections 409 and 502(a)(2) on behalf of the Plan that "satisf[y] *Coan*'s adequacy requirement, while concurrently complying with the Agreement['s]" bar on representative actions. *Cooper*, 990 F.3d at 184. Like the agreement in *Lloyd*, the arbitration provision here

"prohibit[s] representative actions seeking relief on behalf of a plan even though ERISA expressly provides for such actions" under Sections 409 and 502(a)(2). *Lloyd*, 2022 WL 17542071, at *3. And like the agreement in *Cedeno*, the Class Action Waiver here bars any claim brought in a representative capacity or on a class, collective, or group basis, and thereby very likely precludes Duke from securing forms of plan-wide relief authorized by Section 409. *Cedeno*, 100 F.4th at 392.[17] The arbitration provision thus conflicts with explicit statutory rights and remedies under ERISA—specifically, a plan participant's right to bring claims to challenge the breach of a fiduciary's duties under Sections 409 and 502(a)(2) on behalf of the Plan and to seek Plan-wide remedies, including restoration of "losses to the plan resulting from each such breach," disgorgement of profits, and "such other equitable or other remedial relief as the court may deem appropriate," 29 U.S.C. § 1109(a). The arbitration provision is therefore unenforceable as to Duke's Section 502(a)(2) claims. *See Am. Express Co.*, 570 U.S. at 236.

Defendants' arguments to the contrary are unpersuasive. Defendants' contention that the relevant language in *Cooper* is "dicta" ignores the Second Circuit's express concern that

---

[17] In addition to the class action waiver, the agreement in *Cedeno* expressly limited the relief that an individual could pursue in individual arbitration of a claim under Sections 409 and 502(a)(2) to only:

> (i) [t]he alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely for the benefit of the Claimant's accounts, or (iii) such other remedial or equitable relief as the arbitrator deems appropriate.

*Cedeno*, 100 F.4th at 392. The Class Action Waiver here does not include this additional language, but the impact is likely the same. Because the Class Action Waiver prohibits any claim that is made on a "representative basis on behalf of others" (Agreement at 7), it very likely precludes Duke's ability to secure Plan-Wide equitable relief to remedy injuries to the Plan and, consequently, recipients of joint-and-survivor annuities other than herself, such as loss restoration and an injunction ordering recalculation and repayment of amounts owed to Duke and other members of the putative class due to Defendants' challenged conduct.

agreements requiring arbitration on an individual basis make it impossible for a person to pursue claims to enforce substantive statutory rights and remedies under Sections 409 and 502(a)(2). The Second Circuit explicitly recognized this predicament in *Cooper*:

> Either [the employee] brings a claim in arbitration in some representative capacity, as [the Second Circuit's] case law requires, and the claim is dismissed for violating the Agreement's prohibition on bringing [a] claim in a representative capacity; or she brings a claim absent the required procedural safeguards, and courts in this Circuit decline to enforce any award she secures in arbitration for running afoul of *Coan*.

*Cooper*, 990 F.3d at 184. Moreover, Defendants fail to explain how the fact that *Cooper* concerned a defined contribution plan rather than a defined benefit plan impacts the Second Circuit's concern that an arbitration provision requiring individualized arbitration "runs afoul" of the statutory right to bring a representative action on behalf of the plan under Section 502(a)(2) for remedies under Section 409. (*See* Defs.' Arb. or MTD Mem at 12–13.) Contrary to Defendants' argument, *Thole* did not address the enforceability of an arbitration agreement or why the difference between a defined benefit plan and a defined contribution plan matters in this context. *Id.* at 13; *see generally Thole*, 590 U.S. 538.

Finally, Defendants unpersuasively argue that the arbitration provision is enforceable because Duke's claims "are all individual claims challenging the amount of her benefits and the benefits of other putative class members she seeks to represent." (*Id.* at 12; *see also* Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 8.) Defendants' argument thus boils down to the same contention they advance to challenge Duke's standing: that Duke does not seek Plan-wide relief. As discussed at length, Duke brings claims under Sections 409 and 502(a)(2) on behalf of the Plan in order to remedy systemic problems with how joint and survivor annuity benefits are calculated and to secure forward-looking Plan-wide remedies—including reformation of the Plan to require the use of updated actuarial assumptions and recalculation of benefits for those, like Duke,

42

whose joint and survivor annuities were calculated using outdated assumptions—and backward-looking Plan-wide remedies—including restoration of losses to the Plan, disgorgement of profits, and payments to Duke and other Plan participants who received past joint and survivor annuity payments that were lower than legally required due to Defendants' challenged conduct. Defendants' argument thus cannot withstand *Cedeno*, where the Second Circuit confirmed that an agreement requiring arbitration on an individual basis "operate[s] as an impermissible prospective waiver of . . . substantive statutory rights" and remedies under Sections 409 and 502(a)(2) and precludes the ability to secure "plan-wide equitable relief." 100 F.4th at 405.

I do not reach Duke's remaining arguments as to the enforceability of the Class Action Waiver against her Section 502(a)(2) and 502(a)(3) claims because she did not timely raise them in the Motion for Reconsideration. The Motion for Reconsideration does not argue that the Class Action Waiver invalidates the entire arbitration provision, although Duke initially raised this argument in opposition to Defendants' motion to compel arbitration. (*Compare* Mem. Supp. Mot. Reconsid. at 4–5 *with* Pl.'s Opp'n Arb. Mem. at 9 (citing Agreement at 2, 7).). Nor does the Motion for Reconsideration argue that the arbitration provision is inapplicable to Duke's Section 502(a)(2) claims based on specific text in two portions of the provision, as Duke does in her supplemental brief. (*Compare* Mem. Supp. Mot. Reconsid. *with* Pl.'s Supp. Br. Supp. Mot. Reconsid. at 7–8 (citing Agreement at 6–7).) Moreover, Duke's Motion does not identify any error in the Order's finding that the arbitration provision applies to her claims because they "aris[e] out of or relat[e] to [her] employment," and thus I do not revisit that conclusion in the Order. (Order at 15–17; *see* Mem. Supp. Mot. Reconsid. at 4–5 (identifying no error with this portion of the Order).) Thus, Duke's claims under Sections 409 and 502(a)(2) will proceed in this Court while her Section 502(a)(3) claims will proceed in arbitration on an individual basis.

**C.  Defendants Have Not Met Their Burden to Show That a Stay of This Action as to Duke's Section 502(a)(2) Claims is Warranted.**

As noted above, I have denied Duke's motion for reconsideration of the Order's ruling that she must pursue her Section 502(a)(3) claims in arbitration on an individual basis. The parties agree that if I were to find (as I have here) that Duke's Section 502(a)(2) claims are not arbitrable, this would have "no impact on the arbitrability of [Duke's] Section 502(a)(3) claim[s]." (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 10; *see* Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 9.)[18] The parties disagree over how I should handle the resulting parallel proceedings.

Duke argues that I should allow her Section 502(a)(2) claims to go forward in this action while her Section 502(a)(3) claims proceed in arbitration because Duke's non-arbitrable Section 502(a)(2) claims are against only the Defendant Plans Committee and neither the Plan itself (on whose behalf Duke's 502(a)(2) claims are asserted) nor the Plans Committee were parties to the Arbitration Provision.[19] (Pl.'s Suppl. Br. Supp. Mot. Reconsid. at 10.) Defendants argue that the

---

[18] Defendants point to a severability clause in the Agreement, which provides in relevant part that even if "there is a final judicial determination that all or part of the Class Action Waiver is unenforceable . . . the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration." (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 9 (citing Agreement at 8).) The severability of claims subject to the arbitration provision is also supported by the express provision that if "all or part of the Class Action Waiver is unenforceable, the . . . action, ***to that extent,*** must be litigated in a civil court of competent jurisdiction. (Agreement at 7 (emphasis added).)

[19] Despite Duke's contention that her Section 502(a)(2) claims are only against the Plans Committee, the Complaint suggests that Duke seeks relief under Section 502(a)(2) against other Defendants as well. (*See* Compl. ¶¶ 97–137). Count IV is Duke's breach of fiduciary duty claim against the Plans Committee under Section 502(a)(2). (*Id.* ¶¶ 126–37). Duke also invokes Section 502(a)(2) in Count I (violation of ERISA's joint and survivor annuity requirement), Count II (violation of ERISA's actuarial equivalence requirement), and Count III (violation of ERISA's anti-forfeiture rules). (*Id.* ¶¶ 97–125). These three claims are pled against all Defendants. (*See id.*)

"substantive issues" raised in Duke's Section 502(a)(2) and Section 502(a)(3) claims are the same, and thus the FAA *requires* a stay of any federal litigation concerning the Section 502(a)(2) claim until such arbitration has concluded. (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 9–10.) Defendants rely on Section 3 of the FAA, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The Supreme Court has made clear that "[i]f a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). In such cases, the district court "must then decide whether to stay the balance of the proceedings pending arbitration." *SDJ Invs., LLC v. Collector's Coffee Inc.*, No. 21-cv-2070, 2022 WL 17097231, at *2 (2d Cir. Nov. 22, 2022) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). The Second Circuit "afford[s] district courts great discretion in declining to stay non[-]arbitrable claims pending arbitration of related claims." *Id.* (citing *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987)).

"The movant bears a heavy burden of showing necessity for the stay." *Id.* (citing *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991)). "This showing will depend on the relevant claim's effect on the outcome of the arbitration, whether failure to stay the action would result in substantial prejudice, and the significant expense and inconvenience of litigating and arbitrating simultaneously." *Id.* (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)).

45

Courts in this Circuit have held that "[a] stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue in the litigation." *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 489 (S.D.N.Y. 2011); *see also Pierre v. Macy's Inc.*, No. 16-cv-2556, 2016 WL 11652066, at *4 (E.D.N.Y. Nov. 23, 2016). In this inquiry, the movant must establish "that there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration." *Louis Berger Grp., Inc.*, 802 F. Supp. 2d at 490; *see also Hitachi Constr. Mach. Co. v. Weld Holdco, LLC,* Nos. 23-cv-490, 23-cv-1396, 2023 WL 8452389, at *11 (S.D.N.Y. Dec. 6, 2023) (holding that "factual commonality between claims may supply a basis for a stay in some cases"). "If the movant meets this burden, it must then show that it will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party." *Louis Berger Grp., Inc.*, 802 F. Supp. 2d at 490 (citing *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 42 (2d Cir. 2009)).

Here, I find that Defendants have not met their "heavy burden" to show that a stay of Duke's Section 502(a)(2) claims is necessary. *See SDJ Invs.*, 2022 WL 17097231, at *2. In fact, Defendants have not engaged at all with the factors that courts in this Circuit consider when determining whether to stay the balance of the proceedings pending arbitration of certain claims, including whether "arbitration may decide the same facts at issue in the litigation," "the relevant claim's effect on the outcome of the arbitration," "whether failure to stay the action would result in substantial prejudice," or "the significant expense and inconvenience of litigating and arbitrating simultaneously." *See Louis Berger Grp., Inc.*, 802 F. Supp. 2d at 489; *SDJ Invs., LLC*, 2022 WL 17097231, at *2 (citing *WorldCrisa Corp.*, 129 F.3d at 76).

While there are, no doubt, overlapping factual issues between Duke's non-arbitrable Section 502(a)(2) claims and her arbitrable Section 502(a)(3) claims, Defendants have not met their burden to demonstrate the extent or effect of the overlap. In their supplemental briefing, Defendants claim that "the same alleged ERISA violations underlie both the Section 502(a)(2) claims and the Section 502(a)(3) claims" and cite generally to the "Causes of Action" section of the Complaint. (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 10.) Aside from this general allegation, however, Defendants do not address the interplay of the factual issues underlying each claim and how parallel litigation and arbitration might affect one another.

Likewise, Defendants have not shown that "failure to stay the action would result in substantial prejudice." *SDJ Invs., LLC*, 2022 WL 17097231, at *2 (citing *WorldCrisa Corp.*, 129 F.3d at 76). In fact, staying Duke's Section 502(a)(2) claims in favor of individual arbitration of her Section 502(a)(3) claims is likely to prejudice Duke as she seeks remedies on behalf of the Plan under Section 502(a)(2). Critically, it is very likely, if not certain, that Duke would <u>not</u> be able to receive all forms of the Plan-wide relief she is entitled to seek under Section 409 by proceeding through arbitration on her Section 502(a)(3) claims on an individual basis. In enacting Section 502(a)(2), Congress created a means for individuals to seek relief on behalf of an entire plan. 29 U.S.C. § 1132(a); *Russell*, 473 U.S. at 142 ("A fair contextual reading of [Section 502(a)(2)] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan . . . ."). As discussed at length, under Section 502(a)(2), Duke seeks *Plan-wide* relief, namely, reformation of the Plan and overlapping injunctive relief to employ correct actuarial tables going forward, an injunction ordering Defendants to recalculate and pay amounts owed to Duke and other members of the putative class because of past underpayment of their joint and survivor

annuity benefits due to Defendants' challenged conduct, the restoration of losses to the Plan as a whole due to these underpayments (which, if Duke prevails, would permit the Plan to fund back payments), disgorgement of any "benefits and profits" the Plans Committee received as a result of its alleged ERISA violations, and "all appropriate injunctive relief." (*See* Compl. at 29–31, ¶¶ D–E, H–I, L.) While Duke also seeks these remedies under Section 502(a)(3), arbitration of these claims on an individual basis precludes her from seeking relief "on behalf of others," including the Plan itself and other joint and survivor annuity recipients whose benefits were calculated using the pre-amendment approach. (Agreement at 7–8.) It is entirely unclear whether she could secure Plan reformation and overlapping injunctive relief, and Duke almost certainly cannot secure recalculation of benefits and back-payments for joint and survivor annuity recipients other than herself from arbitration on an individual basis. Therefore, staying Duke's Section 502(a)(2) claims for Plan-wide relief in favor of arbitration of her Section 502(a)(3) claims on an individual basis would undermine ERISA's goal of providing private litigants a cause of action on behalf of a plan to remedy fiduciary violations. It would also prejudice Duke and other Plan joint and survivor annuity recipients who stand to benefit from Plan-wide remedies that may be unavailable under arbitration of Duke's Section 502(a)(3) claims on an individual basis. *See City of Almaty, Kazakhstan v. Sater*, No. 19-cv-2645, 2019 WL 6681560, at *14 (S.D.N.Y. Dec. 6, 2019) ("Further, [the Court] must tailor any stay so as not to unduly prejudice other parties who are not seeking a stay of the litigation.").

Defendants' argument that Section 3 of the FAA *requires* me to stay the case is incorrect. (*See* Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 9–10.) FAA Section 3 provides that, where "the issue involved in [the underlying] suit or proceeding is referable to arbitration under [an enforceable arbitration] agreement," I am required to grant a stay of the proceedings as to that

"issue." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (holding that "when a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration," the district court must stay the proceeding pending arbitration). Defendants' rely on a broad interpretation of the term "issue" in FAA Section 3, arguing that "[b]ecause the substantive issues for [Duke's Section 502(a)(2) and 502(a)(3) claims] are the same, if there were any surviving Section 502(a)(2) claims that were not arbitrable, they would have to be stayed 'until such arbitration has been had [on the Section 502(a)(3) claims] in accordance with the terms of the agreement.'" (Defs.' Suppl. Br. Opp'n Mot. Reconsid. at 10 (quoting 9 U.S.C. § 3).). But as discussed above, the issue to be litigated under Duke's Section 502(a)(2) claims (*i.e.*, whether Duke is entitled to Plan-wide relief that would remedy injuries to the Plan and thereby remedy injuries also suffered by herself and others) is *not* referable to arbitration, making Section 3 inapplicable. Thus, at this time, I find that Defendants have not met their heavy burden of showing the need for a stay of this litigation.

## CONCLUSION

For the reasons set forth above, Duke's motion for reconsideration (ECF No. 60) of the Memorandum & Order on Motion to Compel and Motion to Dismiss (ECF No. 59) is granted in part and denied in part. The Court grants reconsideration as to the dismissal of Duke's Section 502(a)(2) claims and finds that Duke has Article III standing to bring these claims. The Court denies reconsideration of the ruling that the parties are compelled to arbitrate Duke's Section 502(a)(3) claims on an individual basis.

The Court lifts the stay of this action. Duke's Section 502(a)(2) claims will proceed in this Court and her Section 502(a)(3) claims will proceed in arbitration.

Dated:  Central Islip, New York
        November 27, 2024

                                    _____/s Nusrat J. Choudhury_____
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge